IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

**ODILON S. CELESTIN, WIDMIR ROMELIEN,**

**GOLDIE LAMOTHE ALEXANDRE,**

**VINCENT MARAZITA,**

and on  behalf of all others similarly situated,

         Case No. 18-cv-7340

        Plaintiffs,      **CLASS ACTION COMPLAINT**

               **(Trial by Jury Demanded)**

      -against-

MICHEL JOSEPH MARTELLY, JOCELERME

PRIVET, JOVENEL MOISE, WESTERN

UNION, CARIBBEAN AIR MAIL, INC.,

UNITRANSFER USA, INC.,

DIGICEL-HAITI, NATCOM S.A., and

THE GOVERNMENT OF HAITI

       Defendants.

_____

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, Odilon S. Celestin, Widmir Romelien, Goldie Lamothe-Alexandre, Vincent Marazita,

(collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, upon personal

knowledge and upon information and belief as to other matters, allege as follows:

**NATURE OF THE ACTION**

1.   Plaintiffs bring this action against the defendants for entering into a horizontal price fixing

    agreement in violation of Section 1 of the Sherman Act of 1980, Section 6(a) of the Foreign

Trade Antitrust Improvement Act of 1982, The New York Donnelly Act, New York General Business Law § 349 and § 359, The California Cartwright Act, California Business & Professions Code§ 17500 et seq., California Business & Professions Code§ 17200 et seq., California Consumers Legal Remedies Act- Cal. Civ. Code §1750 et seq., and Florida Deceptive and Unfair Trade Practices Act § 501.201 et seq.,

2.   The Defendants conspired and entered into two horizontal price-fixing agreements, circulars #98, #7, and Presidential Order, to compel consumers to pay an extra $1.50 on every money transfer effectuated to and from Haiti; as well as charging consumers in the United States $0.05 per minute on every international call placed to and from Haiti. Plaintiffs and other remitters must call the beneficiaries of the money transfer to provide them with the money transfer control number (MTCN) in order for them to collect the monies remitted to them.

3.   This scam by the defendants was a ruse to steal money from Plaintiffs and other Class members under the guise that the collected funds resulted from a lawful tax imposed by the Haitian Government in order to fund free and compulsory education; when in truth, the funds collected went to serve the Defendants' personal and private needs.

4.   Defendants conspired to mislead and deceive unsuspecting consumers, including the named Plaintiffs and other Class Members, by promoting, marketing, and advertising the fees as a tax imposition by the government of Haiti necessary to fund free education in Haiti. The horizontal agreements harmed the Plaintiffs by forcing them to pay higher premium at the time they remit funds to their relatives and friends. The horizontal price-fixing agreements further harmed the Plaintiffs as they paid more and received less talk

time on phone calls placed to and from Haiti to apprise their relatives and friends of the money transfer effectuated.

5. Plaintiffs are seeking damages arising from the illegal and fraudulent scheme to collect moneys from them in violation of the laws of the United States. The conducts complained of by the Plaintiffs are violation *per se* of the Sherman Act and the antitrust laws of the various States of the United States.

## JURISDICTION AND VENUE

6. This Court has original subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332 (d), which explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from the State of citizen of any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

7. This Court has personal jurisdiction over the Defendants for reasons including but not limited to the following: Plaintiffs' claims arise out of Defendants' conduct within the State of New York.

8. This Court has jurisdiction over Plaintiffs' claims because Defendants' conducts violate the Foreign Trade Antitrust Improvement Act of 1982 (FTAIA), 15 U.S.C. § 6a (2014).

9. This Court has jurisdiction over Plaintiffs' claims under the Alien Tort Statute, 28 U.S.C. § 1350 because Defendants' conducts violate laws of the United States of America as well as the law of nations.

CLASS ACTION COMPLAINT

10.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs'
        claims based on the laws of the Republic of Haiti and over the state claims because those
        claims are so related to the federal claims that they form part of the same case or
        controversy.

11.      Venue is proper in this District under 28 U.S.C.§ 1391 (b)(2). A substantial part of the
        events or omissions giving rise to Plaintiffs' claims occurred in this District, including
        Defendants' dissemination of false and misleading information regarding the nature and
        purpose of the funds collected.

## PARTIES

### Plaintiffs

12.     Plaintiff Widmir Romelien is a United States Citizen residing in Rego Park, Queens, New
        York.  For the past 15 years, he sent money to his family members and friends in Haiti
        through Western Union, Caribbean Air Mail, Inc (d/b/a CAM), or Unitransfer USA, Inc.
        which illegally collects a $1.50 on every money transfer he remits to Haiti.  Mr. Romelien
        used either Digicel or Natcom which illegally collects $.05 per minute on the call on behalf
        of the Haitian government whenever he calls his relative to communicate the MCTN.

13.     Plaintiff Goldie Lamothe-Alexandre is a United States Citizen residing in Flatbush,
        Brooklyn, New York.  For the past 40 years, she has been sending money as well as making
        telephone calls to her family members who reside in Haiti. Mrs. Alexandre was subjected
        to an illegal fee on money sent and on telephone calls made during the last 7 years.  Mrs.
        Alexandre transacts mostly with Western Union, Caribbean Air Mail, Inc (CAM), or

Unitransfer USA, Inc. Mrs. Alexandre used either Digicel or Natcom which illegally collect $.05 per minute on the call on behalf of the Haitian government.

14. Plaintiff Odilon S. Celestin is a United States Citizen residing in North Miami, Miami-Dade, Florida. For the past 17 years, he has been sending money as well as making telephone calls to his family who reside in Haiti. Mr. Celestin was subjected to an illegal fee on money sent and on telephone calls made during the last 7 years. Mr. Celestin transacts mostly with Western Union, Caribbean Air Mail, Inc (CAM), or Unitransfer USA, Inc. Mr. Celestin would use either Digicel or Natcom which illegally collects $.05 per minute on the call on behalf of the Haitian government.

15. Plaintiff Vincent Marazita is a United States Citizen residing in Canoga Park, California. For the past 3 years, Plaintiff Marazita has been sending money as well as making telephone calls to friends who reside in Haiti. Plaintiff Marazita was subjected to an illegal fee on money sent and on telephone calls made during the last 3 years. Mr. Marazita from time to time contracts either with Western Union, Caribbean Air Mail, Inc (CAM), or Unitransfer USA, Inc. Whenever Mr. Marazita contracts with Western Union, CAM, or Unitransfer USA, they illegally collect $1.50 on behalf of the Haitian government.

## **DEFENDANTS**

16. Defendant Michel Joseph Martelly is a citizen of Haiti. Defendant Martelly at all relevant times orchestrated the scheme to defraud US Citizens, Residents and Haitians living in Haiti with the collection of the $1.50 and $.05 per minute on money transfers and on international phone calls made to or from Haiti respectively. Defendant Martelly conspired with the other named defendants to enter into a horizontal price-fixing arrangement. He is

subjected to the provisions of the Sherman Act, New York Donnelly Act, New York General Business Law § 349 and § 359, Florida Deceptive and Unfair Trade Practices Act § 501.201 et seq., California Business & Professions Code§ 17500 et seq., California Business & Professions Code§ 17200 et seq., California Consumers Legal Remedies Act- Cal. Civ. Code §1750 et seq., and California Cartwright Act,

17.     Defendant Jocelerme Privert is a Citizen of Haiti. Privert at all relevant times continued the conspiracy and the scheme by allowing the unlawful collection of the $1.50 and $.05 per minute on money transfers and on international phone calls made to or from Haiti respectively. Privert is subjected to the provisions of the Sherman Act, New York Donnely Act, New York General Business Law § 349 and § 359, Florida Deceptive and Unfair Trade Practices Act § 501.201 et seq., California Business & Professions Code§ 17500 et seq., California Business & Professions Code§ 17200 et seq., California Consumers Legal Remedies Act- Cal. Civ. Code §1750 et seq., and California Cartwright Act,

18.     Defendant Jovenel Moise is a Citizen of Haiti. Defendant Moise at all relevant times continues to promote, market and collect the unlawful fees. Defendant Moise is subject to the provisions of the Sherman Act, New York Donnely Act, New York General Business Law § 349 and § 359, Florida Deceptive and Unfair Trade Practices Act § 501.201 et seq., California Business & Professions Code§ 17500 et seq., California Business & Professions Code§ 17200 et seq., California Consumers Legal Remedies Act- Cal. Civ. Code §1750 et seq., and California Cartwright Act,

19.     Defendant Western Union Company ("Western Union"), also doing business as Western Union Financial Services, Inc., is a Delaware corporation with its principal place of business at 12500 East Belford Avenue, Englewood, Colorado 80112. At all relevant

times, Western Union collects the $1.50 fee from US Citizens and Residents. Western Union is in violation of the Sherman Act, New York Donnely Act, New York General Business Law § 349 and § 359, Florida Deceptive and Unfair Trade Practices Act § 501.201 et seq., California Business & Professions Code§ 17500 et seq., California Business & Professions Code§ 17200 et seq., California Consumers Legal Remedies Act- Cal. Civ. Code §1750 et seq., and California Cartwright Act,

