

March 28, 2019

*Via ECF*

Judge LaShann DeArcy Hall
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Odilon S. Celestin, et. al. v. Michel Joseph Martelly, et. al.*, 18-CV-7340-LDH-JO; Unitransfer USA, Inc.'s Motion for Sanctions pursuant to FRCP 11

Your Honor:

Pursuant to your Individual Practices, Defendant Unitransfer USA, Inc. ("Unitransfer") requests a briefing schedule regarding its motion for sanctions pursuant to Rule 11, which was served on plaintiffs' counsel on March 6, 2019. The safe harbor period has now expired, and plaintiffs have failed to take any corrective action. Rule 11 sanctions are proper when a party files a pleading that has no reasonable factual basis or a party files a pleading in bad faith for an improper purpose.[1] Rule 11 imposes an affirmative duty on counsel to make some pre-filing inquiry into both the facts and the law so that counsel can be in a position to certify that a complaint is well grounded in both fact and law.[2] In this instance, plaintiffs' counsel have failed in that duty as there is no evidentiary support that: (1) Unitransfer ever entered into any unlawful agreements, (2) Unitransfer ever collected fees from the purported class members, (3) Unitransfer made any material misrepresentations to induce the payment of fees, (4) Unitransfer was enriched by the collection of the fees, (5) Unitransfer conducts business in California to substantiate a violation of California state law, or (6) plaintiffs did not consent to paying the fees, as is required for a claim under Florida's Civil Theft Statute.

<u>No evidence supporting an unlawful agreement</u>: Each claim against Unitransfer relies on Unitransfer entering into an unlawful agreement with other defendants in violation of the Sherman Act.[3][4] Plaintiffs have no evidence of Unitransfer entering into any agreement with other defendants, let alone an agreement with an unlawful objective. A reasonable inquiry, would have revealed the absence of any evidence of Unitransfer entering into an agreement with an unlawful objective. Tellingly, plaintiffs do not even allege any facts in their amended complaint to support their conclusory allegations that Unitransfer entered into an unlawful agreement. It is unclear whether plaintiffs allege (1) Unitransfer had an agreement with Haiti, or (2) the agreement was among Unitransfer, the other money transfer

---

[1] *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 389-90 (1990); *see also Angrisani v. City of New York*, 639 F. Supp. 1326 (E.D.N.Y. 1986).

[2] *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009.

[3] *Liebers v. Moore Pretzel Co.*, 1995 U.S. Dist. LEXIS 5137, *12-13 (Mar. 10, 1995 E.D.N.Y.) ("[T]o sustain a claim of an unlawful agreement [in violation of Section 1 of the Sherman Act], the evidence must 'tend[] to exclude the possibility' that the defendant had any reason for the action complained of, other than an unlawful objective.") (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984)).

[4] D.E. 15, ¶¶ 1, 2, 26, and 32.

1325 AVENUE OF THE AMERICAS, 27TH FLOOR • NEW YORK, NY 10019
212.763.8491 MAIN • 212.763.8304 FAX

STINSON.COM

CORE/3515246.0002/151681409.1

operators and Haiti, or (3) the agreement was among all defendants. This lack of specificity further reveals of plaintiffs' lack of evidence and due diligence in bringing this lawsuit. This lack of evidentiary support for the contention that Unitransfer entered into some agreement to pursue an unlawful purpose violates Rule 11, and justifies the imposition of sanction.

No evidence plaintiffs suffered damages from Unitransfer collecting funds for the fees: Each claim against Unitransfer relies on plaintiffs' palpably false allegations that they suffered damages from paying the purportedly unlawful fees.[5] The purported "class" consists only of people in the United States and its territories who were subject to the $1.50 fee.[6] Simply put, no such class members exist as to Unitransfer. Any receipt from a transaction using Unitransfer makes clear that the $1.50 at issue is paid by the recipient of the money transfer in Haiti, at the time they withdraw the transferred funds. In cases where money is being transferred from Haiti to the U.S., Unitransfer assesses the $1.50 fee at issue against the sender in Haiti at the time the transfer is made. As such, there is no evidence whatsoever showing the fee being assessed in the U.S. Thus, even if this fee was illegal (which it is not), because the class is limited to people in the U.S. and its territories, and Unitransfer never subjected any of those people to paying the fee here, (1) none of the alleged class members have suffered any damages from Unitransfer's conduct, and (2) by definition, no one can even qualify as a class member from having used Unitransfer's services. Importantly for Rule 11 purposes, this information was readily available to plaintiffs, as it is printed on every Unitransfer receipt. It is thus clear that plaintiffs failed to conduct a basic review of the facts, let alone an objectively reasonable inquiry, before suing. Moreover, Unitransfer explained this in detail in its motion for Rule 11 sanctions, and Plaintiffs and their counsel have continued to pursue their claims after the expiration of the safe harbor period.

No evidence of Unitransfer making material misrepresentations: There is no factual support for Unitransfer making material misrepresentations, which plaintiffs rely on in each claim. Plaintiffs repeatedly allege in support of their claims that defendants represented the fees were "lawful taxes levied [or "imposed"] to "fund free and compulsory education."[7] However, the amended complaint contradicts this claim as it shows that every Unitransfer receipt states that the $1.50 is "fee imposed by the BRH."[8] It is glaringly obvious, based on plaintiffs attributing such alleged representation to all "Defendants," that plaintiffs are attributing a quote by defendant Martelly regarding the fees being for his "free and compulsory education program" to all defendants without any regard to whether Unitransfer ever made such a representation. Plaintiffs cannot circumvent their lack of evidence of Unitransfer making that representation by falling back on their claimed unlawful conspiratorial agreement because there is no evidence Unitransfer ever entered into one.

