UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ODILON S. CELESTIN, WIDMIR ROMELIEN, MARIE LUCIE ST VIL, GORETTIE ST VIL, JEANNETTE VALEUS, GUETTY FELIN, HERVE COHEN, and on behalf of all others similarly situated,

     Plaintiffs,

- against -

MICHEL JOSEPH MARTELLY, JOCELERME PRIVERT, JOVENEL MOISE, THE WESTERN UNION COMPANY, d/b/a Western Union Holdings, Inc, Western Union Financial Services, Inc., and through other subsidiaries and affiliates, CARIBBEAN AIR MAIL, INC., d/b/a CAM, UNIBANK, S.A., UNITRANSFER USA, INC., UNIGESTION HOLDING, S.A., d/b/a DIGICEL HAITI, NATCOM S.A., and THE GOVERNMENT OF HAITI,

     Defendants.

18-cv-7340 (LDH) (PK)

ECF CASE

**DECLARATION OF JEAN-FRÉDÉRIC SALÈS**

---

I, Jean-Frédéric Salès, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true:

  1.  I am a practicing attorney in good standing with the bar of Port-au-Prince, Haiti.

  2.  I am the Managing Partner at Cabinet Salès, in Port-au-Prince, Haiti. I have a general practice that includes work related to litigation, labor, and corporate matters. As a result, I am familiar with the Haitian court system and its Code of Civil Procedure.

  3.  I obtained a law degree from the Université d'Etat d'Haiti in 1978, and a Bachelor Degree in business administration from the University of Puerto Rico in 1967.

4. I joined Cabinet Salès in 1978 and have acquired legal expertise in litigation, labor law, and business law. I have represented clients in many different legal matters before Haitian courts and in arbitration.

5. I am a member of the following associations:

   a. Interamerican Bar Association;

   b. International Union of Lawyers;

   c. Inter-American Law Professors Association;

   d. International Trademark Association (INTA);

   e. Asociación Interamericana de la Propiedad Industrial (ASIPI);

   f. Member of the Bar Council of the Port-au-Prince Bar Association, 1998-2000;

   g. Quisqueya University (founding member, Board of Trustees Member, 1990-to date);

6. I served as a professor of law at the State University and at the University of Quisqueya in Port-au-Prince, Haiti from 1987 until 2003.

7. I have authored the following publications:

   a. L'abaissement de l'âge de la majorité à 18 ans et ses conséquences juridiques en Haïti, 1978;

   b. Répertoire alphabétique de notes de jurisprudence haïtienne 1964-1988, 1991;

   c. Code du travail de la République d'Haïti annoté, 1993;

   d. Réflexions sur le statut et le futur de notre système judiciaire, 1993;

   e. Les méthodes alternatives de règlements de conflits envisagées dans la perspective de l'amélioration de la justice en Haïti, 1994;

f. Effets de la non complémentarité des systèmes de retraite sur la protection sociale en Haïti, 1994;

g. L'administration de la justice et l'indépendance des professions judiciaires en Haïti: quel avenir?, 1995;

h. Intégration économique, droit de l'intégration et défis pour l'avenir de la profession d'avocat, 1996;

i. La problématique des divers régimes de retraite en Haïti, 1997;

j. Panorama international des systèmes de pensions, 1998;

k. Reforma judicial: la experiencia haitiana, 1998;

l. La conciliación en el campo laboral: importancia y eficacia, 1998;

m. Déontologie de l'avocat, » 1999; « Droit et santé des travailleurs, 1999;

n. El dilema de la seguridad social: ¿refinanciamiento público o privatización?, 1999;

o. Arbitraje: ¿ privatización de la Justicia?, 2000;

p. Ethique et droits de l'homme dans l'exercice de la profession d'avocat, 2001;

q. Escuela de la Magistratura: recursos humanos, capacitación, sensibilización, 2001;

r. Le droit des affaires pour une Haïti compétitive, 2002;

s. Profession d'avocat et globalisation, 2002;

t. Arbitraje, aceso a la justicia y globalización, 2006;

u. Aceso a la profesión de abogado, 2006;

v. Globalización e impacto sobre la profesión de abogado, 2007;

w. Le règlement des différends de la CARICOM dans le cadre du Traité révisé de Chaguaramas, 2008.

