UNITED STATES DISTRICT COURT
IN THE UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ODILON S. CELESTIN, WIDMIR ROMELIEN,
MARIE LUCIE ST VIL, GORETTEIE ST VIL,
JEANNETTE VALEUS, GUETTY FELN,
HERVE COHEN, and on behalf of all others
Similarly situated,

                         Plaintiffs,

              -against-

MICHEL JOSEPH MARTELLY, JOCELERME
PRIVERT, JOVENEL MOISE, THE WESTERN
UNION COMPANY, d/b/a Western Union Holdings, Inc.,
Western Union Financial Services, Inc., and through
other subsidiaries and affiliates,
CARRIBEAN AIR MAIL, INC., d/b/a CAM,
UNIBANK, S.A., UNITRANSFER USA, INC.,
UNIGESTION HOLDING, S.A. d/b/a DIGICEL
HAITI, NATCOM S.A., and THE GOVERNMENT
OF HAITI,

                   Defendants

Case No. 18 cv-7340 (LDH) (PK)
ECF CASE

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS'SECOND AMENDED CLASS ACTION
COMPLAINT**

## Table of Contents

PRELIMINARY STATEMENT................................................................1

FACTUAL ALLEGAITONS..............................................................2

ARGUMENT...........................................................................6

    The Act of State Doctrine is Inapplicable......................................6

    Defendants are not Entitled to Dismissal Based on Forum Non Conveniens..............12

    HAITI is Not an Adequate Alternative Forum for this Litigation..........................14

    The Public and Private Interest Factors Are in Favor Plaintiffs Forum Choice...........15

    Availability of Compulsory Process to Compel Unwilling Witnesses......................20

    The Cost of Cooperative Witnesses to Attend Trial.......................................20

    Enforceability of a United States Court Judgment.........................................21

CONCLUSION...........................................................................21

## TABLE OF AUTHORITIES

### CASES

*Allstate Line Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 1002 (2d Cir. 1993)......................18

*Banco Nacionale de Cuba v. Sabbatio*, 376 U.S. 398 (1964)....................................................8

*Daventree Ltd. v. Republic of Azerbaijan*,

349 F.Supp.2d 736, 745 (S.D.N.Y. 2004)............................................................................10

*DiRienzo v. Phillip Services Corp.* 232 F.3d 49 (2d Cir. 2000)........................13,16,17,18,19

*Filartiga v. Pena Irala*, 630 F.2d 876, 889-90 (2d Cir. 1980)......................................6,8,9

*Government of Dominican Republic v. AES Corp.*,

466 F.Supp.2s 680, 695 (E.D.Va. 2006)..............................................................................12

*Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 147 (2d Cir. 2000)..............12,13,14,16

*Gulf Oil Corp., v. Gilbert*, 330 U.S. 508-09 (1947)...............................................................15,18

*In re Philip Servs.*, 49 F.Supp. 2d 629, 634(S.D.N.Y. 1999))............................................13

*In Re Vitamin C Antitrust Litig.*, 810 F. Supp. 2d 522, 546 (E.D.N.Y. 2011)........................9

*Iragorri v. United Tech. Corp.*, 274 F.3d 72-76 (2d Cir. 2001)......................................12

*Koster v. Lumbermens Mutual Casualty Co.*,

330 US 518, 524, 67 S. Ct. 828. (1947)..............................................................................19

*Liu v. Republic of China*,

892 F.2d 1419 (9th Cir. 1989), *cert. dismissed*, 497 U.S. 1058 (1990)...............................8

*Lyondell-Citgo Refining, LP v. Petroleos de Venezuela,* S.A.,

2003 WL 2187898 (S.D.N.Y. Aug. 8, 2003)........................................................................11

*Malewicz v. City of Amsterdam*, 2007 WL 1847851 (D.D.C. June 27, 2007).......................11

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F. 3d 146, 153 (2d Cir. 2005)....................12

*Piper Aircraft Co. v. Reyno,* 454 U.S. 254-255 (1981)................................................14

*Texas Trading & Milling Corp. v. Federal Republic of Nigeria,*

*U.S. v. Giffen*, 326 F.Supp.2d 497 (S.D.N.Y. 2004)................................................11

*Underhill v. Hernandez*, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897)...........................8

*Waldman v. Palestine Liberation Organization,*

 835 F3d 317, 334 n 12 (2d Cir. 2016)................................................................12

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 102 (2d Cir. 2000).............................13

*WS Kirkpatrick & Co., Inc., v. Environmental Tectronics Corp., International,*

 110 S Ct 701, 707 (1990)..............................................................................8

### STATUTES & RULES

28 U.S.C.A. § 1603 (2005)................................................................10

### TREATISES

Restatement (Second) of Foreign Relations Law of the United States § 46 (1962).................8

Restatement (Third) of Foreign Relations Law of the United States §402, §443.................7,10

### OTHER AUTHORITIES

"A Billionaire Lends Haiti a Hand," The New York Times (January 6, 2012)
https://www.nytimes.com/2012/01/07/business/
digicels-denis-obrien-helps-rebuild-haiti.html................................................8

Constitution of Haiti (1987 amended)
https://www.constituteproject.org/constitution/Haiti_2012.pdf?lang=en.......................7

## PRELIMINARY STATEMENT

Plaintiffs on behalf of themselves and a putative nationwide class submit this Memorandum of Law in support of their opposition to defendants' motion to dismiss their second amended class action complaint.

