IN THE UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ODILON S. CELESTIN, WIDMIR ROMELIEN,
MARIE LUCIE ST VIL, GORETTEIE ST VIL,
JEANNETTE VALEUS, GUETTY FELN,
HERVE COHEN, and on behalf of all others
Similarly situated,

      Plaintiffs,

 -against-

MICHEL JOSEPH MARTELLY, JOCELERME
PRIVERT, JOVENEL MOISE, THE WESTERN
UNION COMPANY, d/b/a Western Union Holdings, Inc.,
Western Union Financial Services, Inc., and through
other subsidiaries and affiliates,
CARRIBEAN AIR MAIL, INC., d/b/a CAM,
UNIBANK, S.A., UNITRANSFER USA, INC.,
UNIGESTION HOLDING, S.A. d/b/a DIGICEL
HAITI, NATCOM S.A., and THE GOVERNMENT
OF HAITI,

      Defendants

Case No. 18 cv-7340 (LDH) (PK)
ECF CASE

**DECLARATION OF
ODILON S. CELESTIN**

---

  I, Odilon S. Celestin, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following is true:

1. I am one of the plaintiffs in the above captioned matter.

2. I was born in a town known as Borgne located in the Northern section of Haiti, where I spent the first 19 years of my life until my parents sent me to Port-au-Prince to attend school in 1994.

3. I began working in 1995 when my parents could no longer afford to pay for my schooling because they needed to ensure that my other siblings received at least a primary school grade education.

4. I did a number of odd jobs to support myself until I landed a job in 1996 with Promo bank that was in the process of building its headquarter.

5. I was in charge of negotiating, purchasing, and paying for all building materials and equipment. In that capacity, I had access to large amounts of money. A security guard for the job site named Jean Moreau who knew about my having access to funds approached me and wanted me to steal from my employer by inflating materials and equipment prices and share with him the funds retained through that enterprise.

6. I refused to comply, and he decided that he was going to kill me. One day he pulled out his gun and tried to shoot me but somehow the gun did not fire, and I was able to make a run for it and went to report the incident to the police.

7. Jean Morreau had a cousin in the police force whom he called to make a false report claiming that I am the one who tried to kill him.

8. I was arrested and sent to jail where I remained for 15 days without seeing a judge, despite the Constitution and international conventions that Haiti is a party member of require that any person arrested to be brought before a judge within 48 hours. I was not afforded any process. Haiti does not have public defenders.

9. My father traveled to Port-au-Prince and for days he was denied access to me. My father secured my release by paying a judge the sum of 50,000 gourdes (the equivalent of US$535 with today's exchange rate but US$1,250 in 1996). I never saw a court room let alone a judge. There was not even a semblance of a process. I was released without an apology or compensation for being unjustly accused and jailed without due process.

10. I explained to my father the reason I was jailed and how Jean Morreau promised to kill me. Concerned for my safety, my father sent me to the Bahamas clandestinely. From the Bahamas, I made my way to the United States where I was granted asylum and I became an American citizen on June 30, 2011.

11. Today, I am a business owner employing a number of people in my community.

12. From the time of my arrival in the United States, I began sending money to my parents and my eight (8) brothers and sisters. The money that I send to Haiti help educate my nieces and nephews.

13. I listen and watch mostly Haitian radios and television shows aired in the United States. I was relieved to hear Michel Joseph Martelly's campaign promise to provide free and universal education to all primary school age children in Haiti.

14. I heard Michel Joseph Martelly, former President of Haiti, states on numerous occasions that a special tax had been assessed on money transfers to and from Haiti as well as on international phone calls to fund education. Michel Joseph Martelly promised free education to all primary school children with the collections of the $1.50 on money transfers and $0.05 per minute on phone calls.

15. I began paying the $1.50 and US$0.05 on or around June 1st, 2011. I paid and continue to pay the fees because I was told that they are mandatory taxes assessed to fund a free education program instituted by Defendant Michel Joseph Martelly.

16. I am forced to pay an addition US$1.50 every time I send money to my relatives. Whether I contract with Western Union, CAM, and/or Unitransfer, U.S.A., the US$1.50 is taken from me.

17. I am also forced to pay US$0.05 every time I call my relatives to communicate the money transfer number. A US$2 phone card used to give me 20 minutes on a call to Haiti. After the implementation of the unlawful fee, the minutes were reduced to only 7 minutes.

