UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ODILON S. CELESTIN, WIDMIR ROMELIEN, MARIE LUCIE ST VIL, GORETTIE ST VIL, JEANNETTE VALEUS, GUETTY FELIN, HERVE COHEN, and on behalf of all others similarly situated,

                              Plaintiffs,

v.

MICHEL JOSEPH MARTELLY, JOCELERME PRIVERT, JOVENEL MOISE, THE WESTERN UNION COMPANY, d/b/a Western Union Holdings, Inc., Western Union Financial Services, Inc., and through other subsidiaries and affiliates, CARIBBEAN AIR MAIL, INC., d/b/a CAM, UNIBANK, S.A., UNITRANSFER USA, INC., UNIGESTION HOLDING, S.A., d/b/a/ DIGICEL HAITI, NATCOM S.A., and THE GOVERNMENT OF HAITI,

                              Defendants.

**CORRECTED MEMORANDUM AND ORDER**

18-CV-7340 (LDH) (PK)

---

LASHANN DEARCY HALL, United States District Judge:

Plaintiffs, on behalf of putative nation-wide and state-specific classes, bring claims against Defendants Caribbean Air Mail, Inc., Unibank S.A., Unitransfer USA Inc., Unigestion Holding, S.A., d/b/a Digicel Haiti, and Western Union Company (collectively "Defendants") for violations of federal antitrust laws, and various state laws.[1]  Defendants move pursuant to Rule

---

[1] Plaintiffs also assert claims against the Government of Haiti, the current President of Haiti (Jovenel Moise), two former Presidents of Haiti (Michel Joseph Martelly and Jocelerme Privert), and Natcom, a telecommunications company ("Non-Moving Defendants"). (*See* 2d Am. Compl., ECF No. 62.) None of the Non-Moving Defendants have been served in this matter, which was initially filed on December 24, 2018. (*See* ECF No. 1.) As it has been over 460 days since the complaint was filed, absent good cause shown, failure to execute service on the Non-Moving Defendants within fourteen (14) days of this memorandum and order will result in dismissal of the case against the Non-Moving Defendants. *See* Fed. R. Civ. P. 4(m).

12(b)(6) of the Federal Rules of Civil Procedure to dismiss the case in its entirety under the act of state doctrine and alternatively, pursuant to the doctrine of *forum non conveniens*.[2]

## BACKGROUND[3]

Plaintiffs allege that in April 2011, Michel Joseph Martelly, the then-President-elect of Haiti, devised a "wide-ranging scheme" to impose fees and fix prices on money transfers, food remittances, and international calls made to and from Haiti. (2d Am. Compl. ("SAC") ¶¶ 3, 4, 72, 170, 221, ECF No. 62.) While Martelly is alleged to be the "principal architect and ringleader" of the conspiracy, Jocelerme Privert and Jovenel Moise, who each succeeded Martelly, "adopted as his own the acts and conducts [sic] of his predecessor" and continued in perpetrating the scheme. (*Id.* ¶¶ 170, 197, 206.)

The scheme allegedly began before Martelly took the presidential oath. (*Id.* ¶ 171.) According to the complaint, Martelly contacted telecommunication companies, including Defendant Digicel Haiti, and requested that they add a $0.05 fee per minute on all phone calls originating from the United States and Europe. (*Id.*) They agreed. (*Id.*) Martelly also met with money transfer operators and commercial banks, including Defendants Caribbean Air Mail, Inc., Unibank S.A., Unitransfer USA Inc., and Western Union, to strike an anticompetitive agreement to illegally raise the fee to remit money to Haiti by $1.50. (*Id.* ¶ 174.) Ultimately, Defendants each colluded with Martelly to draft three Haitian governmental instruments to effectuate Martelly's scheme: two circulars issued by the Central Bank of Haiti (the "BRH"), which together imposed a $1.50 fee on money transfers and food remittances made to Haiti from the

---

[2] The Defendants raised a number of other grounds for dismissal in their pre-motion conference letters. (*See* ECF Nos. 38, 39, 48, 51, 58.) At the pre-motion conference on April 10, 2019, and in the subsequent minute entry and order issued on April 12, 2019, the Court limited Defendants' briefing to the act of state doctrine and *forum non conveniens* without prejudice to Defendants to make a subsequent motion to dismiss on other grounds, if necessary.
[3] The following facts are taken from the second amended complaint and are assumed to be true for the purpose of this memorandum and order. (ECF No. 62.)

