UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ODILON S. CELESTIN, WIDMIR ROMELIEN, MARIE LUCIE ST VIL, GORETTIE ST VIL, JEANNETTE VALEUS, GUETTY FELIN, HERVE COHEN, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>     v.<br><br>MICHEL JOSEPH MARTELLY, JOCELERME PRIVERT, JOVENEL MOISE, THE WESTERN UNION COMPANY, d/b/a Western Union Holdings, Inc., Western Union Financial Services, Inc., and through other subsidiaries and affiliates, CARIBBEAN AIR MAIL, INC., d/b/a CAM, UNIBANK, S.A., UNITRANSFER USA, INC., UNIGESTION HOLDING, S.A., d/b/a/ DIGICEL HAITI, NATCOM S.A., and THE GOVERNMENT OF HAITI,<br><br>        Defendants. | **MEMORANDUM AND ORDER**<br>18-CV-7340 (LDH) (PK) |

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

  Plaintiffs, on behalf of putative nation-wide and state-specific classes, bring claims against Defendants Natcom S.A., Michel Joseph Martelly, Jocelerme Privert, Jovenel Moise and the Government of the Republic of Haiti (collectively, "Moving Defendants") for violations of federal antitrust laws and various state laws. Moving Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety.

## BACKGROUND[1]

  Plaintiffs allege that in April 2011, Martelly, the then-President-elect of Haiti, devised a "wide-ranging scheme" to impose fees and fix prices on money transfers, food remittances, and

---

[1] The following facts are taken from the second amended complaint and are assumed to be true for the purpose of this memorandum and order.

international calls made to and from Haiti.  (Sec. Am. Compl. ¶¶ 3, 4, 72, 170, 221, ECF No. 62.)  While Martelly is alleged to be the "principal architect and ringleader" of the conspiracy, Privert and Moise, who each succeeded Martelly, are alleged to have "adopted as his own the acts and conducts [sic]" of Martelly and continued in perpetrating the scheme.  (*Id*. ¶¶ 23, 170, 197, 206.)

Defendants Caribbean Air Mail, Inc., Unibank S.A., Unitransfer USA Inc., Unigestion Holding, S.A., d/b/a Digicel Haiti, Western Union Company,[2] ("Dismissed Defendants") and Natcom allegedly colluded with Martelly regarding three Haitian governmental instruments, which were drafted to effectuate Martelly's scheme:  two circulars issued by the Central Bank of Haiti (the "BRH"), which together imposed a $1.50 fee on money transfers and food remittances made to Haiti from the United States, Canada, Turks and Caicos, and the Bahamas; and a presidential order, which mandated a $0.05 per-minute fee be added to the cost of international phone calls made into Haiti (together, the "Fees").  (*Id*. ¶¶ 56, 66, 68, 71, 72, 181, 222.)  Circular 98 and Circular 7 were signed by the Governor of the BRH, Charles Castel.  (June 12, 2019 Declaration of Marcel Denis ("Denis Decl."), Ex. D, ECF No. 65-1.).  The Presidential Order was signed by Martelly, Prime Minister Joseph Jean-Max Bellerive, and the Minister of Public Works, Transportation and Communications, Jacques Gabriel.  (*Id*., Ex. C.)

Martelly allegedly embezzled monies collected through the Fees with the aid of Unibank S.A., which extended Martelly a $9 million loan to build a beach house as a means of transferring a portion of the proceeds from the $1.50 wire transfer fee.  (Sec Am. Compl. ¶¶ 165–66.)  Privert and Moise allegedly "profited from the scheme in the same manner" as

---

[2] The Court previously dismissed Plaintiffs' claims against Defendants Caribbean Air Mail, Inc., Unibank S.A., Unitransfer USA Inc., Unigestion Holding, S.A., d/b/a Digicel Haiti, and Western Union Company.  (*See* March 31, 2020 Mem. & Order, ECF No. 73.)

Martelly.  (*Id*. ¶¶ 197, 206.)  The Government of Haiti purports to receive at least an estimated $132 million per year from the Fees, (*id*. ¶ 180), but there has been no public accounting detailing the amount of funds collected and remitted to the Haitian government nor an explanation of how the funds were used in Haiti once remitted.  (*Id.* ¶¶ 84, 86, 117, 132, 147, 167, 203.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of defendants' liability for the alleged misconduct.  *Id*.  While this standard requires more than a "sheer possibility" of defendants' liability, *id*., "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss.  *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999).  Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true."  *Id*. (citations omitted).

## DISCUSSION

Moving Defendants press that, consistent with the law of the case doctrine, the claims against them should be dismissed under the act of state doctrine for the same reasons as stated in its prior Memorandum and Order ("Celestin I").[3]  (Joint Mem. L. Supp. Defs.' Mot. Dismiss ("Defs.' Mem.") 3–5, ECF No. 87.)  The Court agrees.

---

[3] On March 10, 2021, the Court vacated its March 31, 2020 memorandum and order and issued a corrected opinion clarifying one aspect of its analysis.  (ECF No. 94.)  All other analysis—including that cited by Plaintiffs in arguing

"The doctrine of the law of the case posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) (internal quotations omitted). Of course, the law of the case doctrine "does not rigidly bind a court to its former decisions, but is only addressed to its good sense." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (quoting *Higgins v. Cal. Prune & Apricot Grower, Inc.*, 3 F.2d 896, 898 (2d Cir. 1924) (L. Hand, J.)). "Cogent or compelling reasons," to depart from the law of the case include "change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* at 99–100 (internal citations omitted).