20.    Defendant CAM is a corporation in the global money services business, incorporated under the laws of Florida, and headquartered in Miami, Florida.  At all relevant times. CAM collects the $1.50 from US Citizens and Residents.  Defendant CAM is in violation of the Sherman Act, New York Donnely Act, New York General Business Law § 349 and § 359, Florida Deceptive and Unfair Trade Practices Act § 501.201 et seq., California Business & Professions Code§ 17500 et seq., California Business & Professions Code§ 17200 et seq., California Consumers Legal Remedies Act- Cal. Civ. Code §1750 et seq., and California Cartwright Act,

21.    Defendant UNITRANSFER USA., INC. is a corporation in the global money services business, incorporated under the laws of Delaware, and headquartered in Miami, Florida. At all relevant times, Unitransfer USA Inc. collects the $1.50 tax from US Citizens and Residents.  UNITRANSFER is in violation of the Sherman Act, New York Donnely Act, New York General Business Law § 349 and § 359, Florida Deceptive and Unfair Trade Practices Act § 501.201 et seq., California Business & Professions Code§ 17500 et seq., California Business & Professions Code§ 17200 et seq., California Consumers Legal Remedies Act- Cal. Civ. Code §1750 et seq., and California Cartwright Act,

22. UNIGESTION HOLDING, S.A., a foreign corporation, d/b/a DIGICEL HAITI, Digicel Haiti is a wholly owned subsidiary of Digicel Holdings, Ltd., which also owns Digicel USA, Inc. ("Digicel USA") and Digicel Jamaica, Ltd. ("Digicel Jamaica"). Digicel USA is a corporation providing telephone services incorporated under the laws of Delaware and registered as a foreign corporation in Florida. At all relevant times, Digicel collects the $.05 from US Citizens and Residents who made telephone calls to Haiti. UNIGESTION HOLDINGS, S.A. and its subsidiaries are in violation of the Sherman Act, New York Donnely Act, New York General Business Law § 349 and § 359, Florida Deceptive and Unfair Trade Practices Act § 501.201 et seq., California Business & Professions Code§ 17500 et seq., California Business & Professions Code§ 17200 et seq., California Consumers Legal Remedies Act- Cal. Civ. Code §1750 et seq., and California Cartwright Act,

23. NATCOM, S.A. is a consortium, created under the laws of Haiti is a provider of telecommunications services in Haiti. At all relevant times. NATCOM. S. A charges US Citizens and Residents $.05 on telephone calls to Haiti. NATCOM, S.A. is in violation of the Sherman Act, New York Donnely Act, New York General Business Law § 349 and § 359, Florida Deceptive and Unfair Trade Practices Act § 501.201 et seq., California Business & Professions Code§ 17500 et seq., California Business & Professions Code§ 17200 et seq., California Consumers Legal Remedies Act- Cal. Civ. Code §1750 et seq., and California Cartwright Act,

24. Defendant the Government of Haiti entered into two horizontal price-fixing arrangements and agreements knowing that such arrangements and agreements violated the laws of Haiti as well as the antitrust laws of the United States.

CLASS ACTION COMPLAINT

25.   Various other persons and corporations not made defendants in this complaint, including high ranking government officials of Haiti and senior executives at Western Union, CAM., Unitransfer U.S.A., Digicel Holding Ltd, and Natcom S.A. participated as co-conspirators in furtherance of this unlawful scheme to defraud the Plaintiffs and other Class members.

## TRADE AND COMMERCE

26.   Firms in the same or similar industries, such as money transfer operators-Western Union, MoneyGram, Caribbean Airmail, Inc. and Unitransfer USA, Inc. together with Digicel Haiti and Natcom S.A., often compete to secure and retain consumers. This is especially true in money transfer and telecommunication industries in which prices mean everything for the service providers and the consumers. Offering competitive prices is the corner stone of every service provider's business that wants to attract new accounts.

27.   The agreement and arrangement entered into by the Defendants eliminated this competition. The agreement harmed the consumers by forcing them to pay a higher price than necessary to transfer money to their relatives coupled with the increase in the price to telephone their relatives to communicate the transfer number. The Plaintiffs were already faced with a limited choice of money transfer operators and telephone service providers to keep their family from literally dying of hunger, the agreement made it even more restrictive. The arrangement disturbed the competitive process and places the public in a position to choose its poison.

28.   None of the Defendants took any steps to ensure that the public affected by the horizontal price-fixing agreement knew of its existence, or how it would impact them. Instead of informing the public of the unlawful agreement, Defendants embarked on a campaign to mislead the public by promoting and marketing the fee as lawful tax imposition.

CLASS ACTION COMPLAINT

Defendants knew that disclosure of the agreements to the public would have created substantial legal and political problems for the Defendants under the laws of Haiti and those of the United States. Many affected consumers reside in the United States, which has a strong public policy prohibiting firms from committing acts or engaging in arrangement or entering into agreement to restrict trade and commerce.

## SUBSTANTIVE ALLEGATIONS

29. Defendant Martelly, during his electoral campaign for the presidency of Haiti in 2010, promised the people of Haiti free and compulsory education; an obligation that the government had under article 32-1 of the presently amended Haitian Constitution together with article 28 of the International Convention on the Right of the Child and article 13 of the International Convention on Economic, Social, and Cultural Rights to which Haiti is a signatory party.

30. Defendant Martelly, through his appointee Charles Castel-Chairman of the Central Bank of Haiti, circulated "circular 98" which obligates every money transfer operator to add a $1.50 on every transfer effectuated to and from Haiti; to date, Defendant Martelly still markets, promotes, and advertises the $1.50 fee as a tax levied legally.

31. Circular 98 left out several details causing the Defendants to reconvene and draft "Circular 7" to supplement Circular 98. "Circular 7" was issued on May 31, 2011.

32. The Circulars required that every money transfer operator to collect a US $1.50 from the sender of any money transfer effectuated to and from Haiti out of four geographical zones: The United States of America, Canada, Turks and Caicos, and the Bahamas.

33. Circular 98 states that the fee of $1.50 is being collected for testing, certification, usage, and inspection. Circular 98 explicitly exempted the collection of the fee on money transfers conducted through bank wire transactions.

34. There is no law that authorized the Bank of the Republic of Haiti to impose and collect fees in an effort "to generate revenues or to increase revenues" on behalf of the government.

35. Article 218 of the Haitian Constitution states unequivocally that "[n]o tax in favor of the State may be established except by a law."

36. Article 111-2[1] of the Haitian Constitution allows the executive branch to introduce a bill "concerning the assessment, percentage and manner of collecting taxes and contributions, and laws designed to generate revenues or to increase revenues and expenditures of the Government'. Article 111-2 states clearly that "Bills introduced on these matters must be voted on first by the Chamber of Deputies."

37. Throughout the Class Period, no such law allowing the executive branch to generate revenues on behalf of the government was in effect.

38. A bill allowing the government to generate revenues to fund Defendant Martelly's free and compulsory education program was introduced and voted on by the Chamber of Deputies in August of 2012, 15 months after Defendant Martelly was already collecting the fees at issue as taxes levied.

---

[1] Article 111-2 reads: However, only the Executive Power may initiate budget laws, laws concerning the assessment, percentage and manner of collecting taxes and contributions, and laws designed to generate revenues or to increase revenues and expenditures of the Government, Bills introduced on these matters must be voted on first by the Chamber of Deputies.

39. The bill was ratified by the senate in 2017 and published in the government official newspaper "Le Moniteur" on September 22, 2017 under Special No 30.

40. The law as published makes no mention of the imposition and collection of the US$1.50 fee on money transfer or the US$0.05 per minute on international calls to and from Haiti.

41. Article 25 of the new law asserts that the Fonds National d'Education (FNE) is to secure funding or financial resources from: a) fee levied per minute on international calls effectuated to and from Haiti; b) fee levied on every international money transfer.

42. Neither the proposed bill nor its final law version makes mention of a US$1.50 or US$0.05. The absence of an amount to be charged or levied on money transfer or international calls leaves the public at the mercy of the Defendants.

43. The fees are collected as handling fee for the Bank of the Republic of Haiti. BRH does not provide any service to the public to justify its collection of a handling fee.

44. The Defendants conspiracy to collect the fees at issue is a violation *per se* of the Sherman Act.

45. Under Haitian's jurisprudence, government officials who act in contravention of the law are deemed to have acted in their personal and private capacity; therefore, can be held personally liable.

### Materially False and Misleading Statements Issued During the Class Period

46. Throughout the Class Period, the Defendants conspired to draft the circulars and then entered into an agreement amongst themselves to devise ways to collect the $1.50 and $0.05 per minute on money transfer and international phone calls respectively.