Unitransfer was never enriched by the fee: There is no evidentiary support for plaintiffs' unjust enrichment claim against Unitransfer. Incredibly, plaintiffs directly contradict their conclusory allegations that Unitransfer converts the fees for its "personal and private use" and is "unjustly enriched . . . in retaining revenues derived from Plaintiffs and other Class members who paid the fees,"[9] by

---

[5] *Id.* at ¶¶3, 4, 6, 15-19, 26, 61, 157.

[6] *Id.* at ¶160 (defining the class as "All persons in the United States and its territories who used the services of one or more of the . . . [defendants] during the Class Period who were subjected to paying the $1.50 on wire transfers made to and from Haiti and $0.05 per minute on phone calls placed to and from Haiti").

[7] *E.g. Id.* at ¶¶ 183-84, 191-92, 197, 199, 213, 217-18, 226-27, 239, 248, 256, 264, 267, 275.

[8] *Id.* at ¶108.

[9] *Id.* at ¶¶3, 269 and 270.

acknowledging the fees are ultimately remitted to and collected by Haiti.[10] Thus, plaintiffs not only have no evidence of Unitransfer receiving enrichment, they concede they have evidence negating that claim. The inescapable result is that Rule 11 sanctions are warranted.

<u>Unitransfer does not conduct business in California</u>: There is no evidentiary support for the claims that Unitransfer violated the California code and/or common law[11] because Unitransfer neither conducts business in California nor holds a license to do so. Any reasonable inquiry by plaintiffs would reveal that Unitransfer is licensed to do business in only eleven (11) states, and not in California. Publicly available records also show Unitransfer is not registered in California.[12] Further, plaintiffs have no evidence that Unitransfer conducted business in California without being properly registered. It does not do so. Nevertheless, plaintiffs assert claims against Unitransfer for violation of California state law (Counts 5-7, 10) that each rely on the false premise that Unitransfer conducts business in California. Plaintiff Marazita alleges that he resides in California and contracts with Unitransfer.[13] This is either palpably false or misleading because no such contract could have taken place in California in light of Unitransfer not conducting business there. As it is easily verifiable from public records that Unitransfer does not and cannot conduct money transfers in California, plaintiffs asserted these claims against Unitransfer both without any basis in fact or evidence and without making any reasonable inquiry into whether the California-based allegations would be supported against Unitransfer. Plaintiffs' counsel and plaintiff Marazita should be individually sanctioned for these patently false allegations.

<u>Unitransfer cannot be liable under Florida's Civil Theft Statute</u>: The claims for civil theft and conversion lack the required evidentiary support. Regardless of any other allegations, there is no evidence disputing that, by paying the fees to Unitransfer, the payers of the fees consented to the fees and Unitransfer lacked the intent necessary to support a violation of Florida's civil theft statute or a conversion claim. Under Florida law, "[t]here can be no conversion where a person consents to the possession by another of the assets allegedly converted. . . . Likewise, such consent clearly precludes the intent to deprive another person of his property as required by the Florida civil theft statute."[14] In *Capital Factors*, the court ruled that the payees at issue consented consent when they knowingly paid charges designated for taxes. The same holds true with plaintiffs paying the fees here, and such consent precludes intent to steal, which renders conversion and civil theft unsustainable.[15] Plaintiffs had no evidentiary basis for such intent and should be sanctioned.

---

[10] *Id.* at ¶62, fn. 4 ("The US$300,000,000 is predicated on the disclosure made by Defendant Lamothe, former Prime-Minister of Haiti, in his interview with the Miami Herald. If the government collected between $40 and $50 million after the year 2011-201, it stands to reason that after 6 years of averaging $50 million, the total to date amounts to $300,000,000.")

[11] *Id.* at ¶¶ 26, 162-163, 211-240, and 257-264.

[12] Unitransfer does not appear a in search in California's Secretary of State website for all registered businesses. https://businesssearch.sos.ca.gov/CBS/SearchResults?filing=False&SearchType=CORP&SearchCriteria=Unitransfer+USA&SearchSubType=Keyword

[13] D.E. 15, ¶ 19.

[14] *Capital Factors v. Gen. Plastics Corp.*, 184 B.R. 996, 1003-04 (Bankr. S.D. Fla. 1995).

[15] *See also Transcapital Bank v. Shadowbrook at Vero, LLC*, 226 So. 3d 856, 864 (Fla. 4th DCA 2017). (requiring directed verdict for defense on civil theft claim where, among other things, "plaintiffs presented no evidence of any criminal intent of the defendants, much less clear and convincing evidence of any such intent").

Respectfully submitted,

Stinson Leonard Street LLP

/s/ Kieran M. Corcoran
Kieran M. Corcoran (KC4935)
kieran.corcoran@stinson.com

-and-

Paul D. Turner, *Pro Hac Vice*
Perlman, Bajandas, Yevoli & Albright

**Attorneys for Defendant Unitransfer USA, Inc.**

cc: All Counsel of Record via ECF