8. I have acted as an expert regarding Haitian law and Haitian legal standards in the following proceedings:

a. *Interstate Adjusters, Inc. v. Commercial Union Ins. Co.*, 1:96-cv-01039-MBM-SEG (S.D.N.Y.); and

b. *In re Estate of Steril*, 902 So. 2d 915 (Fla 2d Dist. Ct. App. 2005).

9. I have been retained by the Moving Defendants in the above-captioned case to opine on issues of Haitian law relevant to their motion to dismiss for *forum non conveniens*.

10. In preparation for authoring this declaration, I have reviewed the Second Amended Complaint (the "SAC").

11. I also have reviewed the relevant Haitian laws, Circulars, and Presidential Order referenced in the Second Amended Complaint, as well as cases, treatises, and other legal materials relevant to the subject matter discussed herein.

**Haitian Court System**

12. Haiti is a civil law country which adopted the French civil law system in 1826. This system provides due process, including the right to notice of proceedings, the right to be heard, the right to present evidence and examine witnesses, and the right to counsel.

13. Haiti's judicial system is independent. The Supreme Council of the Judicial Branch (Conseil Supérieur du Pouvoir Judiciaire, CSPJ) is the highest administrative authority of the judicial system. Once voted on by the Parliament and signed by the executive branch, the funds allocated to the judiciary are disbursed to the CSPJ, which then allocates it to lower tribunals and courts in Haiti. CSPJ is also the disciplinary body of the judicial system in Haiti. As such it has



4

the mission to supervise the judiciary and sanction members of the judiciary for violations. It can act on its own, whenever it finds out about a violation, or in response to a complaint filed against a member. If any allegations are proven to be a felony or a criminal offense, the CSPJ will refer the matter to the corresponding court in this capacity.

14. Haiti's courts and judges are independent from the legislative and executive branches of government, as per Article 59 of the Haitian Constitution.

15. Generally, judges in Haiti have the following qualifications and training: in addition to their four-year law degree, the student judges receive specialized training over the course of nine months at the National School of Judges. The National School for Judges guarantees the quality and neutrality of the recruiting process of the judge candidates. The judges receive continuing legal education at the National School for Judges throughout their careers.

16. Haitian courts are governed by civil and criminal codes of procedure (including rules on evidence), as well as supplemental laws.

17. The Haitian courts have four tiers: 1) The Supreme Court (*Cour de Cassation*, the highest court and court of last resort for appellate matters; 2) the Courts of Appeal, five regional appellate courts; 3) the Courts of First Instance, eighteen courts of original jurisdiction in civil, commercial, and criminal matters, presided over by judges and magistrates; and 4) justice of the peace tribunals, which have jurisdiction over small claims (there are approximately 150 justice of the peace tribunals, at least one in each municipality).

18. Haiti also has several specialty courts, including the High Court of Accounts (*Cour Supérieure des Comptes et du Contentieux Administratif*), which hears appeals and claims for damages by individuals against the State. This court also has an administrative function auditing the accounts of the State. One of the missions of the High Court of Accounts is to audit all of the



government administrations, ministries and agencies. The decisions of the High Court of Accounts can be appealed before the Supreme Court (Cour de Cassation).

19. Parties may appeal decisions rendered by a trial judge of a Court of First Instance. The intermediate Court of Appeal may decide issues of fact and law and may make entirely new findings as to any issue of fact or law raised on appeal. Further appeal to the Supreme Court is limited initially to questions of law. If the Supreme Court overturns a decision and remands it to a new Court of Appeal, any unsatisfied party has a right of recourse against the decision rendered by said Court of Appeal: in this case, if the Supreme Court overturns the decision anew, it will decide on both facts and law.

**Haitian Civil Procedure and Jurisdiction**

20. Haitian civil procedure is set out in the Haitian Code of Civil Procedure.

21. As described below, the Haitian courts would have jurisdiction over the claims asserted in the SAC and over the defendants under the particular circumstances of this case.

22. Under Haitian law, the Courts of First Instance have full capacity for all civil, commercial and criminal matters (Article 61 of the Code of Civil Procedure).

23. The conduct alleged by Plaintiffs (including the enactment and administration of the Circulars and Presidential Order and the alleged misuse of the fees collected pursuant to the Circulars and Presidential Order) took place in Haiti, and thus Haitian courts would have subject matter jurisdiction over the dispute, regardless of the Defendants' nationality or where certain of the allegations occurred. Haitian Courts have *rationae materie* competence (competence on the subject matter) according to Article 62 of the Code of Civil Procedure given that the Presidential Order and Circulars which are the operating factors originated in Haiti.