Plaintiffs sued the defendants for illegally assessing fees on money transfers and telephone calls from the United States to Haiti in violation of U.S. federal and state laws. The fees assessed were borne out of a conspiracy by and among the defendants that was concocted in Haiti to be effectuated in the U.S. The Plaintiffs and members of the putative class were told that the monies were being collected to fund education pursuant to a presidential order and circulars issued by then Haitian President and Prime Minister, Michel Joseph Martelly and Jean Max Bellerive respectively. The presidential order and circulars violated Haitian laws in accordance to their constitution but more importantly the implementation of the order and circulars violated both U.S. state and federal laws.

The moving defendants filed a motion to dismiss the Plaintiffs second amended class action complaint based on the *act of state doctrine* and the doctrine of *forum non conveniens*. The act of state doctrine prohibits a U.S. court from adjudicating the outcome of cases when its legal or illegal actions are within a country's own territory. The injurious conducts complained of were not effectuated within the territorial bounds of Haiti but in the U.S. The fact that the conspiracy was concocted in Haiti, the legality or illegality of the presidential order and circulars or the fact that the collected fees were misappropriated in Haiti is not dispositive as to whether the application of the presidential order and circulars violated U.S. laws in their application within the U.S. Because the actions causing injury to Plaintiffs and others similarly situated occurred in the U.S., the act of state doctrine is inapplicable in this case.

1

This district or any other district within the U.S. is the correct forum to hear this matter. Defendants *forum non conveniens* challenge cannot withstand judicial scrutiny. Plaintiffs are U.S. citizens and residents and chose this district as their home forum. Defendants seek to dismiss this matter in favor of Haiti which effectively is an inadequate forum for this matter for a myriad of reasons outlined in the memorandum of law. Despite defendants misguided assertions that all the evidence and relevant witnesses are located in Haiti, the facts do not support said assertions. Not only are the Haitian courts without jurisdiction, they are not equipped to hear this matter; their entire judicial system is in shambles, which is indicative of the continuous civil unrest, instability and corruption which plague the poorest nation in the western hemisphere.

For the foregoing reasons, Plaintiffs respectfully submit that the moving defendants' motion be denied in its entirety.

## FACTUAL ALLEGAITONS

Defendant Michel Joseph Martelly along with current and former high-ranking officials in the Haitian government and the moving defendants conspired to fraudulently collect $1.50 on all money transfers from the U.S. to Haiti, and $.05 on all telephone calls from the U.S. to Haiti beginning on or about June 2011. As per the terms of the conspiracy, the intended victims of the scheme orchestrated in Haiti were the people of the United States and Europe.

Defendant Martelly conspired with the other defendants long before taking his oath of office. According to Defendant Martelly, the other defendants were eager to commence collecting the funds; however, since he was not yet sworn in and did not put in place the proper mechanism to begin the fraudulent collection, he instructed them to exercise patience. See SAC ¶¶ 53-55,79,171.

2

Haiti has no law authorizing the collection of fees in favor of providing free education. Under Haiti's jurisprudence. See SAC ¶ 57. The parliament is the only body empowered to raise taxes and or fees for the benefit of the State, a fact that Defendant Martelly was aware of. Defendant Martelly enacted a president order together with two circulars calling for the imposition and collection of the fees at issue. The president order and circulars were issued in violation of Haiti's Constitution and existing laws. See SAC ¶¶ 59,63,65-66.

Pursuant to the language of the Presidential Order, the floor price for all calls to Haiti would be US$0.23 per minute. Prior to the order, the long-distance call to Haiti costs US$0.18. Pursuant to Defendant Martelly together with the Telecommunication Defendants, the presidential order places them in a position to collect a total of 30 to 40 million dollars a year. See SAC ¶¶60-62,171-173.

The circulars were executed by the Governor of the Banque de la République d'Haiti (hereinafter "BRH") in contravention with the charter of the BRH. The Circulars allow the Money Transfer Operators (hereinafter "MTO") defendants to collect a total of 7.5 million dollars a month or a total of 90 million dollars a year. See SAC¶ 66,178-179.

Initially Defendant Martelly wanted to collect US$1.00 from every transfer effectuated to Haiti from the MTO Defendants. According to Defendant Maretelly, the collection of the US$1.00 from the MTO Defendants would have yielded 5 million dollars monthly. See SAC¶¶176,177. After Defendant Martelly entered into the price-fixing agreement to raise the price on transfers and telephone calls to Haiti, the one dollar he claimed that he was seeking from the MTO Defendants increased by US$0.50 and as opposed to collecting it from the MTO Defendants as advocated before the price-fixing agreement, Defendants were now collecting US$1.50 from the people of the United States remitting funds to Haiti as the circulars required. See SAC¶¶ 178,179.