18. The collection of the fees was not much of a concern to me because all of my life I know that education is the key that opens doors to opportunities and uplift a people out of poverty.

19. It was a heart wrenching experience when I learned that the funds collected were being used for purposes unrelated to educating the children of Haiti, including my nephews and nieces.

20. We were all deceived by Defendant Martelly who took an oath to not only respect and honor the Constitution of Haiti, but to also be the guarantor of the smooth and proper functioning of the country's institutions.

21. Feeling powerless and continuously being victimized, I retained the services of Marcel P. Denis and Rodney Austin to further investigate the legality of the collection of the US$1.50 and US$0.05 from me here in the United States.

22. On or about January 2012, less than six (6) months after the commencement of the so-called free education program, I heard news that more than twenty (20) million dollars went missing from the funds generated by the collection of the US$1.50 and US$0.05.

23. In addition, I also heard that Defendant Martelly and cohorts have been embezzling funds not only from the "free education program" generated from the Presidential Order and Circulars, but also funds from the Petrocaribe program instituted by the late Hugo Chavez of Venezuela.

24. My attorneys informed me that the documents, the Presidential Order together with the Circulars, were not only administrative acts with no binding effects on the general public but were also enacted in violation of the laws of Haiti.

25. I reviewed the administrative acts-Presidential Order and Circulars-with my attorneys, and the words education and tax are not mentioned at all in either document which form the basis for collecting the US$1.50 and US$0.05.

26. Based on my review of the documents, I am convinced that the collection was a scheme orchestrated by Defendant Martelly, the Money Transfer Operators-Western Union, CAM, Unitransfer, U.S.A., and the Telecommunication companies-Unigestion Holdings, S.A. d/b/a as Digicel Haiti/USA and Natcom, S.A.

27. In addition, I read from the New York Times that the owner of Digicel, Mr. Denis O'Brien, bolstered how "special taxes assessed by Defendant Martelly shows government resolve to bring about solution to the people of Haiti."

28. From the outset, the Defendants all knew that the added fees were not taxes designed to fund education.

29. The Defendants knew from the beginning that Defendant Martelly embezzled from the funds collected under the guise to provide free education to the street children of Haiti.

30. Despite promises from Defendant Digicel that an audit would be done to ascertain how and why the funds are being embezzled, to date, no audits or reports have been made to show how much money the Defendants have collected and turned over to Defendant Martelly and cohorts.

31. I have also watched numerous video clips in which the Defendants admitted that they targeted the people of the United States and Europe to pay the so-called taxes collected under the fraudulent scheme to fund free education in Haiti.

32. The deceptive act and practices of the Defendants are repugnant without a doubt, but I am more troubled by the fact that my government, the United States government, allows the Defendants to perpetuate a fraud of such magnitude on her citizens and residents.

33. Now the Defendants are moving the court for an order to dismiss my claim and to force me go to litigate in Haiti, a place I fled because my life was almost taken from me.

34. Based on my consultation with my attorneys, the funds that are collected in the United States are in violation of United States antitrust laws. Therefore, I and the other Class Members would suffer great prejudice if we are forced to go to Haiti where the corrupt judicial system would absolve the Defendants of any wrongdoings.

35. On review of the Haitian Constitution, it is clear to me that no ordinary court in Haiti can hear my claim.

36. I know that the climate in Haiti as it is currently with the current administration providing guns and all sort of logistical support to gangs to murder and rape their opponents, sending me and the Class Members (all United States citizens and residents) to have our rights vindicated in Haiti is equivalent to signing our death sentence.

37. Based on the Circulars, the moving Defendants are obligated to submit to the Central Banks of Haiti copies of the same documents that they submit to the authorities of the states in the United States where they are licensed to operate.

38. All of the moving Defendants have agents and operate their businesses in various states throughout the United States, particularly New York, Florida, California. Some of the Defendants also offer online services.

39. Unibank S.A., though alleged to be domiciled in Haiti, offers online banking to United States citizens and residents and even facilitate bank deposits through its subsidiary company Unitransfer, U.S.A.

40. Defendants conduct business in the United States and must be made to answer for wrongful conducts perpetuated against me and Class Members (all citizens and residents of the United States) in the United States.

I declare under penalty of Perjury under the laws of the United States of America that, to the best of my knowledge, the foregoing is true and correct, and that I executed this declaration on June 10, 2019, in Miami, Florida.

_____
Odilon S. Celestin