United States, Canada, Turks and Caicos, and the Bahamas; and a presidential order, which mandated a $0.05 per-minute fee be added to the cost of international phone calls made into Haiti (together, the "Fees"). (*Id.* ¶¶ 56, 66, 68, 71, 72, 181.)

The first circular, known as Circular 98, was issued on May 20, 2011, and imposed "testing, certification, user and inspection fees" of $1.50 on money transfers into and out of Haiti. (*Id.* ¶ 66.) In particular, under Circular 98, money transfer operators must: (1) make monthly filings with the BRH of certified copies of reports detailing the total amounts filed with the regulatory body of the territories where they are licensed to operate; and (2) collect a $1.50 fee on money transfers and food remittances. (*Id.* ¶¶ 67-68.) The second circular, Circular 7, was issued on May 31, 2011. (*Id.* ¶ 113.) According to the complaint, Circular 7 was issued to address a term omitted from Circular 98. (*Id.* ¶¶ 69, 70, 113.) Specifically, Circular 7 provides that "[t]he fees will be collected at the source from all money transfer [sic] sent and received (cash or in kind) from overseas" and are to be collected from individuals in the United States, Canada, Turks and Caicos, and the Bahamas. (*Id.* ¶¶ 70-71.) On September 14, 2011, Martelly issued the Presidential Order, which provides that "the floor price for all incoming international call[s] is hence forth fixed at US$0.23 per minute." (*Id.* ¶¶ 59-60.) The Presidential Order further requires that $0.05 of the $0.23 are to be turned over to CONATEL, Haiti's telecommunication regulatory agency. (*Id.* ¶ 61.) According to Article 3 of the Presidential Order, the purpose of the $0.05 fee is to help CONATEL fight against telephone fraud. (*Id.* ¶ 62.)

Plaintiffs claim that Circulars 98 and 7 (together, the "Circulars") and the Presidential Order "ran afoul of the laws of Haiti" because "only the parliament may raise taxes and fees for the benefit of the state." (*Id.* ¶ 57 & n.6.) Furthermore, while Martelly "promoted, marketed,

3

advertised and sold" the Fees to the public as "necessary to finance free education for impoverished children," Martelly knew that neither his Presidential Order nor the Circulars contain language "relating to tax or funding education." (*Id.* ¶¶ 58, 184.) Defendants aided Martelly in misleading the public by advertising and collecting the Fees as lawful taxes levied to fund free education in Haiti. (*Id.* ¶¶ 73, 96, 98, 108, 109, 119, 124, 136, 141, 149, 169, 190, 198, 208.) According to the complaint, a program to fund free education in Haiti does not exist. (*Id.* ¶ 204.) Instead, Martelly allegedly embezzled monies collected through the Fees with the aid of Defendant Unibank S.A., which extended Martelly a $9 million loan to build a beach house as a means of transferring a portion of the proceeds from the $1.50 wire transfer fee. (*Id.* ¶¶ 165-66.) In return for their part in the scheme, Defendants allegedly retained a portion of the Fees. (*Id.* ¶¶ 85, 116, 131, 146, 163, 195, 206, 209). And while the Government of Haiti purports to receive at least an estimated $132 million per year from the Fees, (*Id.* ¶ 180), there has been no public accounting detailing the amount of funds collected and remitted to the Haitian government nor an explanation of how the funds were used in Haiti once remitted to the BRH. (*Id.* ¶¶ 84, 86, 117, 132, 147, 167, 203.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of defendants' liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of a defendants' liability, *id*., "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the

Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

## DISCUSSION

The act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964). The doctrine is "a consequence of domestic separation of powers, reflecting, the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder the conduct of foreign affairs." *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 404 (1990). Thus, the act of state doctrine applies where "the relief sought or the defense interposed would [] require[] a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." *Id.* at 405. Defendants maintain that the relief sought in this case would require just that. (Joint Mem Law Supp. Defs.' Mot. Dismiss Pl's Second Am. Class Action Compl. ("Defs.' Mem.") at 5-7, ECF No. 64-1.) More to the point, Defendants argue that the act of state doctrine applies because the Court cannot adjudicate Plaintiffs' claims without necessarily judging the propriety of official actions of Haiti's government and its leaders.[4] (*Id*. at 7.) The Court agrees.

"To qualify as official, an act must be imbued with some level of formality, such as the authorization by the foreign sovereign through an official statute, decree, order or resolution."