Here, the Court previously dismissed the second amended complaint against Dismissed Defendants under the act of state doctrine, as the relief Plaintiffs sought required the Court to declare an official act of a foreign sovereign performed within its own territory invalid. (Celestin I at 5.) This rule of law applies with equal force to the instant motion. The law of the case doctrine, therefore, requires that Celestin I govern, and under the law of the case doctrine, the case should be dismissed against the Moving Defendants on the same grounds. Nevertheless, Plaintiffs argue that there are cogent and compelling reasons for the Court to disturb its prior ruling regarding the act of state doctrine. (Pls.' Opp'n Def.'s Mot. Dismiss ("Pls.' Opp'n") 3, ECF No. 88.) Specifically, Plaintiffs contend that in finding that the Circulars and Presidential Orders were acts of state, the Court overlooked *Sharon v. Time, Inc.*, and misinterpreted *Kashef v. BNP Paribas S.A.*, constituting clear error. (*Id.*) Not so.

*Sharon v. Time, Inc.* addressed allegations that Israel's Minister of Defense, Ariel Sharon, approved or condoned a massacre of refugees in Lebanon perpetrated by a non-Israeli militia

---

against the application of the law of the case—remains unchanged. Page citations to Celestin I refer to the page numbers in the corrected opinion. (ECF No. 94.)

4

group.  599 F. Supp. 538, 542, 544 (S.D.N.Y. 1984).  There, Sharon was alleged to have gone beyond his authority in the campaign in Lebanon.  *Id.* at 544.  Citing *Filartiga v. Pena-Irata*, the *Sharon* court found that the act of state doctrine did not apply because "the actions of an official acting outside the scope of his authority as an agent of the state are simply not acts of state."  *Id.* at 544–45.  *Sharon* is easily distinguishable.  Unlike in the instant case, in *Sharon*, there was no ratified governmental instrument approving or condoning the conduct at issue.  This is no small point.  Indeed, in *Filartiga v. Pena-Irata*, the case upon which *Sharon* relies, the court noted in *dicta* that it is where actions violate a foreign constitution and laws, and are "wholly unratified by that nation's government," that the act of state doctrine will not apply.  630 F.2d 876, 889 (2d Cir. 1980).  In Celestin I, the Court cited this language and properly distinguished *Filartiga* from the instant action, as here, the Circulars and Presidential Order were ratified by Haitian government officials.  (*See* Celestin I at 7-8.)  Accordingly, *Sharon* and its cited authority provide no basis for the Court to disturb its prior ruling.

Plaintiffs' argument related to *Kashef v. BNP Paribas S.A* is likewise unavailing.  In particular, Plaintiffs direct the Court to *Kashef's* statement that, "[g]iven our precedent, acts that flagrantly violate a foreign state's own laws cannot, at the same time, constitute official acts entitled to deference."  (Pls.' Opp'n 3 (quoting *Kashef v. BNP Paribas S.A*, 925 F.3d 53, 61 (2d Cir. 2019)).  However, the relevant passage in full states:

> BNPP makes absolutely no showing that the atrocities committed against the Plaintiffs were the officially sanctioned policies of Sudan. They point to no statute, decree, order, resolution, or comparable evidence of sovereign authorization for any of the actions in question. On the contrary, the atrocities alleged to have occurred unquestionably violated Sudanese law. . . . In *Filartiga v. Pena-Irala*, we made clear that "we doubt whether action by a state official in violation of [its] Constitution and laws . . . and wholly unratified by [its] government, could properly be characterized as an act of state." 630 F.2d 876, 889 (2d Cir. 1980). Given our precedent, acts that flagrantly violate a foreign state's own laws cannot, at the same time, constitute official acts entitled to deference.

5

*Id.* at 61 (internal citation omitted).  Plaintiffs have simply cherry-picked what they deemed useful language for their argument in utter disregard of the thrust of the *Kashef* court's opinion.  As explained in detail in Celestin I, the Second Circuit's finding in *Kashef* was driven by the fact that there was no officially sanctioned policy authorizing the genocidal conduct.  (Celestin I at 8-9 (citing *Kashef,* 925 F.3d at 61).)  Having found that the conduct was neither ratified nor the sanctioned policy of Sudan, the *Kashef* court commented that non-ratified conduct that clearly violated a country's own constitution and laws could not be characterized as an act of state.  *Id.*

Again, here, the Circulars and Presidential Order, which were allegedly used to perpetuate the scheme, were ratified by Haitian government officials.  (Denis Decl., Ex. C & D.)  Plaintiffs do not direct the Court to any case in which a court has even endeavored to determine whether an instrument of a foreign government was ratified in contravention of that government's constitution.  And, this Court does not find that it would be proper to do so.  *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 415 n.17 (1964) ("The courts below properly declined to determine if issuance of the [Cuban] expropriation decree complied with the formal requisites of Cuban law.").  Accordingly, neither *Sharon* (and its cited authority) nor *Kashef* provide a basis to find clear error in its prior determination, and Plaintiffs fail to advance any other legally cognizable theory upon which the court could rely on to disregard the law of the case doctrine.  As this Court previously held, the act of state doctrine applies to Plaintiffs' claims and warrants their dismissal.[4]

---

[4] Having dismissed the second amended complaint against Moving Defendants under the act of state doctrine pursuant to the law of the case, the Court need not address Moving Defendants' arguments for dismissal under *forum non conveniens*.  Accordingly, the Court has not considered Plaintiffs' motions requesting the Court take judicial notice of various materials supporting its arguments in opposition to dismissal under *forum non conveniens*. (ECF Nos. 91, 93.)

## CONCLUSION

For the foregoing reasons, Moving Defendants' motion to dismiss is GRANTED, and the complaint is dismissed in its entirety.

                                              SO ORDERED.

Dated: Brooklyn, New York             /s/ LDH
      March 10, 2021                       LaSHANN DeARCY HALL
                                        United States District Judge