47. During the Class Period, which began on February 20, 2011, the Defendants conspired to make materially false and misleading statements regarding the true nature of the fees imposed.

48. Defendant Martelly falsely promoted and advertised the collection of the $1.50 and the $0.05 as a special tax imposed to fund his Free and Compulsory Education Program (Programme de Scolarisation Universelle, Gratuite et Obligatoire-PSUGO).

49. Defendant Martelly conspired with former Prime-Minister of Haiti Jean-Max Bellerive, Garry Cornille, and Laurent Lamothe who echoed the false and misleading statements that "the surcharge on wire transfers and international phone calls into Haiti generat[ed] only between $40 million and $50 million for education…the country is moving to increase taxes to raise $100 million to make "a big difference in the education system."

50. The Defendants collected the $1.50 and $.05 cents under the guise of a tax imposition.

51. Defendants took great care to mislead the public, especially the Plaintiffs and individuals similarly situated, into believing the fees collected were because of a lawfully enacted tax law.

52. All Defendants adopted as their own the statements issued by Defendant Martelly to promote and advertise the unlawful fees collection.

53. The Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Presidential Order and the Circulars.

54.	Defendants did not disclose to the Plaintiffs or other similarly situated persons that the presidential order and circulars were not tax laws, nor do they have the effect of law under applicable laws of Haiti.

55.	Defendants willfully conspired to defraud the public to collect the fees under the guise of taxes to fund a free and compulsory education program which was not created by law.

56.	Defendants knew that the collection of the fees was unlawful, and its sole purpose was to benefit the Defendants.

57.	Between June 1, 2011 to date, Defendants have received numerous complaints regarding the unlawful collection and the misappropriation of the fees collected.  Said collected fees totaling at least US$300,000,000.[2]

## Pivotal Roles Played by Western Union, C.A.M. and Unitransfer USA to Carry Out the Fraudulent Scheme

58.	To carry out their fraudulent scheme, Defendants conspired with three of the four major MTOs which control at least 90% of the money transfer market sending money to and from Haiti by entering into a horizontal price-fixing agreement.

59.	Western Union is the largest money transfer company in the United States and worldwide with more than 50,000 of its 515,000 agents located in the United States.

60.	Consumers wishing to send funds using Western Union's money transfer system may initiate a transaction in person, online, or over the telephone.  Western Union claims that

---

[2] The US$300,000,000 is predicated upon the disclosure made by Defendant Lamothe, former Prime-Minister of Haiti, in his interview with the Miami Herald. If the government collected between $40 and $50 million after the year 2011-2012, it stands to reason that after 6 years of averaging $50 million, the total to date amounts to $300,000,000.00.

its locations are "around every corner" with "knowledgeable agents," and that its money transfer services are "fast, convenient, and safe."

61.     When initiating a money transfer at one of Western Union's agent locations, the sender must complete a "send form," which typically requires the sender's name, address and telephone number, and the name of the recipient and the city, state/province, and country to which the money transfer is being sent.

62.     Once the initial process is completed, recurring consumers need not complete the "send form," all they must do for all subsequent transfer is to give the Western Union agent their phone numbers and the name of the person to whom the money is being sent to.

63.      Once the consumers provide the information sought, if the funds are being wired to Haiti, the agent would then proceed to ask the consumers whether they wish to add the $1.50 tax. Where consumers decline to pay the alleged $1.50 tax, the $1.50 is deducted by Western Union at the time the beneficiaries receive the money.

64.     Western Union's agents are oblivious of the arrangement/agreement made between the Defendants. As per the agents, the $1.50 is collected as a result of a tax law enacted by the Haitian government.  The agents are unwittingly used to further the fraudulent scheme concocted by Defendants.

65.      Pursuant to circular 7, the $1.50 paid by consumers cover testing fee, certification fee, user fee and inspection fee.

66.     There is no privity of contract between the Central Bank of Haiti/BRH and consumers either in the United States or in Haiti.

67.     BRH does not have on site agents to test, certify, inspect money being wired. Consumers do not contract or use any services provided by BRH; yet they are subjected to pay the fee that Western Union collects on BRH's behalf.

68.     BRH is one of the regulatory bodies of the Haitian government. Its job is to regulate banks and other financial institutions servicing the population. Issuing circulars "that have the force of law" is not part of its attributions.

69.     Western Union conspired with BRH and agreed to enter into a horizontal price-fixing agreement with BRH to act as the agent of the Haitian government to fraudulently collect from consumers an extra $1.50.[3]

70.     This fraudulent scheme is carried out with the knowledge and express consent of Western Union and its senior executives.

71.     Western Union agents are oblivious of the fact that the $1.50 is not a tax but a fee that Western Union together with the government of Haiti collects illegally. Yet they are obligated to ask consumers whether they want to add the $1.50.

72.      Western Union has taken no steps to inform its agents and consumers sending money to Haiti of the true nature of the fee collected.

73.      Western Union's knowledge of its wrongful participation in the conspiracy to defraud the public through a price-fixing agreement with the Haitian government is confirmed by a

---

[3] The Haitian government would not term the $1.50 as a tax for education because such a description would create a quasi-contract thereby renders the government and all actors herein liable under article 1156, 1157, 1158, 1160, 1162, 1164, 1168, 1169, and 1170 of the Haitian Civil Code and article 337of the Criminal Code of Haiti.

letter dated November 21, 2018 sent by Western Union's attorney in response to a demand letter dated October 10, 2018 sent by Plaintiffs' counsels.

74. Western Union claims that the $1.50 is not collected here in the United States by its agents but rather by its agents in Haiti. Western Union continues to collect the fee to date.

75. Western Union's knowledge of the fraudulent nature of the collection is acknowledged in its claim that "Western Union's local agents in Haiti are obligated to comply with the BRH Circulars, which carry the force of law."

76. Western Union does not address whether Western Union agents in the United States are also obligated to comply with Circulars issued by the Haitian government that are not laws but "carry the force of law."

77. Western Union knew that no law existed allowing it to collect the fee whether in Haiti or in the United States or anywhere else in the world.

78. The circulars relied upon by Western Union states that the $1.50 is charged in exchange for the use of the "bank's platform."

79. The circulars relied upon by Western Union is limited in geographical scopes. As per the circulars, the $1.50 was to apply to funds coming from the United States, Canada, Turks and Caicos, and the Bahamas.

80. Western Union and the other money transfer operator defendants collect the fee from territories not covered by the "Circulars." It collects the $1.50 from money transfers coming out of Jamaica, Chile, the Dominican Republic, etc.., countries not covered by the circulars.

81.     In addition to collecting the fee from countries not included in the circulars, Western Union agents on several occasions have kept, either for their own accounts or that of Western Union, an additional $.50 from the money remitted under the guise that they do not have loose change after deducting the $1.50.

82.     Western Union is aware of all these unlawful acts and has done nothing to protect the public.

83.     Western Union is aware of how its services are abused by people seeking to defraud others; yet Western Union enters into a concerted horizontal price-fixing arrangement to participate in the collection of an unlawful fee imposed by Defendant Martelly and the government of Haiti.

## Caribbean Airmail, Inc, doing business as CAM

84.     CAM is a United Stated money transfer company incorporated under the laws of Florida. It is privately owned and operated. CAM was created to service the need of the Haitian communities, particularly the fraction that cannot read or write and lacks basic command of the English language.

85.     CAM's services are available in several countries but its primary share of the industry rests solely within the Haitian diaspora located mainly in the United States and Canada.

86.     Defendant CAM does not have any anti-fraud policies and/or procedures. However, its website does contain a customer protection section.

87.     CAM's has no policy or procedure is in place to protect the public against fraud. CAM's preoccupation is about protecting consumers' private information as opposed to protecting them against fraud.

88.     CAM conspired with the Haitian government and to enter into a horizontal price-fixing agreement to defraud the Haitian diaspora and people with ties to Haiti by adding and collecting a fee in the amount of $1.50 under the guise that such fee is the result of a tax imposed by the government of Haiti to fund the free education program initiated by Defendant Martelly.

89.     CAM defrauds the Plaintiffs and other Class members when it issues a receipt that is not itemized. The receipt shows that the transfer amount includes the $1.50 but shows that the beneficiary will receive an amount minus the additional $1.50 fee.

90.     CAM engages in the same identical conduct as the other money transfer operators by charging and collecting the $1.50 from consumers in the United States as well as territories not covered by the circulars.  CAM also charges and collects taxes on the $1.50.

91.     CAM violated article 36-2 of the Haitian Constitution prohibiting the taking of people's property absent a court order or a law with its unlawful collection.

92.     At all material times, CAM's conducts and involvements have harmed the American consumers by forcing them to pay fees that are the result of a price-fixing arrangement between CAM, Western Union, UNITRANSFER USA, Michel Joseph Martelly, and the Haitian government.