24. Further, the core issue of the lawfulness of the fees imposed by the Republic of Haiti and its representatives, including the individual defendants (all Haitian nationals), is a pure question of Haitian law, which falls squarely under the subject matter jurisdiction of Haitian courts.

25. Separately, the Moving Defendants have indicated that they would consent to jurisdiction in Haiti with respect to the claims asserted, which, under the circumstances, provides a basis for personal jurisdiction for a Haitian court to hear this case with respect to those claims.

26. Because the Second Amended Complaint seeks injunctive and monetary relief from the Government of Haiti, it belongs in the High Court of Accounts, a specialty court in Haiti which is endowed with specific jurisdiction by Article 200.1 of the Constitution and Article 23 of the High Court of Accounts Act over claims for injunctive relief and damages against the Government of Haiti.

### Initiating Civil Actions in Haiti

27. Plaintiffs would not face any barrier to filing this suit in Haiti. To do so, the Plaintiffs will have to serve a writ on the Defendants. The Defendants then have eight clear days (i.e., not counting the first day and last day) to inform the Plaintiffs who they have chosen as their respective legal counsel. Legal counsel then has five clear days to request discovery of all documents that the Plaintiffs intend to use in their action. Once the document discovery process has been finalized (i.e. the documents have been submitted), the Defendants' counsel will have 15 clear days to serve a responsive writ to the Plaintiffs. The Plaintiffs will then have the right to request from the Defendants discovery of all documents that they intend to use in their defense. All documents will have to be communicated between the parties through a bailiff, translated in French if originally written in a foreign language, and registered at the office of the Register of

Deeds of the Internal Revenue Service (Direction Générale des Impôts) (Articles 77 and 84 of the Code of Civil Procedure).

28. In Haiti, if a defendant is domiciled in or is a resident of Haiti, lawsuits are served by personal service (via a bailiff), according to the procedure set by the Haitian Code of Civil Procedure (Article 64). If a defendant is domiciled or resides abroad, the procedure for service is governed by Article 70-6 of the Code of Civil Procedure, which provides that service has to be effected through the office of the District Attorney of the jurisdiction, who in turn will forward it to the Ministry of Justice, which will transfer it to the Ministry of Foreign Affairs to the closest Haitian consulate for final remittance.

29. Under the circumstances of this case, Plaintiffs should not face any challenges to filing suit in Haiti and serving all of the Defendants.

**Collecting and Presenting Evidence, Including Witness Testimony, in Haitian Civil Courts**

30. The evidence relevant to this dispute would be available to a Haitian court.

31. Based on my review of the Second Amended Complaint, it is clear that much, if not all, of the relevant evidence would be located in Haiti.

32. Based on my review of the Second Amended Complaint, relevant evidence in Haiti would include documents or other evidence (a) relating to the Republic of Haiti and its representatives, including any documents or other evidence concerning the enactment and enforcement of the Circulars and Presidential Order; (b) concerning the use of fees collected by the Central Bank; and (c) concerning the conspiracy alleged by Plaintiffs, which allegedly occurred in Haiti. SAC ¶¶ 22-23, 53-67, 68 n.7, 69-71, 170-74, 181-90, 196, 199-219.

33. Based on my review of the Second Amended Complaint, most of the relevant witnesses are located in Haiti, including many of the Defendants (who are Haitian nationals),



employees or agents of many of the corporate Defendants living and working in Haiti, as well as the Government of Haiti and its representatives. SAC ¶¶ 22-23, 170, 191, 199, 202-04, 209-19.

34. In civil cases, evidence that the parties intend to use is done through the office of the clerk of the court. The documents are remitted to the office of the clerk of the court, which will in turn deliver them to the other party.

35. The Haitian system has a separate procedure for the adjudication of claims against the Government. In these instances, the claims have to be brought before the High Court of Accounts. In such cases, transfer of documents is done through the office of the clerk of the High Court of Accounts.

36. In civil and commercial litigations, the court may order the personal appearance of the parties it deems necessary (Article 183 of the Code of Civil Procedure). Photocopies of documents are not admitted unless both parties agree to use them. Documents must be original or certified copies, in French and duly registered at the register of deeds office. All documents that will be used in the court of law have to be registered with the register of deeds office.