3

The terms of the circulars obligate the Defendants to collect the US$1.50 from the source. The source being the situs where the funds are wired from. To comply with the terms of their agreement, the Defendants met at least twice as per the language in Circular #7. See SAC ¶¶70,71,120,137. The Defendants met and decided that they were going to advertise and promote the added fees as taxes to fund education. See SAC ¶¶72,73. The defendants took to the air and on social media and lunched a massive campaign to fraudulently represent to the public that the US$1.50 and $0.05 were special taxes assessed to fund education. See SAC ¶¶ 184,185. The MTO Defendants to facilitate the fraud on their end devised a scheme whereby they would tag on the US$1.50 on a remitter's total amount to be sent, then deduct it and set it aside as BRH fee. See SAC¶¶ 99-104,121,122,125,138-140. Defendants CAM and Unitransfer U.S.A. do not provide an itemized receipt to remitters from the United States. See SAC ¶¶125-128,140,142,143.

For years the defendants collected funds from citizens and residents of the United States under the ruse that the collected fees are tax imposed to finance free education without publishing any report detailing the amount collected and received. See SAC ¶¶ 76-78,184,185,188,203,213. In 2012, six months after the defendants began collecting the fee "word broke $26 million in the new National Fund for Education was missing." [1] Defendant Digicel heard about the missing funds and vowed, through its owner Denis O'Brien, to seek an audit. See SAC ¶¶82-84 The public announcement put Mr. O'Brien at odds with Defendant Martelly. To ensure that no audit was had, Defendant Martelly claimed during a press conference held jointly with Mr. O'Brien that he acted hastily because "when he got into office he found out that there was enough money to send 900,000

---

[1] The New York Times were the first to report on the missing funds. The quoted Article can be accessed at https://www.nytimes.com/2012/01/07/business/digicels-denis-obrien-helps-rebuild-haiti.html. Last visited June 8, 2019.

street children to school." Defendant further exclaimed that the government did not need the funds being collected for now, but they will continue to collect them any ways. See SAC ¶¶186-188.

Defendant Martelly, after leaving office, admitted during a televised interview that the education program did not exist after his departure. See SAC ¶196. Defendant Martelly further admitted during a televised interview that Privert, when he was a member of the senate was very critical of the unlawfulness of the program and now that he is President, he is enjoying it. See SAC ¶ 195.

In autumn of 2017, the people of Haiti began to inquire about the free and compulsory education program and the collection of the US$1.50 together with the US$0.05. The Government of Haiti failed to publish any reports regarding the program or the funds collected coupled with other reasons, the Plaintiffs filed this lawsuit. After the filing of this lawsuit, the Government of Haiti published a report claiming that the Government only received US$120,000,000 during the last eight (8) years. See SAC ¶¶202,212,213.

The different numbers published by the Defendants evidenced a lack of structure to record, provide and safeguard viable information. Despite all the facts presented, the Defendants now move to have Plaintiffs' Second Amended Class Action Complaint dismiss with prejudice.[2] To date, Haiti has not passed a law that allows for the collection of the fees.

Based on the forgoing and others discussed below together with all exhibits submitted herein, the Plaintiffs respectfully submit that the moving defendants failed to meet their burden; as such, the Court must deny Moving Defendants' motion to dismiss.

---

[2] The Court never directed the Moving Defendants at the April 10, 2019 to reserve their alleged additional arguments under any rules. The Court simply apprised the Moving Defendants that Plaintiffs were going to address Defendants' issues regarding the lack of particularities.

## ARGUMENT

### The Act of State Doctrine is Inapplicable

The moving defendants along with the government of Haiti and former high-ranking government officials conspired to defraud U.S. citizens and residents through the collection of fees on money transfer and telephone calls from the U.S. to Haiti. Even though this fraudulent scheme was concocted in Haiti, it was designed to take effect in the U.S. Its execution took place in the U.S. where the plaintiffs suffered injuries.

The act of state doctrine articulated principle is that "the acts of foreign sovereigns taken within their own jurisdiction shall be deemed valid. *WS Kirkpatrick & Co., Inc., v. Environmental Tectronics Corp., International*, 110 S Ct 701, 707, 107 L Ed 2d 816 (1990). The purpose of the doctrine is to prevent U.S. courts from adjudicating the legality or illegality of official actions by a foreign government for acts contained within their own territory. *In Re Vitamin C Antitrust Litig.*, 810 F. Supp. 2d 522, 546 (E.D.N.Y. 2011) However, the mere fact that a lawsuit involves activities abroad, however, does not imply that American courts are without jurisdiction. *Filartiga v. Pena Irala*, 630 F.2d 876, 889-90 (2d Cir. 1980).

Here, the acts complained of did not occur in Haiti, they occurred in the U.S. All the plaintiffs, U.S. Citizens or residents were charged an additional $1.50 by money transfer companies in the U.S. for sending monies to Haiti. The $1.50 is not collected in Haiti. See Receipts of transactions attached as **Exhibit E.** The plaintiffs were also charged an additional $.05 on telephone calls made from the U.S. to Haiti. The act of state doctrine does not apply because the acts were non-governmental, they occurred in the U.S. and not within the territorial boundaries of Haiti as required by the act of state doctrine. The operative words of the act of state doctrine is

"acts taken within its territory". The U.S. is not a territory of Haiti thus rendering the act of state

doctrine defense inapplicable.