---

[4] The act of state doctrine is an affirmative defense. *Konowaloff v. Metro. Museum of Art*, No. 10-CV-9126, 2011 WL 4430856, at *5 (S.D.N.Y. Sept. 22, 2011), *aff'd*, 702 F.3d 140 (2d Cir. 2012), *cert. denied*, 570 U.S. 906 (2013). The assertion of the act of state doctrine defense does not alter the standard of review on a 12(b)(6) motion, in which the Court determines its applicability based on the pleadings alone. *See Bigio v. Coca-Cola Co.*, 239 F.3d 440, 451 (2d Cir. 2000) ("[T]he act of state doctrine is not jurisdictional."). "The burden of proof rests on Defendants to justify [its] application." *Id.* at 453.

5

*Kashef v. BNP Paribas S.A.*, 925 F.3d 53, 60 (2d Cir. 2019). Indeed, these sorts of instruments have been expressly contemplated by the Supreme Court and have been requisite to the application of the doctrine in "every Supreme Court case" that has addressed this issue. *Id.* (collecting Supreme Court cases). Accordingly, in assessing the applicability of the act of state doctrine, courts must determine whether a defendant can point to any "statute, decree, order, resolution or comparable evidence of sovereign authorization for any of the actions in question" to show that the act was "the official policy" of the foreign sovereign. *Id.* at 61. The doctrine has been invoked with respect to Bolshevik nationalization decrees issued in 1918 in Russia, which resulted in the seizure of a painting from a private household. *See Konowaloff*, 2011 WL 4430856, at *5. It has also been invoked with respect to the Russian government's assignment of the "Stolichnaya" trademarks to a quasi-governmental entity, *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 809 F.3d 737, 744 (2d Cir. 2016) (hereinafter "FTE"), and a Cuban expropriation decree related to sugar, *Banco Nacional*, 376 U.S. at 401, 436-437.

Here, the Circulars and Presidential Order, which were allegedly used to perpetuate the scheme, were ratified by Haiti's government officials. Circular 98 and Circular 7 were signed by Governor of the BRH Charles Castel. (Declaration of Marcel Denis ("Denis Decl."), Ex. D, ECF No. 65-1.)[5] The Presidential Order was signed by then-President Martelly, Prime Minister Joseph Jean-Max Bellerive, and the Minister of Public Works, Transportation and Communications Jacques Gabriel. (*Id.,* Ex. C.) These governmental instruments are imbued with a high "level of formality," and are the exact types of official governmental instruments

---

[5] The Court may consider the Circulars and Presidential Order because Plaintiffs' complaint "relies heavily upon [their] terms and effect" and they are therefore "essential to the litigation." *Palin v. New York Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019); *see also Nicoisa v. Amazon.com, Inc.*, 834 F.3d 220, 234 (2d Cir. 2016) (an "order page" and "conditions of use" agreement were integral to the complaint when the complaint contained numerous references to them).

6

contemplated by the Supreme Court as representative of official government action. *See Kashef*, 925 F.3d at 60 (collecting Supreme Court cases).

Nonetheless, Plaintiffs ask this Court to entertain their claims arguing that because the "very tool used to obtain the funds [stolen from Plaintiffs] violated the laws of Haiti," the act of state doctrine does not apply. (Pls.' Mem. Law Opp. Defs.' Mot. Dismiss Pls.' Am. Class Action Compl. ("Pls.' Opp.") 9-10.) Plaintiffs' argument ignores precedent that prohibits inquiry into the propriety of a sovereign action. For example, in *Konowaloff*, the plaintiff advanced an argument similar to the one made here. 2011 WL 4430856 at *5. In determining that the act of state doctrine applied, the court made plain that whether an act constitutes an "official act does not turn on the legitimacy or illegitimacy of governmental purposes," as the "act of state doctrine prohibits just such an inquiry into the purpose of an official act." *Id.* at 6; *see also Banco Nacional*, 376 U.S. at 431 ("[T]he act of state doctrine is applicable even if international law has been violated."); *see also id.*, at 415, n.17 ("The courts below properly declined to determine if issuance of the [Cuban] expropriation decree complied with the formal requisites of Cuban law.").