**UNITRANSFER USA**

CLASS ACTION COMPLAINT

93.     UNITRANSFER USA is a subsidiary of UNIBANK S.A. a bank incorporated under the laws of Haiti. UNIBANK S.A. incorporated UNITRANSFER USA under the laws of Delaware. UNITRANSFER is registered as a foreign company under the laws of Florida.

94.     UNITRANSFER USA services are available in several countries but its primary share of the industry rests solely with the Haitian diaspora located mainly in the United States and Canada.

95.     UNITRANSFER USA does not have a customer fraud protection policy or procedure. UNITRANSFER's website makes no reference as to how consumers are protected against fraud or how they are committed to ensure that their services are not used to commit illegal acts.

96.      UNITRANSFER USA, defrauds the public by issuing a receipt that is not itemized. The receipt shows that the transfer amount includes the $1.50.  The receipt does not say how much the beneficiary is to receive.

97.     UNITRANSFER USA engages in the same identical conduct as the other money transfer operators by charging and collecting the $1.50 from consumers in the United States as well as territories not covered by the circulars.

98.     UNITRANSFER USA receipts issued in Haiti has language that is the exact opposite of the language found in the circular.

99.     Section 2 of circular #07, issued on May 31, 2011 reads:

2.  **Date d'entrée en vigueur**

**A compter du 15 juin 2011**, la circulaire 98 s'applique à tous les transferts internationaux (entrants et sortants, en espèces ou nature) effectués sur les zones géographiques suivantes :

CLASS ACTION COMPLAINT

1.  Etats-Unis d'Amérique du Nord;

2.  Canada ;

3.  Iles Turks et Caicos;

4.  Bahama.

ENGLISH VERSION

**2.      Effective Date**

**Beginning June 15, 2011**, circular 98 shall apply to all international transfer (to and from, in cash or in kind) carried out from the following geographical zones:

1.  The United States of America;

2.  Canada;

3.  Turks and Caicos;

4.  Bahamas.

100.    Circulars 98 & 7 are alleged to have the force of law.  The $1.50 is to be collected only and solely from the four countries mentioned in the preceding paragraph.  UNITRANSFER USA, just like the other money transfer operators, engaged in collecting the $1.50 no matter where the transfer is coming from.

101.    UNITRANSFER USA inscribes on its receipts the following language:

*A partir du 15 juin 2011 tout transfert reçu de l'étranger est assujetti à des frais de USD 1.50 imposés par la BRH.*

**<u>ENGLISH VERSION</u>**

*Beginning June 15, 2011 every transfer received from abroad is subject to a mandatory USD 1.50 fee imposed by the BRH.*

102.  The language found in circular 7, does not authorize UNITRANSFER USA or any other money transfer operator to collect fees coming from countries outside the geographical zones mentioned in circular 7.

103.  The Haitian government is aware of the illegal collection made by UNITRANSFER USA, Western Union, and CAM; yet it has done nothing to protect the people of Haiti, the Haitian diaspora, and people with ties to Haiti.

104.  The Haitian government plays an integral role in this fraudulent scheme against the Plaintiffs, the Class members, and the people of Haiti.

105.  UNITRANSFER USA, along with Western Union, and CAM's conducts violate the Foreign Corrupt Practices Act as they all share the illegal gains with Haitian officials for the latter to allow them to continue to collect money from countries excluded from the circulars alleged "to have the force of law."

## Telecommunication Companies Involvement

106.  Haiti has only two telecommunication companies Unigestion Holding S.A. d/b/a Digicel-Haiti and Natcom S.A. Digicel monopolizes the market as it controls more than 80% of the market share.

107.  Natcom S.A. is a consortium between the Group Viettel Telecom-a subsidiary of the Vietnamese army and the Haitian government.

108.  All national and international phone calls must go through the cell phone service provided by either of one of the phone companies.

109. Digicel-Haiti, through Digicel USA, controls most international calls to and from Haiti. As of September 9, 2011, Digicel charges 23 cents per minute for all international calls to and from Haiti; local calls are billed at the rate of about 9 cents per minute.

110. Prior to September 9, 2011, Digicel charged 18 cents per minutes for international calls. After the presidential order, Digicel collects 5 cents more per minute on all international calls to and from Haiti.

111. Digicel appears to be the only company that links international calls out of the United States to Haiti. Despite other companies' ability to provide the same service at a fraction of the cost charged by Digicel, the Haitian government in exchange for payments has allowed Digicel to monopolize both the local market and international calls coming to and from Haiti.[4]

112. Digicel-Haiti in response to Plaintiffs' counsel notice of intent to sue, stated in its letter that it bears no responsibility regarding the unlawful collection and misappropriation of the funds allegedly turned over to the government because it collects the 5 cents based on a law enacted.

113. The law referenced by Digicel is a presidential order issued on September 9, 2011 published in Haiti's official paper *Le Moniteur* on September 2011 under publication #129.

---

[4] The pending suit titled UNIGESTION HOLDING, S.A., a foreign corporation, d/b/a DIGICEL HAITI, vs. UPM TECHNOLOGY, INC. d/b/a UPM TELECOM, INC filed in IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON under Case No. 3:15-cv-185-SI offers a better understanding of Digicel's strong hold on the Haitian telecommunication market.

CLASS ACTION COMPLAINT

114. The presidential order being relied upon and referred to as a law contravenes article 111, 111-2 and 218 of the Constitution of Haiti. Therefore, renders all collections thereunder null and void.

115. At all material times, Digicel-Haiti's conduct and involvement in the scheme have harmed consumers in the United States by forcing them to pay fees that are the result of a horizontal price-fixing arrangement/agreement between Digicel-Haiti, Natcom S.A., Michel Joseph Martelly, and the Haitian government.

**NATCOM S.A**.

116. Natcom S.A. is a consortium controlled mainly by VIETTEL, a branch of the Vietnamese army.

117. NATCOM controls only 10.9% of the local market. NATCOM is partly own by the Haitian government. They conspired to enter into a horizontal price-fixing agreement relating to international phone calls that affects consumers in the United States.

118. NATCOM S.A. collects the fees knowing that such collection was not authorized by law. NATCOM has not published any financial report detailing the amount collected and turned over to the government for the alleged free school program.

119. At all material times, NATCOM'S S.A. conduct and involvement have harmed consumers in the United States by forcing them to pay fees that are the result of a price-fixing arrangement between Natcom S.A., Digicel-Haiti, Michel Joseph Martelly, and the Haitian government.

## Haiti is Under Constitutional and Treaties Obligations to Provide Free and Compulsory Education to its Population

120.    It is well known that Haiti is the poorest country in the Western Hemisphere with 83% of its population living in poverty.

121.    With such a high percentage of people living in poverty, the idea of a free school program was and still is an appealing proposition to Haitian both in Haiti and abroad. Moreover, Haitians, just like many other impoverished people around the world, believe that EDUCATION is the road that leads out of poverty.

122.    Defendant Martelly used Education as a ploy to lure the people to believe in his free education program while the true and sole intent behind the program was for Defendant to convert any funds collected in relation thereto to his own use.

123.    Defendant Martelly in concert with all the Defendants mentioned herein diverted millions of dollars collected to support the alleged free education program[5].

124.    Article 32-2, 32-3, and 32-4 of the Haitian Constitution[6] obligate the Haitian government to provide free and compulsory fundamental education and in addition thereto, Agricultural, vocational and technical education to the population.

---

[5] Defendant Martelly secured an alleged $9,000,000.00 loan from Unibank to build a beach house predicated on the $350,000.00 salary earned during his 5 years tenure as President.

[6] Article 32-2 The first responsibility of the State and its territorial divisions is education of the masses, which is the only way the country can be developed. The State shall encourage and facilitate private enterprise in this field.

Article 32-3 [Amended by the Constitutional Law of 9 May 2011 / 19 June 2012] Fundamental education is obligatory. The classical necessities and didactic materials shall be placed freely by the State at the disposition of the students at the level of fundamental education.

Article 32-4 [Amended by the Constitutional Law of 9 May 2011 / 19 June 2012] Agricultural, vocational and technical education is a responsibility taken by the State and the territorial collectivities.

CLASS ACTION COMPLAINT

125. In addition to the constitutional obligations placed on the government of Haiti, as a signatory party to the International Convention on the Rights of the Child, Haiti is further obligated under article 28 of said convention to provide free and compulsory education.

126. Haiti is also obligated to provide free and compulsory education to its population under article 13 of the International Convention on Economic, Social, and Cultural Rights.

127. The right to free education has long been recognized as one of the fundamental human rights enshrined in the Universal Declaration of Human Rights which was adopted by all nations, including Haiti, in 1948.

128. Haiti's failure to meet her Constitutional and treaties obligations as a result of government officials' corrupt and unlawful conducts in converting money collected from Citizens and residents of the United States to fund an alleged free and compulsory education have caused great harm to citizens and residents living in the United States such that it touches and concerns the United States with 'sufficient force' to warrant displacement.