37. Haitian courts are able to compel witnesses to testify, whether they are willing or unwilling, if they deem that their testimony is necessary to decide a case. In such cases, judges have authority to enforce their orders by several means and can even have the witnesses forcefully brought to court to provide the needed testimony. This is enforced under Articles 198 and 199 of the Code of Civil Procedure, which provide compulsory process for unwilling witnesses, as well as punishments for witnesses who refuse to testify after being so compelled. These procedures permit compelling both party witnesses and third-party witnesses, alike.

38. In Haitian lawsuits, parties may call witnesses. Questions are asked in open audience of the court (Articles 187 through 235 Code of Civil Procedure).



39.     A Haitian court would also have authority to issue an order requesting, through mutual legal assistance, the production of documents and the examination of witnesses located in the United States. Witnesses and parties located in the United States could appear and give evidence in Haiti.

**The Allegations in the Second Amended Complaint Could Be Litigated Under Haitian Law**

40.     If Plaintiffs were to pursue their claims in Haiti, they could sue for a variety of monetary damages, restitution, and/or reimbursement of funds transferred. Under Haitian law, there are no caps on the monetary value of these types of damages.

41.     Plaintiffs also have the ability to bring their claims in the form of a collective proceeding against the Defendants in Haiti, in which the plaintiffs are identified and joined together in one litigation.

42.     In addition, the subject matter of the Second Amended Complaint can be addressed under Haitian law, specifically, in the Criminal Code (Code Penal),[1] Chapter II Articles 324 through 351, which prohibits theft, fraud, fraudulent bankruptcy, swindling, breach of trust, and violation of commercial rules (*vol, dol, banqueroute frauduleuse, escroquerie, abus de confiance,* and *violation des règlements relatifs au commerce et aux arts*). Specifically, Articles 324 through 333 outlaw theft. Articles 334 through 337 prohibits swindling and acts of fraud.  Articles 338 through 340 prohibit breach of trust. Violation of various commercial rules are barred by Articles 345 through 351. False advertising is considered a form of fraud and is prohibited by Article 337. Price fixing is formally prohibited under Haitian law by the Decree of May 17, 1995, which modified the Decree of February 13, 1964. It states in its first article: "Hidden or declared cartels



---
[1] Although the prohibitions fall under the Criminal Code, the term "criminal" refers to the type of wrongdoing and does not refer to the remedy available for violations.  Indeed, plaintiffs who successfully show violations of those provisions are entitled to monetary remedies.

are prohibited as free and organized agreement" ("*Les cartels occultes ou declarés sont prohibés sous forme d'entente libre et organisée*"). Unfair competition is considered a commercial violation and is sanctioned under Article 37 of the Trademark Act of July 17, 1954.

43. Haitian courts would provide a more effective remedy for this lawsuit because Haitian law does not provide for the execution of foreign judgments on Haitian soil. In effect, that would mean that even if a United States District Court were to agree to hear the case and would decide on the merits against Defendants, Plaintiffs would have no recourse to enforce that decision against any of the parties domiciled in Haiti (Article 502 of the Haitian Code of Civil Procedure).

**Haiti's Public Interest in this Dispute**

44. The alleged wrongdoing at the heart of Plaintiffs' claims took place in Haiti and relates to Haitian governmental authorities (two former Presidents, one current President, and the Government of Haiti) and businesses alleged to be either domiciled in Haiti or doing business in Haiti. *See* SAC ¶¶ 22-23, 53-67, 68 n.7, 69-71, 170-74, 181-90, 202-04, 209-19.

45. Plaintiffs allege that private entities conspired with Haitian governmental authorities to collect $1.50 on money transfers and $0.05 per minute on international telephone calls as required by Haitian Circulars and Presidential Orders, which Plaintiffs contend were unlawful.

46. The core of this dispute is the legality of the Circulars and Presidential Order, which can only be resolved by a Haitian court that is familiar with Haitian law and the Haitian Constitution.

47. Based on the foregoing, Haiti's laws and legal system are capable of entertaining this lawsuit and providing a remedy for Plaintiffs. Most witnesses and evidence are located in Haiti, making it a more sensible, efficient, and economical forum for the lawsuit. Moreover, given



that the legality of the Circulars and Presidential Orders underlies this case, Haiti's government and Haiti's citizens have a greater interest in this lawsuit than a U.S. court or U.S. citizens.

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, the foregoing is true and correct, and that I executed this declaration on ____May 14____, 2019, in Port-au-Prince, Haiti.

Jean-Frédéric Salès