Pursuant to Restatement (Third) of Foreign Relations Law of the United States §402

(1987):

Subject to § 403, a state has jurisdiction to prescribe law with respect to

> (1) (a) conduct that, wholly or in substantial part, takes place within
> its territory; (b) the status of persons, or interests in things, present
> within its territory; (c) conduct outside its territory that has or is
> intended to have substantial effect within its territory.

The facts are undisputed. Defendants targeted citizens and residents of the United States

and subjected them to additional fees that they marketed and promoted as taxes. Defendants

collected such fee/taxes in the United States. The individuals subjected to such unlawful conduct

who has an interest in the monies collected unlawfully are all in the United States. Most of all, the

acts resulting in harm to citizens and residents of the United States, though orchestrated in Haiti,

were intended to affect citizens and residents of the United States and Europe. See **Exhibit A** and

**B**.

Defendant Martelly, a former Haitian president issued a presidential order and two circulars

requiring that money transfer and telecommunications companies collect the additional $1.50 and

$.05 on money transfers and phone calls originating in the U.S., Canada, Bahamas and Turks &

Caicos to Haiti. See **Exhibit C**[3] and **D**[4] respectively. Under the Restatement (Third) whether the

presidential order and circulars run afoul of Haitian laws or not, this Court is not barred from

concluding that the actual application of the Haitian presidential order and circulars are in violation

---

[3] The presidential order and circulars are issued in violation of several articles of the Haitian Constitution as former
Minister of Justice Pierre Max Antoine demonstrates in his declaration. A copy of the English version of the Haitian
Constitution can be found at: https://www.constituteproject.org/constitution/Haiti_2012.pdf?lang=en
[4] There are two Circulars that were issued, number 98 and number 7. They are both attached hereto as Exhibit D.
Plaintiffs will specify the referred to number when necessary.

of both U.S. federal and state laws. The Court simply needs to determine whether the harm suffered occur within its territory and whether the relevant factors listed in Restatement §403 are present as to render the exercise of jurisdiction unreasonable. The presidential order and circulars did not impose a fee on Haitian citizens and residents; they were specifically designed to affect U.S. citizens and residents.

The ruling in *Liu v. Republic of China*, 892 F.2d 1419 (9th Cir. 1989), <u>*cert. dismissed*</u>, 497 U.S. 1058 (1990) is consistent with §402 of the Restatement. The widow of Henry Liu, a journalist who was critical of the Chinese government in his publications, filed a civil suit against the Republic of China for having ordered the assassination of her husband in the United States. The Chinese government asserted the act of state as a defense. Quoting Restatement (Second) of Foreign Relations Law of the United States §46 (1962) ("when property confiscated is within the United States…, our courts will give effect to acts of state 'only if they are consistent with the policy and law of the United States.'"), the Ninth Circuit held that the doctrine does not protect foreign sovereign acts that are consummated in the United States. *Id* at 1433. The Court further opined that "[i]n this case, however, we are asked to judge the legality and propriety of an act that occurred within the borders of the United States. Such an inquiry would hardly affront the sovereignty of a foreign nation." *Id*. The facts as presented show that our Executive Branch is the one that is most likely to bare shame as the acts complained of by the plaintiffs also violate the foreign nation's own laws.

In *Pena Irala*, the Court opined that " we doubt whether action by a state official in violation of the constitution of Paraguay, and wholly unratified by that nations government could properly be characterized as an act of state", See *Banco Nacionale de Cuba v. Sabbatio*, supra 376 U.S. 398, 84 S. Ct. 923, 11 L.Ed. 2d 804 (1964); *Underhill v. Hernandez*, 168 U.S. 250, 18 S.Ct.

83, 42 L.Ed. 456 (1897). In *Pena Irala*, a Paraguan citizen was tortured and murdered in Paraguay by the former inspector general of Police of Asuncion.  The matter was brought in this district. Here, as in *Pena Irala*, the fees ordered by the presidential order and circulars are in violation of the Haitian constitution. Moreover, the embezzlement of said fees are in contravention of the Haitian constitution and is considered a high crime of treason. See Antoine Decl.¶22.   As such, the fees collected were not an act of state but an act by the corrupt Defendant Martelly to benefit himself and his ilk.

Most importantly, the fees are not collected in Haiti; and the mechanism supporting collection of the fees, whether legal or not in Haiti, is not outcome determinative as to whether the actual collection of the fees in the U.S. violated federal and state laws of the U.S.  The Haitian government has not been able to account for the millions of dollars in fees collected from U.S. citizens and residents which they claimed was to educate poor Haitian children.  A large sum of the money was embezzled by members of the Haitian government during their terms in office, specifically defendant Martelly. It is implausible to believe that the monies collected through a fraudulent scheme by a former and a current president of Haiti and their cohorts is an act of state when the monies stolen did not benefit the state.