Moreover, the Court has considered the cases relied upon by Plaintiffs in pressing their argument but remains unpersuaded that the inquiry urged by them is appropriate or that the act of state doctrine is inapplicable here. In *Filartiga v. Pena-Irala*, the act of state doctrine was not an issue before the court on appeal because the argument was not raised before the district court. 630 F.2d 876, 889 (2d Cir. 1980). In any event, the facts are distinguishable. There, a father and daughter brought action against the former Inspector General of Police in Asuncion, Paraguay for wrongfully causing the death of their son/brother by kidnapping and torturing him. *Id.* at 878. The Second Circuit—in deciding the case on other grounds—noted "in passing," that "we

doubt whether action by a state official in violation of the Constitution and laws of the Republic of Paraguay, and *wholly unratified by that nation's government*, could properly be characterized as an act of state." *Id.* at 889 (emphasis added). Again, the Circulars and Presidential Order in this case were ratified by Haitian government officials

This case is also patently different from *Liu v. Republic of China*, 892 F.2d 1419 (9th Cir. 1989). In *Liu,* the Republic of China ("ROC") was alleged to have orchestrated the assassination of an American citizen on American soil. 892 F.2d at 1432. In rejecting the applicability of the doctrine there, the court held that the act of state doctrine did not automatically bar a suit against the ROC where the "foreign government ordered the assassination of an American citizen within the United States." *Id*. The Ninth Circuit observed that abstention pursuant to the act of state doctrine was not necessary there because "judg[ing] the legality and propriety of an [assassination] that occurred within the borders of the United States . . . would hardly affront the sovereignty of a foreign nation." *Id.* at 1433. *Liu's* holding is so narrow on its face that it is wholly unhelpful here.

Conversely, *Kashef,* a recent Second Circuit decision addressing the act of state doctrine, illustrates well the distinction between cases where the doctrine should be rejected as a defense and those to which it rightly applies. The *Kashef* court considered the application of the act of state doctrine to claims brought by victims of genocide in Sudan for tortious conduct such as rape, torture, deliberate infection with HIV, and other atrocities. 925 F.3d at 57. The court specifically inquired into whether the atrocities were "the officially sanctioned policies of Sudan." *Id.* at 61. In a searching analysis, the court found that the defendant could "point to no statute, decree, order, resolution or comparable evidence of sovereign authorization for any of the actions in question," or any other evidence to show that genocide was "the official policy of

8

Sudan." *Id.* As such, the court reversed the district court and held the act of state doctrine did not apply. *Id.* While the court went on to reason that the fact that the genocidal actions violated the Sudanese constitution bolstered its finding, the rejection of the defense did not turn on this fact. *Id.* Rather, the decision turned on the court's finding that no official action had occurred. *Id*. Simply put, that is not the case here and the doctrine applies.

In a futile effort to avoid the application of the act of state doctrine, Plaintiffs advance two additional arguments, neither of which is persuasive. *First,* Plaintiffs advance a theory that the Fees charged on American-based customers attempting to send wire transfers or place international phone calls to Haiti constitute "conduct outside [the United States'] territory that has or is intended to have substantial effect within its territory." (Pl.'s Opp. 7 (quoting Third Restatement of Foreign Relations Law of the United States § 403 (1987)).) In other words, according to Plaintiffs, the Fees are a taking of property in the United States by the Haitian government barring the applicability of the act of state doctrine. (Pl.'s Opp. 6.) To be sure, the act of state doctrine does not apply to "attempts by foreign sovereigns to confiscate property located in the United States." *FTE*, 809 F.3d at 744; *see also Films by Jove, Inc. v. Berov*, 341 F. Supp. 2d 199, 207 (E.D.N.Y. 2004) ("[I]t is well-settled law that the act of state doctrine does not extend to takings of property located outside the territory of the acting state at the time of the taking." (collecting cases)). The reason for this rule is well articulated. When another state attempts to seize property held in the United States, "the foreign sovereign is acting beyond its enforcement capacity" and courts may look to the laws of the United States "to determine the reach of the foreign sovereign's proscriptions." *Bandes v. Harlow & Jones, Inc.*, 852 F.2d 661, 666 (2d Cir. 1988). However, the scheme here does not mandate the seizure of property held in the United States. Rather, the Circulars and Presidential Order, when enacted, constituted a

9

prospective tax scheme on future money transfers, food remittances, and international calls from the United States. Stated another way, the Fees did not, in and of themselves, impair anyone's existing property right at the time they were imposed. *See FTE*, 809 F.3d at 744 (finding that the assignment of the trademarks to a quasi-governmental entity, where the purpose of that assignment was to give the entity standing to bring a Lanham Act claim against United States distributors, was an act of state because the Russian decree effectuating the assignment did not "impair[] anyone's property rights or affects the jurisdiction of the United States courts to decide the competing claims to ownership of the [trade]marks").