129. Defendant Martelly, after depleting the PetroCaribe funds[7] earmarked to build schools-amongst other infrastructures-to help Haiti combat poverty, targeted the Haitian diaspora

---

[6] Pursuant to a book written by current senator Youri Latorture, also speaker of the senate, more than US$3,833,890,217.58 disappeared under the watch of presidents Preval, Martelly, and Privert. PetroCaribe is a program initiated by the administration of Hugo Chavez of Venezuela designed to help alleviate the burden of external debts secured by Caribbean nations and to also help them build infrastructures conducive to combat poverty. The program allows countries in the Caribbean to purchase oil and then pay within 90 days the equivalent of 10-30% of the total sum due and owing. The remaining 70-90% was offered as a loan at the return rate of 1% over the course of 25 years. It is from that program that Haiti was able to accumulate the sum of USD 3, 833, 890, 217. 58, which has been converted by all of head of states named herein.

CLASS ACTION COMPLAINT

living mainly in the United States, Canada, Turks and Caicos, and the Bahamas with his free education program scheme.

130. Defendant Martelly and cohorts knew that the remittances to Haiti account for more than 30% of the country's GDP. Defendant Martelly knew that of the more than 2.5 billion dollars remit to Haiti yearly from the Haitian diaspora and friends of Haiti, that Haitians and friends of Haiti living in the United States are responsible for more than half of said amount.

131. Defendant Martelly and all named defendants conspired and entered into a price fixing agreement that resulted in harm to citizens and residents of the United States all under the guise of a tax imposed to fund education.

132. Defendant Martelly and the other named defendants did succeed in amassing a large sum of money with their fraudulent scheme, except the funds were never used to fund the free and compulsory education program marketed and promoted by Defendant Martelly and the other Defendants.

## Defendants Deceptively Promoted and Marketed the Unlawful Bank and Telephone Fee as a Lawful Tax

133. Consumers are oblivious to the fact that the $1.50 collected on every money transfer and $0.05 collected on every international call are not because of a lawful tax imposition but because of two circulars and a presidential order issued by the Chairman of the Central Bank (BRH) and Defendant Martelly respectively.

134. Consumers are not aware that the $1.50 described as a bank fee is collected by BRH, the central bank of Haiti not for educational purpose but supposedly as a fee charged for sending and receiving money through BRH service platform.

135. Consumers are not aware that the collection of the $1.50 is limited to only four countries: The United States, Canada, Turks and Caicos, and the Bahamas.

136. Consumers are not aware that all international calls to Haiti must go through Digicel-USA's routing system at the charge of $0.23 per minute.

137. Defendants have falsely promoted and marketed at all relevant times in Haitian Newspapers, Haitian Radio and throughout the USA the collected fees as taxes and have done everything to hide the true purpose behind the $1.50 and $0.05 fees collected.

138. Defendants market and advertise the fees as lawful taxes to induce the consumers into thinking that they have no choice but to pay such fees.

139. In making the false, misleading, and deceptive representations and omissions, Defendants intended for consumers to pay the fees as promoted, furthering Defendants' private interest to increase the government's purse so that they can convert and embezzle more funds.

**Plaintiffs & the Class Members Reasonably Relied on Defendants' Misrepresentations**

140. The horizontal price-fixing agreement by and between the Defendants left consumers with no choice but to drink their own poison.

141. 10 out of 10 consumers are oblivious to the fact that the collections of the fees are not subject to any law enacted for such a purpose.

142. Plaintiffs and the other Class Members were among the intended victims of Defendants' deceptive representations and omissions.

143. Plaintiffs and the other Class Members reasonably relied to their detriment on Defendants' misleading representations and omissions.

144. Defendants' false, misleading, and deceptive misrepresentations and omissions will continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiffs and the other Class Members.

145. Defendants made the deceptive representation and omissions about the fees with the intent to induce Plaintiffs and the other Class Members to pay the fees every time they remit funds and place calls to and from Haiti.

146. Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information when making money transfers and telephone calls to and from Haiti.

147. Plaintiffs and the other Class Members' reliance upon Defendants' misleading and deceptive representations and omissions may be presumed.

### Defendants' Wrongful Conduct Caused Plaintiffs' and the Class Members' Injuries

148. The Defendants' actions were the immediate, direct, and proximate cause of the damages suffered by Plaintiffs and other Class members.

149. Plaintiffs and the other Class members all paid more money to remit funds to relatives in Haiti and by the same token entered into a quasi-contract with the government of Haiti to provide free and compulsory education to the general population.

150. Plaintiffs and the other Class members did not obtain the full benefit of the advertised Services because of the Defendants' misrepresentations and omissions. Plaintiffs and the other Class members paid, or paid more for, the Services than they would have had they known the truth about the true nature of the use of the fees collected.

## CLASS ALLEGATIONS

151. Plaintiffs incorporate all above allegations by reference as though fully set forth herein.

152. Plaintiffs bring this action on behalf of themselves and as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure on behalf of a nationwide class (the "Nationwide (b)(2) Class"), defined as:

> All persons in the United States and its territories who used the services of one or more of the Money Transfer Operators and Telecommunication Companies during the Class Period who were subjected to paying the $1.50 on wire transfers and $0.05 on phone calls placed to Haiti.

153. In addition, Plaintiffs bring this action on behalf of themselves and as a class action pursuant to Rule 23(a) and (b)(3) on behalf of a nationwide class (the "Nationwide (b)(3) Class"), defined as being coextensive with the Nationwide (b)(2) Class.[8]

---

7. This Complaint refers to the Nationwide (b)(2) Class and the Nationwide (b)(3) Class, together, as the "Nationwide Classes."

154. Alternatively, Plaintiffs bring this action pursuant to Rule 23(a) and (b)(2) on behalf of themselves and a multi-state class of New York, Florida, and California residents (the "NY-FL-CA (b)(2) Class"), defined as:

> All persons in New York, Florida, and California who used one or more of the Money Transfer Operators and Telecommunication Companies during the Class Period.

and, pursuant to Rule 23(a) and (b)(3), on behalf of a multi-state class of New York, Florida, and California residents (the "NY-FL-CA (b)(3) Class"), defined as being coextensive with the NY-FL-CA (b)(2) Class.[9]

155. Alternatively, Plaintiffs bring this action on behalf of themselves and on behalf of several statewide classes, as follows:

a. Pursuant to Rule 23(a) and (b)(2), Plaintiffs Widmir Romelien and Goldie Lamothe bring this action on behalf of themselves and a class of New York residents who paid for the Services during the Class Period (the "New York (b)(2) Class") and, pursuant to Rule 23(a) and (b)(3), on behalf of a class of New York residents (the "New York (b)(3) Class"), defined as being coextensive with the New York (b)(2) Class.[10]

b. Pursuant to Rule 23(a) and (b)(2), Plaintiff Odilon Celestin brings this action on behalf of himself and a class of Florida residents who paid for the Services during the Class Period (the "Florida (b)(2) Class") and, pursuant to Rule 23(a) and (b)(3),

---

8. This Complaint refers to the NY-FL-CA (b)(2) Class and the NY-FL-CA (b)(3) Class, together, as the "NY-FL-CA Classes."
9. This Complaint refers to the Florida (b)(2) Class and the Florida (b)(3) Class, together, as the "New York Classes."

on behalf of a class of Florida residents (the "Florida (b)(3) Class"), defined as being coextensive with the New York (b)(2) Class.[11]

    c.   Pursuant to Rule 23(a) and (b)(2), Plaintiff Vincent Marazita brings this action on behalf of himself and a class of California residents who purchased one or more of the Products during the Class Period (the "California (b)(2) Class") and, pursuant to Rule 23(a) and (b)(3), on behalf of a class of California residents (the "California (b)(3) Class"), defined as being coextensive with the California (b)(2) Class.[12]

156.   Excluded from the Classes are Defendants, their subsidiaries, affiliates, and employees; all persons who make a timely election to be excluded from the Classes; governmental entities; and the judge(s) to whom this case is assigned and any immediate family members thereof.

157.   Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

### Numerosity-Federal Rule of Civil Procedure 23(a)(1)

158.   The members of each of the Classes are so numerous that individual joinder of all class members is impracticable.

159.   The precise number of members of the Classes is unknown to Plaintiffs, but it is clear that the number greatly exceeds the number that would make joinder practicable, particularly given Defendants' worldwide service network.

---

10.   This Complaint refers to the Florida (b)(2) Class and the Florida (b)(3) Class, together, as the "Florida Classes."
11.   This Complaint refers to the California (b)(2) Class and the California (b)(3) Class, together, as the "California Classes."

160. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

## Commonality and Predominance-Federal Rule of Civil Procedure 23(a)(2) and (b)(3)

161. This action involves common questions of law or fact, which predominate over any questions affecting individual members of the Classes. All members of the Classes were exposed to Defendants' deceptive and misleading advertising and marketing claims that the fees were taxes imposed to fund free education because those claims were made through radios, newspapers and televisions where the Plaintiffs reside. Furthermore, common questions of law or fact include:

    a. whether Defendants engaged in the conduct as alleged herein;

    b. whether Defendants' practices violate applicable law cited herein;

    c. whether Plaintiffs and the other members of the Classes are entitled to actual, statutory, or other forms of damages, and other monetary relief; and

    d. whether Plaintiffs and the other members of the Classes are entitled to equitable relief, including but not limited to injunctive relief and restitution.

162. Defendants engaged in a common course of conduct in contravention of the laws Plaintiffs seek to enforce individually and on behalf of the other members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

## Typicality-Federal Rule of Civil Procedure 23(a)(3)

163. Plaintiffs' claims are typical of the claims of the other members of the Classes because, among other things, all members of the Classes were comparably injured through the uniform misconduct described above, were subject to Defendants' false, deceptive, misleading, and unfair advertising and marketing practices and representations, including the false claims that "the fees were imposed by lawful tax laws." Further, there are no defenses available to Defendants that are unique to Plaintiffs.

### Adequacy of Representation-Federal Rule of Civil Procedure 23(a)(4)

164. Plaintiffs are adequate representatives of the members of the Classes because their interests do not conflict with the interests of the other members of the Classes they seek to represent; they have retained counsel competent and experienced in complex litigation together with knowledge of French and Haitian laws; and Plaintiffs will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel. The Law Offices of Denis Law Group, PLLC and Rodney R. Austin PLLC. have long been leaders in the representation of consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

### Declaratory and Injunctive Relief-Federal Rule of Civil Procedure 23(b)(2)

165. Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the members of the Nationwide Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. The conducts complained of by the Plaintiffs are violations per se of the Sherman Act and the antitrust laws of the various states of the United States.

### CAUSES OF ACTION

## <u>COUNT I</u>

**(Violation of New York General Business Law § 349 (Deceptive Acts and Practices)**
**(On behalf of the Nationwide Classes)**

166.     Plaintiffs repeat and re-allege and incorporate by reference the allegations set forth in the preceding paragraphs numbered one (1) through one hundred sixty-five (165) as if fully set forth herein.

167.     Plaintiffs bring this claim individually and on behalf of the other Nationwide Classes.

168.     New York General Business Law § 349 ("GBL § 349") prohibits "deceptive acts     or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

169.     Throughout the Class Period, Plaintiffs and other Class members entered into transactions with defendants Western Union, CAM, and Unitransfer USA to remit money to Haiti in exchange for a transfer fee.

170.     During the course of the transactions, said Defendants, acted as agents the government of Haiti collected extra fees through a fraudulent scheme concocted and agreed to by the Defendants.

171.     Defendants took affirmative steps to market, promote, advertise and implement the fraudulent scheme characterizing the collection of the additional fees as taxes, laws and any other description that allowed them to advance the scheme on unsuspecting consumers.

172.     Defendants engaged in, and continue to engage in, deceptive acts and practices because the fees paid and received are collected for the benefit of Haiti's Central Bank (BRH) and Conseil National des Télécommunications (CONATEL) based upon unlawful measures

and/or unlawful official acts.

173. Plaintiffs believed the Defendants' representations that the fees were "lawful taxes levied to fund free and compulsory education." Plaintiffs would not have transacted with Defendants had they known the fees were the results of Defendants' unlawful acts and conducts and was not compulsory.

174. Plaintiffs were injured in fact and lost money as a result of Defendants' horizontal price-fixing agreements and Defendants' conduct of improperly describing the fees as mandatory "lawful taxes levied to fund free and compulsory education."

175. Plaintiffs seek damages resulting from Defendants fraudulent and illegal scheme.

## COUNT II
### (Violation of New York General Business Law § 350 (False Advertising))

176. Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs numbered one (1) through hundred seventy-five (175) as if fully set forth herein.

177. Plaintiffs bring this claim individually and on behalf of the Nationwide Classes.

178. New York General Business Law § 350 ("GBL §350") makes "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service" in New York unlawful.

179. Throughout the Class Period, Defendants by advertising, marketing, promoting and/or charging the fees with claims that they were lawful taxes levied to fund free and compulsory education" to Plaintiffs and other New York Class members, Defendants violated GBL §350 by engaging in, and it continues to violate GBL §350 by continuing to

engage in, false advertising concerning the fees being lawful taxes levied to fund a free and compulsory education program in Haiti, when in fact they are not.

180. Plaintiffs and the other members of the Nationwide Classes seek to enjoin such unlawful acts and practices as described above. Each member of the Nationwide Classes including the Plaintiffs will be irreparably harmed unless the unlawful actions of Defendants are enjoined in that Plaintiffs will continue to pay the compulsory fees based on Defendants' representations that they are "lawful taxes."

181. Plaintiffs believed Defendants' representations that the fees are "lawful taxes imposed to fund free and compulsory education." Plaintiffs would not have vehemently protest paying the extra fees imposed.

182. Plaintiffs were injured in fact and lost money as a result of Defendants' conduct of improperly describing the fees as "lawful taxes imposed to fund free and compulsory education." Plaintiffs paid the extra fees as taxes in exchange for a promise to provide free and compulsory education to the Haitian population including Plaintiffs' relatives but, did not receive the benefits of such bargain. Defendants collected the fees and converted them to their own use.

183. Plaintiffs and the Nationwide Classes seek declaratory relief, restitution for moneys wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, enjoining Defendant from continuing to disseminate their false and misleading statements, and other relief allowable under New York General Business Law § 350.

## COUNT III
**(Violation of the Florida Deceptive And Unfair Trade Practices Act § 501.201 *et seq.* )**

184. Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs numbered one (1) through hundred eighty-three (183) as if fully set forth herein.

185. Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Classes.

186. Section 501.204(1) of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") makes "unconscionable acts or practices and unfair or deceptive acts or practices in the conduct or any trade or commerce" in Florida unlawful.

187. Throughout the Class Period, by advertising, marketing, promoting, and/or entering into transactions with claims that added fees are "lawful taxes imposed to fund free and compulsory education in Haiti." to Plaintiffs and other Class members, Defendants violated the FDUTPA by engaging in, and they continue to violate the FDUTPA by continuing to engage in, false advertising and collecting the fees as lawful taxes to fund free and compulsory education in Haiti, when in fact, they are not.

188. Plaintiffs and other members of the Nationwide Classes seek to enjoin such unlawful acts and practices described above. Each of the Class members will be irreparably harmed unless the unlawful actions of Defendants are enjoined in that Defendants will continue to collect the fees charged unlawfully together with continuing to falsely and misleadingly advertise them as "taxes."

189. Plaintiffs were injured in fact and lost money as a result of Defendants' conduct of improperly describing the extra fees paid as "lawful taxes imposed to fund free and compulsory education." Plaintiffs, when transacting with Defendants, paid extra fees as taxes in exchange for a promise to provide "free and compulsory education to the Haitian

CLASS ACTION COMPLAINT

population," including Plaintiffs' relatives but, did not receive the benefits of such bargain. Defendants collected the fees and converted them to their own used.

190. Plaintiffs and the members of the Nationwide Classes seek declaratory relief, enjoining Defendants from continuing to collect the fees and from continuing to disseminate their false and misleading statements, actual damages plus attorney's fees and court costs, and other relief allowable under the FDUTPA.

## COUNT IV
### (Civil Theft Pursuant to Florida Statute §772.11)

191. Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs numbered one (1) through hundred ninety (190) as if fully set forth herein.

192. Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Classes.

193. This is an action for civil theft pursuant to Fla. Stat. §772.11. 47.

194. Throughout the Class Period, Defendants transacted with Plaintiffs and have obtained and/or used at least $500,000,000.00 of Plaintiffs' money without Plaintiffs' permission.

195. Throughout the Class Period, Defendants did unlawfully and knowingly use or endeavor to use Plaintiffs' money and did knowingly deprive or endeavor to deprive Plaintiffs and the other members of the Nationwide Classes of their money with the intent to temporarily or permanently deprive Plaintiffs and the other members of the Nationwide Classes of their

rights to the money and benefit thereof, all for defendants' own use, or the use of any person not entitled thereto, in violation of Florida Statute §812.014.[13]

196.   Pursuant to Florida Statute §772.11, Plaintiff made a final written statutory demand for its property on October 5th, 2018. To date, and despite demand by Plaintiffs, defendants have failed to return Plaintiffs' property.

197.   As a direct and proximate cause of defendants' unlawful actions, Plaintiffs were and continue to be deprived of their rights to their property and the benefits therefrom and have suffered damages in the minimum amount of $500,000,000.00.