In addition, the conspiracy was formed prior to Martelly becoming president.  Martelly, prior to taking office stated that he had contacted the telecommunications and money transfer companies to tell them to add additional fees to money transfers and phone calls.  All the moving defendants agreed with the conspiracy.  See **Exhibit A** and **B**.[5]

---

[5] Exhibits A, B, F, G, H, I are video footages containing defendants' admissions. They are being provided to the parties and the court on one DVD.

The illegal presidential order and circulars were the vehicles used to accomplish this scam. The collection of the fees was for the personal benefit of the defendants in which they have largely benefitted from because of the conspiracy they entered into. This is hardly an act of state.

Furthermore, when applying the balancing test to determine applicability of the act of state doctrine, the party asserting the applicability of the doctrine bears the burden of proof. *Daventree Ltd. v. Republic of Azerbaijan*, 349 F.Supp.2d 736, 745 (S.D.N.Y. 2004). The act of state defense is a "substantive" defense and not jurisdictional. "As a substantive rather than a jurisdictional defense, the Act of State doctrine is more appropriately raised in a motion for summary judgment than a motion to dismiss." Id at 349.

Further, under Restatement (Third) §443 comment i (1987), "An action . . . by an official may qualify as an act of state, but only upon a showing (ordinarily by the party raising the issue) that the official had the authority to act for and bind the state. . . . The burden of establishing the act and its character as an act of state is on the party invoking the doctrine." Second, the acts must be made pursuant to the policies and laws of the state. Lastly, "[t]he act of state doctrine does not preclude an initial inquiry as to whether a challenged act is in fact an act of state."

The moving Defendants asserted the act of state defense and therefore, are required to offer some evidence that the government acted in its sovereign capacity and some indication of the depth and nature of the government's interest. Here, the moving defendants have made no such showing. Their proffer is a recitation of the facts as articulated by plaintiffs in the SAC. That in and of itself is insufficient. The fact that the Plaintiffs' monies were stolen by members of the Haitian government with the aid of the corporate defendants hardly gives rise to an act of state, when the very tool used to obtain the funds violated the laws of Haiti. See Antoine Decl. ¶¶24-33.

The act of collecting fees from U.S. citizens and residents is a commercial activity and as such the act of state doctrine does not apply.  28 U.S.C.A. § 1603 3 (d) defines commercial activity as follows: (d) A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."  The money transfer companies and telecommunication companies collected the fees from U.S. citizens and residents in the U.S.  This action was commercial and non-governmental in nature as there was privity of contract between the Plaintiffs, the money transfer, telecommunication defendants and the government of Haiti.  Each money transfer transaction is a separate commercial activity requiring Plaintiffs to enter into contract with the defendants in order to send the monies to Haiti.  One of those defendants is the government of Haiti. The Haitian government has no other way of collecting the monies from plaintiffs and other members of the putative class without becoming a party to the contract with Plaintiffs, the money transfer and telecommunication companies.  The money transfer companies and telecommunications companies serve as the agents for the Haitian government in these commercial activities.  "A foreign state shall not be immune in any case in which the action is based upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." *Id* at 311.

In *U.S. v. Giffen*, 326 F.Supp.2d 497 (S.D.N.Y. 2004) (citing *Lyondell-Citgo Refining, LP v. Petroleos de Venezuela,* S.A., 2003 WL 2187898 (S.D.N.Y. Aug. 8, 2003) the Southern District of New York declined to apply the act of state doctrine where parties contract made transactions commercial, as opposed to governmental.  Acts that are non-governmental in nature do not trigger the doctrine. *Malewicz v. City of Amsterdam*, 2007 WL 1847851 (D.D.C. June 27, 2007).  Further

11

indication that the collection of fees is non-governmental is that the fees were never used to educate poor children in Haiti as the scam proposed.  It went to line the pocket of corrupt Haitian officials including the defendants.  That stealing of the collected fees is non-governmental and violate Haitian laws.  There has been no accountability of the fees collected.  Within the first six months of the collection of the fees, $26 million dollars were unaccounted for and to this day, there has been no accountability of that money.  The act of state doctrine does not cover private and commercial acts of sovereign states.  *Government of Dominican Republic v. AES Corp.*, 466 F.Supp.2s 680, 695 (E.D.Va. 2006).  The act of collecting the fees in the U.S. is commercial and violated U.S. federal and state laws and as such the act of state defense is inapplicable.

### Defendants are not Entitled to Dismissal Based on Forum Non Conveniens.

The purpose of a forum non-conveniens inquiry is not only to determine where trial will be most convenient for the parties, but also to determine which forum would best serve "the ends of justice". *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 147 (2d Cir. 2000).

The Court begins its analysis of forum non-conveniens with a "strong presumption in favor of the Plaintiff's choices of forum". *Waldman v. Palestine Liberation Organization* 835 F3d 317, 334 n 12 (2d Cir. 2016) citing (*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F. 3d 146, 153 (2d Cir. 2005).  Here, the Plaintiffs choice of forum is their home forum which should be strongly favored as the acts complained of occurred in the United States.