*Second*, Plaintiff advances a theory that the imposition of the Fees was an act committed in the course of purely commercial operations, and thus is immune from the act of state doctrine. (Pl.'s Opp. 11.) However, as the Second Circuit has recently stated, "neither the Supreme Court nor [the Second Circuit] has ever concluded that there is a commercial exception to the act of state doctrine." *FTE*, 809 F.3d at 744. And, even if the commercial exception were to exist, Plaintiff offers no basis to conclude that it would apply to the Fees levied by the Haitian Government. In sum, Defendants have met their burden of establishing that the act of state doctrine bars Plaintiffs' claims.[6]

---

[6] Defendants also move in the alternative to dismiss the complaint pursuant to the doctrine of *forum non conveniens*. (Defs.' Mem. 7-20.) A ruling on such a motion is a fact-intensive inquiry that proceeds in three steps. "The district court must: (i) determine the degree of deference to be accorded to plaintiff's choice of forum; (ii) determine whether an adequate alternative forum to entertain plaintiff's claims exists; and (iii) balance the private and public interest factors[.]" *Base Metal Trading Ltd. v. Russian Aluminum*, 98 F. App'x 47, 49 (2d Cir. 2004). The Court has reviewed the parties' submissions and finds that *forum non conveniens* also mandates dismissal. *First,* special deference is not given to Plaintiffs' choice of forum because in relation to the "core operative facts in dispute [the parties and events] at best [] have only marginal links to [P]laintiffs' selected forum." *Corporacion Tim, S.A. v. Schumacher*, 418 F. Supp. 2d 529, 534 (S.D.N.Y. 2006), *aff'd sub nom.*, *Corp. Tim, S.A. v. Schumacher*, 223 F. App'x 37 (2d Cir. 2007). *Second*, the Court is not persuaded that Haiti is "not an adequate alternative forum in which the present dispute can be litigated." (Pls.' Opp. 14.) As Defendants urge, "American courts should be wary of branding other nations' judicial forums as deficient in the substance or procedures that their laws contain." *Corporacion Tim*, 418 F. Supp. 2d at 532–33. Plaintiff has failed to show that Haiti has "inadequate procedural safeguards," and without such a showing, a finding [of *forum non conveniens*] is rare." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir. 1998). In considering whether Haiti is an adequate alternative forum, the Court takes judicial notice of the Congressional Hearing Testimony before the Congressional Committee

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss with prejudice GRANTED, and the complaint is dismissed in its entirety against Defendants Caribbean Air Mail, Inc., Unibank S.A., Unitransfer USA Inc., Unigestion Holding, S.A., d/b/a Digicel Haiti, and Western Union Company.

SO ORDERED.

Dated: Brooklyn, New York
       March 10, 2021

/s/ LDH
L<small>A</small>SHANN D<small>E</small>ARCY HALL
United States District Judge

---

on Foreign Affairs, "Haiti on the Brink: Assessing U.S. Policy Toward a Country in Crisis." (*See* ECF No. 68.) However, the Court has not relied on the testimony in considering Plaintiffs' arguments. The hearing testimony, which was provided by way of a time-stamped YouTube link, runs over two hours and forty-two minutes total and Plaintiffs failed to specifically identify a single excerpt of the testimony that the Court should consider in support of their opposition. Furthermore, there is no evidence that the testimony was sworn. In other words, the submission was unhelpful. *Third,* the private and public interest factors weigh in favor of dismissal because the events at issue took place wholly in Haiti. *See, e.g., Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 487 (S.D.N.Y. 2006), *aff'd*, 233 F. App'x 83 (2d Cir. 2007) ("A review of the allegations of the complaint lends credence to defendants' contention that the litigation is centered on events that occurred in England."); *Corporacion Tim*, 418 F. Supp. 2d at 533 ("[T]he predominant contacts of the parties and the underlying events occurred in the Dominican Republic, which has the greatest interest in the application of its law under these circumstances involving property and events predominantly in the Dominican Republic[.]"). The Court has considered Plaintiffs' remaining arguments against the application of the *forum non conveniens* doctrine and finds them meritless.