198.   Pursuant to Florida Statute §772.11, Plaintiffs are entitled to treble damages in the minimum amount of $1,500,000,000.00 for the theft of their money committed by defendants.

199.   As a direct result of defendants depriving Plaintiffs of their rights to possess and enjoy their money and the benefits therefrom, and defendants' continuing failure and refusal to return Plaintiffs' property, Plaintiffs were required to retain counsel and are obligated to pay their counsel a fee.

200.   Plaintiff is entitled to an award of attorneys' fees pursuant to Fla. Stat.§772.11.

## <u>COUNT V</u>
**(Violation of California Business & Professions Code § 17500 *et seq.*)**

---

12.   Fla. Stat. §812.014 provides, (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, **either temporarily or permanently:**
    (a) **Deprive the other person of a right to the property or a benefit from the property.**

201.    Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs numbered one (1) through two hundred (200) as if fully set forth herein.

202.    Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Classes.

203.    Throughout the Class Period, Defendant engaged in a public advertising and marketing campaign representing the unlawful fees as "lawful taxes imposed to fund free and compulsory education in Haiti."

204.    The fees collected as taxes are in in fact "bank fees and telephone services fees." Defendants' advertisements and marketing representations are, therefore, misleading, untrue, have misled and will continue to deceive the public.

205.    Defendants engaged in their advertising and marketing campaign with intent to directly induce consumers to pay extra moneys based on false claims.

206.    In making and disseminating the statements alleged herein, Defendants knew or should have known that the statements were untrue or misleading.

207.    Plaintiffs and other Class members believed Defendants' representations that the extra fees paid are "lawful taxes imposed to fund free and compulsory education in Haiti." Plaintiffs and other members of the Nationwide Classes would not have paid the extra money transfer fees and telephone services had they known the moneys were bank fees and phone services fees charged by the government of Haiti.

208.    Plaintiffs and other members of the Nationwide Classes were injured in fact and lost money as a result of Defendants' conduct of improperly describing the extra fees paid as

"lawful taxes imposed to fund free and compulsory education." Plaintiffs paid the extra moneys as taxes in exchange for a promise to provide free and compulsory education to the Haitian population including Plaintiffs' relatives but, did not receive the benefits of such bargain. Defendants collected the money and converted them to their own use.

## COUNT VI

### (Violation of California Business & Professions Code § 17200 *et seq.*)

209. Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs numbered one (1) through two hundred eight (208) as if fully set forth herein.

210. Plaintiffs bring this claim individually and on behalf of the Nationwide Classes.

211. The circumstances giving rise to Plaintiffs' allegations include Defendants' laws and policies regarding fraud prevention and money laundering.

212. By engaging in the acts and practices described above, Defendants committed one or more acts of "unfair competition" within the meaning of Business and Professions Code § 17200. "Unfair competition" is defined to include any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [Business and Professions Code § 17500 *et seq.*]."

213. Defendant committed "unlawful" business acts or practices by, among other things, violating California Business & Professions Code § 17500.

214. Defendant committed "unfair" business acts or practices by, among other things:

    a. engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiffs and members of the California Classes;

     b.   engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and members of the California Classes; and

     c.   engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws alleged in this Complaint.

215.    Defendants committed unlawful, unfair and/or fraudulent business acts or practices by, among other things, engaging in conduct Defendants knew or should have known was likely to and did deceive the public, including Plaintiffs and other members of the Nationwide Classes.

216.    Defendants unlawful, unfair, and/or fraudulent practices include making false and/or misleading representations that the extra fees collected through the transactions were "lawful taxes imposed to fund free and compulsory education in Haiti." Plaintiffs and the other members of the Nationwide Classes believed and relied on Defendants' representations to their detriment.

217.    Plaintiffs and the other members of the Nationwide Classes were injured in fact and lost money because of Defendants' conduct of improperly describing the extra fees paid as "lawful taxes imposed to fund free and compulsory education." Plaintiffs paid the extra fees as taxes in exchange for a promise to provide free and compulsory education to the Haitian population including Plaintiffs' relatives but, did not receive the benefits of such bargain. Defendants collected the money and converted them to their own use.

218.    Plaintiffs and the members of the Nationwide Classes seek declaratory relief, restitution for moneys wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, and other relief allowable under California Business & Professions Code Section I7203, including, but not limited to, enjoining Defendants from continuing to

engage in their unfair, unlawful and/or fraudulent conduct as alleged.

## COUNT VII
**(Violation of the California Consumers Legal Remedies Act - Cal. Civ. Code § 1750 *et seq.*)**

219. Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs numbered one (1) through two hundred eighteen (218) as if fully set forth herein.

220. Plaintiffs bring this claim individually and on behalf of the Nationwide Classes pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (the "CLRA"). This cause of action seeks monetary damages and injunctive relief pursuant to California Civil Code § 1782.

221. On or about October 5, 2018, Plaintiffs sent Defendants a Notice and Demand Letter, notifying Defendants of their violations of the CLRA. Defendants did not correct the misrepresentations identified in the demand letter.

222. Defendants' actions, representations, and conduct have violated, and continue to violate, the CLRA because they extend to transactions that are intended to result, or that have resulted, in the money transfer transaction entered with consumers.

223. Plaintiffs and all members of the Nationwide Classes are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

224. Defendants entered into "transactions," within the meaning of California Civil Code § 1761(e), with Plaintiffs and other members of the Nationwide Classes.

225. By engaging in the actions, misrepresentations, and misconduct set forth in this Class Action Complaint, Defendants violated, and continue to violate, California Civil Code § 1770(a)(5) by misrepresenting that the fees paid as "lawful taxes levied" and have particularly stated that such tax revenues "were going to fund free and compulsory

education in Haiti," when in fact, they are not.

226.    By engaging in the actions, misrepresentations, and misconduct set forth in this Complaint, Defendants violated, and continues to violate, California Civil Code § 1770(a)(5), by representing that the extra fees paid resulted from a lawful tax imposition.

227.    By engaging in the actions, misrepresentations, and misconduct set forth in this Complaint, Defendants violated, and continues to violate, California Civil Code § 1770(a)(14) by misrepresenting that a subject of the subject transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.

228.    Defendants violated the CLRA by not representing through its advertisements the true nature of the transaction resulting in the payment of extra fees as described above when they knew, or should have known, that the representations and advertisements were unsubstantiated, false, and misleading.

229.    Plaintiffs and the other members of the Nationwide Classes believed Defendants' representations to their detriment.   Plaintiffs and the other members of the members of the Nationwide Classes were injured in fact and lost money. Defendants' conduct of improperly describing the extra moneys paid as "lawful taxes imposed to fund free and compulsory education." Plaintiffs paid the extra moneys as taxes in exchange for a promise to provide free and compulsory education to the Haitian population including Plaintiffs' relatives but, did not receive the benefits of such bargain. Defendants collected the money and converted them to their own use.

230.    Plaintiffs request that this Court enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendants are not restrained from engaging in these types of practices in the future,

Plaintiffs and the members of the Nationwide Classes will be harmed in that they will continue to pay extra money on Defendants' representations that the fees collected by the remittance transactions are "lawful taxes levied by the Haitian government to fund free and compulsory education for the population."

**COUNT VIII**
**(Intentional Misrepresentation Under New York Law)**

231. Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs numbered one (1) through two hundred thirty (230) as if fully set forth herein.

232. Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Classes.

233. Throughout the Class Period, Defendants, while contracting with Plaintiffs and other Nationwide Class Members, have intentionally misrepresented a material fact about the transactions by claiming that the extra fees are "lawful taxes levied to fund free and compulsory education program;" or by purposely failing to offer a description for the line item containing the fees.

234. At the time Defendants made the misrepresentations herein alleged, Defendants knew the fees were not "lawful taxes" because the legislative body of Haiti's government never enacted a law permitting such imposition.

235. Defendants misrepresented the extra fees as "lawful fees" with the purpose of inducing Plaintiffs' and the Nationwide Class members' reliance and inducing Plaintiffs and the Nationwide Class members to contract with them and pay the extra fees.

236. Plaintiffs and the Nationwide Class members reasonably relied on Defendants' representations that the extra fees were "lawful taxes" and, in reasonable reliance thereon,

did contract with Defendants and pay the extra fees.

237. Plaintiffs and the Nationwide Class members were ignorant as to the falsity of Defendants' "lawful taxes" misrepresentations and would not have transacted with Defendants or pay the extra fees had they known the extra fees were not "lawful taxes levied."

238. Plaintiffs and the other members of the Nationwide Classes were injured in fact and lost money because of Defendants' conduct of improperly describing the extra fees paid as "lawful taxes imposed to fund free and compulsory education." Plaintiffs paid the extra fees as taxes in exchange for Defendants' promise to provide free and compulsory education to the Haitian population including Plaintiffs' relatives but, did not receive the benefits of such bargain. Defendants collected the extra fees and converted them to their own use.