In evaluating a motion to dismiss based on forum non-conveniens, the Court developed a three-pronged test.  1. Level of deference to be afforded plaintiffs' choice of forum; 2. Whether there is an adequate forum for adjudicating the dispute; and 3. The balance of public and private interest in adjudication in one forum or another.  *Iragorri v. United Tech. Corp.*, 274 F.3d 72-76 (2d Cir. 2001).

12

Both the named plaintiffs and members of the putative class are all United States citizens or residents.  Even though the creation of the fraudulent scam was born in Haiti, it was designed to be effectuated in the United States as is specifically stated in the circulars and as admitted by the Defendants Martelly and Digicel. **See Exhibit A, B,** and **D**.  Plaintiffs are not merely suing in a representative capacity as if they are phantom plaintiffs, they actually suffered injury both in New York and districts throughout the United States.  Their choice of forum requires a strong presumption in favor of the chosen forum when weighing the public and private interest factors favoring each location.

Plaintiffs' choice of forum should be strongly favored even if the plaintiffs are suing in a representative capacity.  Plaintiffs are not to be afforded less deference because it is a class action suit as the defendants claim.  In reversing a district court's decision, the Second Circuit Court of Appeals in *DiRienzo v. Phillip Services Corp.* 232 F.3d 49 (2d Cir. 2000), _modified_, 294 F.3d 21 (2d. Cir. 2002) ruled that "[t]he district court erred in concluding that 'where, as here, plaintiffs proceed in a representative capacity their choice of forum is entitled to 'less weight'" than the choice of plaintiffs proceeding solely on his own behalf. *Id*. at 60 (quoting *In re Philip Servs.*, 49 F.Supp. 2d 629, 634(S.D.N.Y. 1999)).

The ruling in *DiRienzo* is applicable here as the plaintiffs are suing in a representative capacity and as such the level of deference given to their choice of forum should be strongly favored and not given less weight.  This Court must afford plaintiffs choice of forum the strong presumption for which it is entitled.  The plaintiffs here are not phantom as they have personally suffered injuries complained of in New York and the United States.  Moreover, the defendants do not seek to remove the case to another district within the United States but to Haiti a foreign country.  A plaintiff's U.S. Citizenship and residence is entitled to consideration in favor of

13

retaining jurisdiction. *Wiwa v. Royal Dutch Petroleum Co*., 226 F.3d 88, 102 (2d Cir. 2000).  As

the *Guidi* court succinctly stated, the "home forum" of an American citizen for forum non

conveniens purposes is any "United States court." 224 F.3d at 146. Such a statement could not be

more accurate as apply to one of the Plaintiffs, Odilon Celestin, who fled from Haiti to save his

life. See Celestin Decl.¶¶5-10.

### HAITI is Not an Adequate Alternative Forum for this Litigation

Haiti is not an adequate alternative forum in which the present dispute can be litigated.  A

foreign forum will usually be adequate so long as it permits litigation of the subject matter of the

dispute, provides adequate procedural safeguards and the remedy available in the alternative forum

is not so inadequate as to amount to no remedy at all. *Piper Aircraft Co. v. Reyno,* 454

U.S. 254-255 n. 22, 102 S.Ct. 252 (1981).  There are no adequate procedural safeguards in Haiti

to litigate this matter.  First, as Pierre Max Antoine, former Minister of Justice and Public Safety,

stated in his declaration, the Haitian judicial system is not independent as it is controlled by the

executive branch. See Antoine Decl. ¶¶16-20.  Second, judges went on strike in May 2019 because

of the interference of the executive, the lack of independence as a judiciary, the lack of pay, some

judges not being paid for years, and seeking hiring of judges that received positive

recommendations.  Third, the tribunals are poorly staffed, poorly maintained and lacks modernity.

Due to rampant corruption, there is no court to address the constitutional question regarding

the illegality of the presidential order and circulars, therefore, the plaintiffs are barred from ever

suing in Haiti.  In addition, for Plaintiffs to bring suit, first, there must be a criminal conviction of

the Defendants who are either current or former heads of state. See Antoine Decl. ¶¶21-34.  This

is an added burden to place on Plaintiffs in order to seek redress for the wrongs they suffered in

their home country, the United States.  Based on the history of Haitian jurisprudence, as outlined

in Antoine's Declaration, there will be no criminal conviction and as such, Plaintiffs will never be able to sue in Haiti. Consequently, Haiti is not a convenient forum.

### The Public and Private Interest Factors Favor Plaintiffs Forum Choice

The public and private interest factors do not shift the balance away from plaintiffs' choice of forum. The Supreme Court in *Gulf Oil Corp., v. Gilbert*, 330 U.S. 508-09 (1947) outlined four factors to be weighed in a forum non conveniens inquiry; 1) administrative difficulties associated with court congestion; 2) the unfairness of imposing jury duty on a community with no relation to the litigation; 3) the local interest in having localized controversies decided at home; and 4) avoiding the difficult problems in conflict of laws and the application of foreign law. Addressing these factors will enable the Court to determine that plaintiffs' choice of forum should not be disturbed.