## COUNT IX

### (Intentional Misrepresentation Under Florida Law)

239. Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs numbered one (1) through two hundred thirty-eighty (238) as if fully set forth herein.

240. Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Classes.

241. Throughout the Class Period, while transacting with Plaintiffs and other Class members, Defendants have intentionally misrepresented a material fact by claiming that the extra fees are "lawful taxes levied to fund a free and compulsory education program" or by purposely failing to offer a description for the line item containing the fees.

242.   At the time Defendants made the misrepresentations herein alleged, Defendants knew the extra fees were not "lawful taxes levied" because the legislative body of Haiti never enacted a law permitting such imposition.

243.   Defendant misrepresented the fees as "lawful taxes levied" with the purpose of inducing Plaintiffs' and the Class members' reliance and inducing Plaintiffs and the Class members to contract with them and pay the extra fees.

244.   Plaintiffs and the Class members reasonably relied on Defendants' representations that the extra fees were "lawful taxes levied" and, in reasonable reliance thereon, transacted with Defendants and paid the extra fees.

245.   Plaintiffs and the Class members were ignorant as to the falsity of Defendants' "lawful taxes" misrepresentations and would not have transacted with Defendants or paid the extra fees.

246.   Plaintiffs and the other members of the Class were injured in fact and lost money because of Defendants' conduct of improperly describing the extra fees paid as "lawful taxes imposed to fund free and compulsory education." Plaintiffs paid the extra fees as taxes in exchange for Defendants' promise to provide free and compulsory education to the Haitian population including Plaintiffs' relatives but, did not receive the benefits of such bargain. Defendants collected the extra fees and converted them to their own use.

## COUNT X

**(Intentional Misrepresentation Under California Law)**

247.	Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs numbered one (1) through two hundred forty-six (246) as if fully set forth herein.

248.	Plaintiffs bring this claim individually and on behalf of the Nationwide Classes.

249.	Throughout the Class Period, while transacting with Plaintiffs and the other Nationwide Class members, Defendants have intentionally misrepresented a material fact by claiming that the extra fees are "lawful taxes levied to fund a free and compulsory education program" or by purposely failing to offer a description for the line item containing the fees.

250.	At the time Defendants made the misrepresentations herein alleged, Defendants knew the extra fees were not "lawful taxes levied" because the legislative body of Haiti never enacted a law permitting such imposition.

251.	Defendant misrepresented the fees as "lawful taxes levied" with the purpose of inducing Plaintiffs' and the Nationwide Class members' reliance and inducing Plaintiffs and the Class members to contract with them and pay the extra fees.

252.	Plaintiffs and the Nationwide Class members reasonably relied on Defendants' representations that the extra fees were "lawful taxes levied" and, in reasonable reliance thereon, transacted with Defendants and paid the extra fees.

253.	Plaintiffs and the Nationwide Class members were ignorant as to the falsity of Defendants' "lawful taxes" misrepresentations and would not have transacted with Defendants or paid the extra fees.

254.	Plaintiffs and the Nationwide Class members were injured in fact and lost money because of Defendants' conduct of improperly describing the extra fees paid as "lawful taxes imposed to fund free and compulsory education." Plaintiffs paid the extra fees as taxes in

exchange for Defendants' promise to provide free and compulsory education to the Haitian population including Plaintiffs' relatives but, did not receive the benefits of such bargain. Defendants collected the extra fees and converted them to their own use.

**COUNT XI**
**Unjust Enrichment**

255. Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs numbered one (1) through two hundred fifty-four (254) as if fully set forth herein.

256. Plaintiffs bring this claim individually and on behalf of the other Class Members against Defendants.

257. Defendants, as alleged high-ranking officials of the Haitian government, Money Transfers Operators, Telecommunications companies, transacted with Plaintiffs and the other Class Members represented that the $1.50 and $0.05 fees collected are "lawful taxes levied to fund a free and compulsory education program."

258. Defendants' representations about the fees collected were false. The fees are the result of unlawful conduct of Defendants who entered into horizontal price-fixing agreements which are memorialized by two circulars and a presidential order issued in contravention of the laws of Haiti.

259. Defendants collected the fees under the ruse that they are taxes levied to fund a free and compulsory education program in Haiti. Contrary to the representations made by Defendants, the fees collected are converted to the personal and private use of the Defendants.

260. Defendants have unjustly enriched themselves in retaining revenues derived from Plaintiffs and the other Class members who paid the fees under these circumstances.

261. Defendants' misrepresentations caused Plaintiffs and the other Class Members harm and unjustly enriched Defendants because Plaintiffs and the other Class Members would not have paid the extra fees they did, had the true facts been known.

262. Defendants retention of the non-gratuitous benefits conferred on it by Plaintiffs and the other Class members as a result of these misrepresentations is unjust and inequitable.

## COUNT XII
### FRAUD

263. Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs numbered one (1) through two hundred sixty-two (262) as if fully set forth herein.

264. Plaintiffs bring this claim individually and on behalf of the other Class Members against Defendants.

265. Defendants, including high-ranking officials of the Haitian government, Money Transfers Operators, Telecommunications companies, transacted with Plaintiffs and the other Class Members represented that the $1.50 and $0.05 fees collected are "lawful taxes levied to fund a free and compulsory education program."

266. Defendants representations regarding the fees collected were false. The fees are the result of unlawful conduct of Defendants who entered into horizontal price-fixing agreements which are memorialized by two circulars and a presidential order issued in contravention of the laws of Haiti.

267. Defendants collected the fees under the ruse that they are taxes levied to fund a free and compulsory education program in Haiti. Contrary to the representations made by Defendants, the fees collected are converted to the personal and private use of the Defendants.

268. Defendants knew or should have known that under the laws of Haiti only the legislature has the power to levy taxes and that the circulars and presidential order, the instruments justifying the unlawful collection of the $1.50 and $0.05, do not in any way "have the force of law" whether in Haiti or in the United States.

269. Defendants' misrepresentations were intended to induce and actually induced Plaintiffs and the Class to contract with Defendants. In transacting with Defendants, Plaintiffs and the Class reasonably and justifiably relied on Defendants' fraudulent representations.

270. Plaintiffs and the Class were damaged through transacting with Defendants under these circumstances. Plaintiffs and the Class would not have contracted with Defendants or paid the extra fees they did, had the true facts been known.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Classes described in this Complaint, respectfully request that:

A. The Court certify the Nationwide Classes pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), and adjudge Plaintiffs and their counsel to be adequate representatives thereof;

B. Alternatively, the Court certify the Nationwide Classes pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), and adjudge Plaintiffs and their counsel to be adequate representatives thereof;

C. Alternatively, the Court certify the separate New York, Florida, and California Classes pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), and adjudge Plaintiffs and their counsel to be adequate representatives thereof;

D. The Court enter an Order requiring Defendants to pay to Plaintiffs and other members of the Classes economic, monetary, consequential, compensatory, or statutory damages,

whichever is greater; and, if Defendants' conducts prove willful, awarding Plaintiffs and the other members of the Classes exemplary damages to the extent provided by law;

E. The Court enter an Order awarding restitution and disgorgement of all moneys Defendants acquired by means of any act or practice declared by this Court to be wrongful, or any other appropriate remedy in equity, to Plaintiffs and the other members of the Classes;

F. The Court enter an Order awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices set forth above; directing Defendants to cease their deceptive and misleading marketing and collection campaign in which they describe the extra fees as "lawful taxes levied to fund free and compulsory education;" and directing Defendants to disgorge all moneys Defendant acquired by means of any act or practice declared by this Court to be wrongful;

G. The Court enter an Order declaring that the conduct alleged herein constitutes unlawful price-fixing, monopolization, and attempted monopolization in violation of Sections 1 and 2 of the Sherman Antitrust Act; the New York Donnelly Act, New York common law, Cartwright Act, California common law, and Florida common law;

H. The Court enter an Order awarding Plaintiffs, individually and on behalf of the other members of the Classes, their expenses and costs of suit, including reasonable attorneys' fees and reimbursement of reasonable expenses, to the extent provided by law;

I. The Court enter an Order awarding to Plaintiffs individually and on behalf of the other members of the Classes pre- and post-judgment interest, to the extent allowable; and

J. For such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiff and the Class members hereby demand a trial by jury.

Dated: December 22, 2018.

Respectfully submitted by

s/ MARCEL P. DENIS_____
MARCEL P. DENIS
**DENIS LAW GROUP, PLLC**
9602 Avenue L
Brooklyn, New York 11236
Telephone:     (404) 977-9733
Facsimile:      (917) 810-3816
Email:           *mdcounsel@gmail.com*

Rodney R. Austin
**RODNEY R. AUSTIN PLLC**
61-43 186th Street
Fresh Meadows, New York 11365
Telephone:     (718) 475-2119
Facsimile:      (877) 586-7490
Email:           rodney@raustinlaw.com