### Court Congestion

It is inconceivable that this Court would have difficulties in the administration of this case. Despite the large docket of cases in the Eastern District, this matter in and of itself poses no additional burden on this Court. Conversely, there is no certainty that this matter would ever be heard in Haiti because of the rampant corruption and inefficiency of the judiciary. If the judges in Haiti continue to strike, there has to be significant congestion in Haitian courts and cases may never be resolved.

### Imposing Jury Duty On New York Residents

U.S. Citizens and residents, particularly Plaintiffs and members of the purported class have a local interest in this lawsuit. Defendants falsely claim that there is no local interest in this dispute. To the contrary, Brooklyn New York is one of the largest diasporas of Haitians living outside of Haiti. They disproportionately send a significant amount of money to Haiti and they were charged

the illegal fees as alleged in the SAC. The illegal fees were collected entirely in the United States. Where American investors have allegedly suffered harm from purchases they made in the United States, local juries have an interest in redressing that harm. *DiRenzo*, 232 F.3d at 63. Here, Americans were charged an additional fee to send money to Haiti where those monies were pilfered by high ranking government officials. See **Exhibit F, G, H,** and **I**. It is without doubt that New York residents have an interest in redressing the harm here.

### The Local Interest in Having Controversies decided at Home

It is imperative that this matter be decided in the United States and not Haiti. As the Court in *Guidi* stated, the "home forum" of an American citizen for forum non conveniens purposes is any "United States court." 224 F.3d at 146. The fact that the conspiracy to charge the illegal fees originated in Haiti is not dispositive. Where the conspiracy was actually effectuated should determine the outcome. The conspiracy was specifically designed to take place in the United States. The circulars that the moving defendants relied on as the predicate for collecting the fees, is specific that the fees must be collected at the place of origin of the money transfer. The place of the origin of the money transfers in this case is the United States. Moreover, the circulars are very clear in stating that the moneys for phone calls and money transfers are to be collected in the United States and four other countries. As such, the United States is the home in which this controversy should be decided.

In *DiRienzo*, the Appellate Court held that the district court erred in finding that local interest factor weighed heavily in favor of litigation in Ontario, when many of the plaintiffs' securities transactions were conducted entirely in the United States, by Americans, in American dollars. Here, all the monies sent via the money transfer defendants was done in America, in American dollars by Americans. All the fees associated with the phone calls made to Haiti were

16

collected when the original call was placed. All the calls subjected to the fees were placed from the United States to Haiti. If monies are sent in Haiti between two Haitians, the fees are inapplicable, we do not have that scenario here.

This controversy cannot have greater interest for Haitians than Americans. The U.S. citizens and residents are the individuals who suffered the injuries because of a conspiracy entered into by the defendants. The fact that the fees were misappropriated in Haiti by the Haitian government and several of the named defendants does not give Haitians a greater interest in this matter because Haitians did not lose the monies that were misappropriated, Americans did. As the *DirRienzo* Court held, while the complaint alleges a fraud that was largely executed in Ontario, neither the dissemination of the allegedly misleading statements nor the plaintiffs' losses were localized there. 232 F.3d at 65. That ruling is analogous to this matter. Even though the formulation of the conspiracy was born in Haiti, the plaintiffs' losses were localized in the United States and not Haiti. Haiti does not have a strong interest in hearing this matter because despite the theft of the monies collected from US citizens and residents, the monies continued to be collected because of the entrenched corruption of the Haitian government and its acolytes.

### Avoiding Conflict of Laws Problems

Citizens and residents of the United States has the most significant interest in the outcome of this litigation. Courts in the US have an overarching interest in applying and enforcing US laws. The plaintiffs allege that the defendants' conduct in collecting the fees in the United States violated the Sherman Act of 1980, New York General Business Law, New York Donnelly Act, Florida Deceptive and Unfair Trade Practices Act, California Cartwright Act, California Business & Professional Code and California Consumers Legal Remedies Act.

17

Plaintiffs allege that the circulars defendants relied upon to collect the fees are illegal based on Haitian laws.  As set forth above, the overwhelming laws that plaintiffs contend were violated by the defendants are US laws as the defendants' conduct occurred in the U. S. and not in Haiti. There is no indication that a Haitian court would apply the various U.S. laws the plaintiffs have alleged are broken.  The Haitian courts simply do not have the ability to apply U.S. laws when there is not even a court to answer questions of constitutionality of its own laws.

Defendants argument that this Court would have to apply Haitian law does not override the fact that this Court is equipped to do so in the very limited instance it may have to make such application.  This Court can determine that embezzlement of funds is not part of the Haitian constitution or that a Haitian president cannot issue orders or circulars as is specifically laid out in its constitution.  What is more opaque is the ability or the wherewithal of the Haitian courts to apply the various U.S. laws that plaintiffs contend were violated by defendants.  As stated in *DiRienzo*, the Second Circuit recognized the interest courts of the United States have in enforcing United States securities law.  232 F.3d 65; *Allstate Line Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 1002 (2d Cir. 1993).

### Private Interest Factors

As set forth in *Gilbert*, the private factors enumerated include: 1) ease of access to evidence; 2) the availability of compulsory process to compel the attendance of unwilling witnesses; 3) the cost of willing witnesses' attendance; 4) the possibility of a view of premises; and 5) all other facets that might make the trial quicker or less expensive.  330 U.S. at 508, 67 S. Ct. 839.

18

### Ease of Access to Evidence

Plaintiffs' should not be deprived of their choice of forum, except upon defendants' clearly showing that a trial here would be so oppressive and vexatious to defendants as to be out of all proportion to plaintiffs' convenience. *Koster v. Lumbermens Mutual Casualty Co*., 330 US 518, 524, 67 S. Ct. 828. (1947).

All the transactions complained of in this matter occurred in the United States. The moving defendants have documents located in the United States. In fact, the circulars require the defendants to provide the Haitian government with copies of documents they would normally have to file with their local state and federal governments. Those local state and federal governments are in the United States. See **Exhibit D** (Circular #7).

Defendants' argument that virtually all the documents are in Haiti is blatantly false. Plaintiffs admit that there are documents relating to this case that are in Haiti, but with modern invention such as email, photocopy, scan and electronic document transfer, it does not pose a problem in having easy access to said information. As the Court opined in *DiRienzo*, where the bulk of the documents in a securities case were in Ontario, the need to photocopy and ship documents is hardly unprecedented in American Litigation. 232 F.3d at 66. The fact that some documents will be in French or Haitian Creole does not override the ease of access to evidence. For example, Western Union is a U.S. Corporation headquartered in Colorado. Any documents regarding the collection and transfer of funds collected in America by Western Union local American agents which is transferred to Haiti will not be in French or Creole but English. Unitransfer that operates in New York and Florida and electronically will have documents in the U.S. and in English. This case would not be the first in the history of American jurisprudence that required translation of some documentary evidence from a foreign language to English.

Furthermore, defendants' argument that it would be costly and time consuming to translate documents is not compelling. Whether this matter is tried in the U.S. or Haiti, the translation of documents from English to French and vice versa would be necessary. The moving defendants have not explained in their moving papers how oppressive or vexatious a trial in New York would be to them.

### Availability of Compulsory Process to Compel Unwilling Witnesses

Undoubtedly there are witnesses that are beyond this Courts compulsory process power. However, the Courts in Haiti do not fare any better. As evidence, high-ranking officials in Haiti usually do not submit to their courts if they choose not to. There is no real mechanism to compel them. As demonstrated by Pierre Max Antoine in his declaration, the court can only fine a witness who fails to appear a mere 25 gourdes, the equivalent of US$0.26. There is no incentive for any of the non-moving defendants to show up to court in Haiti even if they subject themselves to its jurisdiction.

Some non-party witnesses with valid U.S. visas would be willing to travel to the U.S. for deposition testimony or trial. In addition, letters rogatory is an additional tool to be deployed to obtain evidence.

### The Cost of Cooperative Witnesses to Attend Trial

The moving defendants and their agents are fact witnesses in this litigation. The moving defendants and their agents are not located in Haiti. Even if they are based in Haiti, they are regular visitors to the United States. For example, Denis O'Brien, CEO of Digicel, one of the most important witnesses is a frequent visitor to the United States. He is from Ireland. Western Union's CEO and agents are in the United States. CAM operates out of New York and Miami Florida as well as Unitransfer.

Most of the witnesses are fluent in English, French and Haitian.  Even though some witnesses may need translation, that is hardly a reason for dismissal of this matter to Haiti.  There will be significant cost to litigation whether this matter is tried in the United States or in Haiti and as such, the strong presumption remains with plaintiffs' choice of forum.

### Enforceability of a United States Court Judgment

Any judgment obtained on behalf of Plaintiffs and the putative class is enforceable in Haiti based on Article 15 of the November 30th, 1989 Code of Investment Act.  In addition, Articles 5.4.2 and 5.4.3 of the February 21, 2001, law on Money Laundering Arising from Illicit Trafficking of Drugs and Other serious offenses also allows the domestication of foreign judgment.  Moreover, court decisions and arbitration awards issued abroad are enforceable in Haiti, subject to the formalities provided by the Code of Civil Procedure and in the international agreements to which Haiti is a party.

The unmistakable fact is that if the Plaintiffs were successful on the claims set forth in the SAC in Haiti, the actual collection of monetary damages against the non-moving defendants as well as the moving defendants may be impossible due to the system of corruption in Haiti and the lack of accountability

This fact is another compelling reason as to why this matter must be heard in this district and not in Haiti as the instability, corruption and continuous unrest gives no confidence that this case should or can be litigated there.

### CONCLUSION

Based on the foregoing reasons, Plaintiffs' request that the moving defendants' motion be denied in its entirety.

Dated: June 12, 2019

21

Respectfully submitted by

/s/MARCEL P. DENIS_____
MARCEL P. DENIS
**DENIS LAW GROUP, PLLC**
9602 AVENUE L
BROOKLYN, NEW YORK 11236
TELEPHONE:          (404)977-9733
FACSIMILE:          (917)810-3816
Email:               mdcounsel@gmail.com


Rodney R. Austin
**RODNEY R. AUSTIN PLLC**
61-43 186th Street
Fresh Meadows, New York 11365
Telephone:       (718) 475-2119

22