20-1412-cv
Celestin v. Caribbean Air Mail, Inc.

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
# 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔖𝔢𝔠𝔬𝔫𝔡 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

August Term, 2021

(Argued: October 26, 2021                Decided: March 31, 2022)

Docket No. 20-1412

———————————————————

ODILON S. CELESTIN, WIDIMIR ROMELIEN, GOLDIE LAMOTHE-
ALEXANDRE, VINCENT MARAZITA,

*Plaintiffs-Appellants*,

v.

CARIBBEAN AIR MAIL, INC., WESTERN UNION, UNITRANSFER USA, INC.,
UNIBANK, S.A., UNIGESTION HOLDING, S.A., DBA DIGICEL HAITI,
WESTERN UNION FINANCIAL SERVICES, INC., MICHEL JOSEPH
MARTELLY, JOCELERME PRIVERT, JOVENEL MOISE, NATCOM S.A.,
GOVERNMENT OF HAITI,

*Defendants-Appellees*.

———————————————————

Before:

NEWMAN, PARK, and LEE, *Circuit Judges*.

Plaintiffs brought this putative class action alleging that Defendants—
Haitian government officials and multinational corporations—conspired to fix the
prices of remittances and telephone calls from the United States to Haiti.
Defendants allegedly agreed to produce official instruments (a Presidential Order
and two Circulars of the Bank of the Republic of Haiti) to disguise their agreement
as a tax for domestic education programs.  Plaintiffs brought a price-fixing claim

CERTIFIED COPY ISSUED ON 03/31/2022

1   under the Sherman Act and fifteen related state-law claims.  The district court
2   granted Defendants' motion to dismiss all claims based on (1) the act of state
3   doctrine and (2) in the alternative, as to some Defendants, *forum non conveniens*.

4       We hold that the act of state doctrine does not bar adjudication of a claim
5   merely because that claim turns on the "propriety" of the official acts of a foreign
6   sovereign.  Instead, the doctrine forecloses a claim only if it would require a court
7   to declare that an official act of a foreign sovereign is invalid, *i.e.*, to deny the act
8   legal effect.  *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400 (1990).
9   Here, even assuming the Presidential Order and Circulars have their full
10  purported legal effect under Haitian law, Plaintiffs' antitrust claim under U.S.
11  federal law remains cognizable.  We therefore **REVERSE** the district court's
12  dismissal of the antitrust claim under the act of state doctrine and **VACATE** the
13  dismissal of the fifteen state-law claims for reanalysis under the proper standard.
14  We further **VACATE** the dismissal on the alternative grounds of *forum non*
15  *conveniens* because the district court did not give due deference to U.S.-resident
16  Plaintiffs' choice of forum.  The case is **REMANDED** for further proceedings
17  consistent with this opinion.

18       Judge NEWMAN concurs in a separate opinion.

19                 RODNEY AUSTIN, Rodney R. Austin PLLC,
20                 Fresh Meadows, NY (Marcel P. Denis, Denis
21                 Law Group, PLLC, Brooklyn, NY, *on the*
22                 *brief*), *for Plaintiffs-Appellants*.
23

24                 JAMES I. MCCLAMMY (James H.R. Windels,
25                 Robert G. King, *on the brief*), Davis Polk &
26                 Wardwell LLP, New York, NY, *for*
27                 *Defendant-Appellee Unigestion Holding, S.A.,*
28                 *DBA Digicel Haiti*.
29

30                 ANDREW P. FISHKIN, Fishkin Lucks LLP,
31                 New York, NY, *for Defendant-Appellee The*
32                 *Western Union Company*.

1                                                         Stephen H. Nakamura, Andrew R. Peck,

2    Merle Brown & Nakamura P.C., New York,

3    NY, *for Defendant-Appellee Caribbean Air*

4    *Mail, Inc.*

5

6    Oliver M. Birman, Benjamin L. Reiss, Paul

7    D. Turner, Perlman, Bajandas, Yevoli &

8    Albright, P.L., Fort Lauderdale, FL; Kieran

9    M. Corcoran, Stinson LLP, New York, NY,

10    *for Defendants-Appellees Unitransfer USA,*

11    *Inc., and Unibank, S.A.*

12

13    BERTRAND MADSEN, Madsen Law P.C., New

14    York, NY, *for Defendants-Appellees Michel*

15    *Joseph Martelly, Jocelerme Privert, Jovenel*

16    *Moise, and Government of Haiti.*

17

18    Macx L. Jean-Louis, Law Offices of Macx L.

19    Jean-Louis P.C., New York, NY, *for*

20    *Defendant-Appellee Natcom S.A.*

21

22  PARK, *Circuit Judge*:

23        Under the act of state doctrine, U.S. courts may not declare the official acts

24  of a foreign sovereign to be invalid.  But the doctrine does not bar our adjudication

25  of whether those same acts are wrongful under a cause of action properly brought

26  before us.  *See W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400

27  (1990).

28        This case presents the question whether the act of state doctrine requires

29  dismissal of an antitrust claim implicating official acts of the Haitian government.

1    Plaintiffs are U.S. residents who allege that multinational corporations conspired

2    with Haitian officials to fix the prices of remittances and telephone calls made

3    between Plaintiffs and their contacts in Haiti.  To implement the scheme, Plaintiffs

4    allege, Defendants clothed their agreement in formal executive actions of the

5    Haitian government.  The district court dismissed Plaintiffs' claim based on the act

6    of state doctrine, reasoning that Plaintiffs could not bring their antitrust claim

7    because the court would have to adjudge the "propriety" of Haiti's official acts.

8         We hold that the act of state doctrine does not foreclose Plaintiffs' antitrust

9    claim because no official act of Haiti must be deemed invalid for liability to attach

10   under federal law.  We thus reverse in part.  We also vacate the district court's

11   dismissal of fifteen state-law claims and remand for reanalysis under the correct

12   standard.  We further vacate the court's alternative dismissal under *forum non*

13   *conveniens* because it did not give due deference to U.S.-resident Plaintiffs' choice

14   of forum.

15                        **I.      BACKGROUND**

16   A.     <u>Factual Allegations</u>

17         Plaintiffs are U.S. residents with relatives and friends in Haiti.  Defendants

18   Caribbean Air Mail, Inc., Western Union, Unitransfer USA, Inc., Unibank, S.A.,

1    Unigestion Holding, S.A., and Western Union Financial Services, Inc. (the

2    "Corporate Defendants") are companies that facilitate remittances and phone calls

3    between the United States and Haiti.  In addition to the Corporate Defendants,

4    Plaintiffs brought this action against the Government of Haiti and three of its

5    former Presidents, Michel Joseph Martelly, Jocelerme Privert, and Jovenel Moise,

6    along with Natcom S.A., a telecommunications company partly owned by the

7    Haitian government (the "Government Defendants").

8        As alleged,[1] Martelly orchestrated a far-reaching price-fixing agreement

9    with the Corporate Defendants before becoming President in 2011.   The

10   "mechanism" for implementing the agreement was a Presidential Order and two

11   Circulars of the Bank of the Republic of Haiti that Martelly would issue after taking

12   office.  Compl. ¶ 56.  The Presidential Order set a "floor price for all incoming

13   international call[s]" at $0.23 per minute and required that $0.05 per minute be

14   "turned over to the Government."   *Id.*  ¶¶ 60–61.   Similarly, the Circulars

15   "memorialized" Defendants' agreement to add a $1.50 fee to remittances of food

16   and money sent to Haiti from certain countries, including the United States.  *Id.*

---

[1] The following facts are taken from Plaintiffs' Second Amended Complaint, App'x at 15–84, which must be taken as true for the purposes of Plaintiffs' challenge to the district court's dismissal for failure to state a claim.  *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 299 n.1 (2d Cir. 2021).

1    ¶ 65.    Under both the Presidential Order and the Circulars, the Corporate

2    Defendants and Natcom would collect these surcharges at the source—in

3    Plaintiffs' case, in the United States—as a condition of eligibility to provide

4    services.

5           Martelly represented to the public that these policies would raise revenues

6    to support a Haitian compulsory education program.  But in fact, Plaintiffs say, no

7    such program existed.  Rather, just months after publication of the Presidential

8    Order, "it was discovered that [$26] million in the new National Fund for

9    Education was missing."  *Id.* ¶ 82.  Plaintiffs assert that each Corporate Defendant

10   retained a portion of the fees it collected rather than transmitting the full amount

11   to the Haitian treasury.  And Martelly, Privert, and Moise, during their respective

12   terms, profited personally from the fees as well.  Moreover, Plaintiffs say that the

13   Presidential Order and Circulars ran afoul of Haitian law because "only the

14   parliament may raise taxes and fees for the benefit of the state."  *Id.* ¶ 57 & n.6.  As

15   part of the scheme, Plaintiffs allege, Defendants told customers that these fees

16   were in fact collected pursuant to a "lawful tax" for education.  *Id.* ¶¶ 50, 72, 98,

17   119, 136, 150, 169, 188, 190, 198, 208.

1    According to the Complaint, all Corporate Defendants agreed to this

2    scheme and joined as full participants.   After Martelly's departure from the

3    presidency in 2016, his successors, Privert and Moise, continued his misconduct.

4    The price-fixing scheme "has caused a significant, lasting and ultimately harmful

5    rippling effect in communities in the United States who must remit money [and]

6    food, and place phone calls to Haiti, which is still ongoing."  *Id.* ¶ 74.

7    B.   Procedural History

8    Plaintiffs brought a putative class action in the U.S. District Court for the

9    Eastern District of New York on behalf of "[a]ll persons in the United States and

10   its territories who used the services of one or more of the [Corporate Defendants

11   or Natcom] . . . who were subjected to paying the $1.50 [fee] on money and food

12   transfers made to and from Haiti and $0.05 per minute [fee] on phone calls placed

13   to and from Haiti."  *Id.* ¶ 39.   The Complaint raises a claim of price-fixing in

14   violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and fifteen state-law claims

15   including false advertising and fraud.  *See, e.g.*, Compl. ¶ 296 (false advertising

16   claim alleging that Defendants falsely represented the surcharges as "lawful taxes

17   levied to fund free and compulsory education").   The district court granted

18   Defendants' motions to dismiss in two separate opinions.

1   First, the district court dismissed all claims against the Corporate

2 Defendants under the act of state doctrine and, in the alternative, under *forum non*

3 *conveniens. See Celestin v. Martelly* (*Celestin I*), 524 F. Supp. 3d 43 (E.D.N.Y. 2021).

4 The district court noted that the act of state doctrine applies where "the relief

5 sought or the defense interposed would require a court in the United States to

6 declare invalid the official act of a foreign sovereign performed within its own

7 territory." *Id.* at 48 (cleaned up) (quoting *Kirkpatrick*, 493 U.S. at 405).  It then

8 reasoned that "the [c]ourt cannot adjudicate Plaintiffs' claims without necessarily

9 judging the propriety of official actions of Haiti's government and its leaders." *Id.*

10 It thus dismissed all counts under Federal Rule of Civil Procedure 12(b)(6) for

11 failure to state a cognizable claim.  On *forum non conveniens*, the district court

12 conducted the three-step analysis required under our case law in a footnote and

13 concluded that the case should be heard in Haiti.  *Id.* at 51 n.6.

14   Second, the district court dismissed all claims against the Government

15 Defendants under the law of the case doctrine. *See Celestin v. Martelly* (*Celestin II*),

16 No. 18-cv-7340, 2021 WL 918290 (E.D.N.Y. Mar. 10, 2021).  The court followed its

17 earlier ruling based on the act of state doctrine and declined to reach the issue of

18 *forum non conveniens.  Id.* at *2, *3 n.4.  Plaintiffs timely appealed both rulings.

8

1    **II.    STANDARDS OF REVIEW**

2    Review of a district court's dismissal of a complaint for failure to state a

3    claim under Rule 12(b)(6), including dismissal under the act of state doctrine, is de

4    novo.  *See Kashef v. BNP Paribas S.A.*, 925 F.3d 53, 58 (2d Cir. 2019).

5    Review of dismissal under *forum non conveniens* is for abuse of discretion.

6    *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003).

7    "Discretion is abused in the context of *forum non conveniens* when a decision (1)

8    rests either on an error of law or on a clearly erroneous finding of fact, or (2) cannot

9    be located within the range of permissible decisions, or (3) fails to consider all the

10   relevant factors or unreasonably balances those factors."  *Id.* (citation omitted).

11   **III.    DISCUSSION**

12   A.    <u>Act of State Doctrine</u>

13   1.    *Legal Framework*

14   The act of state doctrine bars federal and state courts from "declar[ing]

15   invalid, and thus ineffective as a rule of decision for the courts of this country, the

16   official act of a foreign sovereign."  *Kirkpatrick*, 493 U.S. at 405 (cleaned up).  The

17   doctrine is not a principle of abstention, a grant of immunity, or a bar on liability

18   based on compliance with foreign laws.  Rather, the act of state doctrine is a "rule

1    of decision" for the merits: It compels federal and state courts to treat foreign

2    official acts as "valid" in the sense that a court may not declare them "null and

3    void." *Id.* at 406 (citation omitted).

4        In *Kirkpatrick*, the Supreme Court's last major act of state case, a unanimous

5    Court outlined the contours of the doctrine.  The Court explained that the rule is a

6    "*principle of decision* binding on federal and state courts alike," and grounded it in

7    "'the strong sense of the Judicial Branch that its engagement in the task of passing

8    on the validity of foreign acts of state may hinder' the conduct of foreign affairs."

9    *Id.* at 404, 406 (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 423, 427

10   (1964)).  Instructively, *Kirkpatrick* included a synthesis of the Court's act of state

11   case law:

12           In every case in which we have held the act of state doctrine
13           applicable, the relief sought or the defense interposed would have
14           required a court in the United States to declare invalid the official act
15           of a foreign sovereign performed within its own territory.  In *Underhill*
16           *v. Hernandez*, 168 U.S. 250, 254 (1897), holding the defendant's
17           detention of the plaintiff to be tortious would have required denying
18           legal effect to "acts of a military commander representing the
19           authority of the revolutionary party as government, which afterwards
20           succeeded and was recognized by the United States."  In *Oetjen v.*
21           *Central Leather Co.*, 246 U.S. 297 (1918), and in *Ricaud v. American Metal*
22           *Co.*, 246 U.S. 304 (1918), denying title to the party who claimed
23           through purchase from Mexico would have required declaring that
24           government's prior seizure of the property, within its own territory,

1    legally ineffective.  *See Oetjen*, 246 U.S. at 304; *Ricaud*, 246 U.S. at
2    310.  In *Sabbatino*, upholding the defendant's claim to the funds would
3    have required a holding that Cuba's expropriation of goods located
4    in Havana was null and void.

5    *Id.* at 405–06 (citations cleaned up).  In *Kirkpatrick* itself, the act of state doctrine did

6    not bar U.S. courts from adjudicating a Racketeer Influenced and Corrupt

7    Organizations (RICO) claim, 18 U.S.C. § 1961 *et seq.*—arising from bribery in the

8    procurement of a Nigerian government contract—because "neither [that] claim

9    nor any asserted defense require[d] a determination that Nigeria's contract with

10   [Kirkpatrick] was, or was not, effective."  *Kirkpatrick*, 493 U.S. at 406.  In other

11   words, the Court read precedent to define the act of state doctrine as a "special

12   choice-of-law rule": Where a foreign official act would be deemed void by an

13   otherwise applicable legal rule, the official act controls.[2]  Restatement (Fourth) of

14   Foreign Relations Law § 441 cmt. a.

15       Importantly, *Kirkpatrick* clarified what the act of state doctrine is not: It is not

16   a "doctrine of abstention," 493 U.S. at 406, and it "does not establish an exception

17   for cases and controversies that may embarrass foreign governments," *id.* at 409.

---

[2] This rule of decision is, of course, very different from that of ordinary domestic judicial review: We do not presume that acts of the federal government or the several states are conclusively valid.  *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("[A]n act of the legislature, repugnant to the constitution, is void.").

1   It also does not shield foreign official conduct from being "impugned" or

2   "complained of . . . in the courts." *Id.* at 407 (citation omitted) (rejecting an

3   argument that earlier dicta to that effect relates to the act of state doctrine); *see also*

4   *Republic of Austria v. Altmann*, 541 U.S. 677, 700 (2004) (distinguishing sovereign

5   immunity from the act of state doctrine, which operates "on the merits").  Nor does

6   it bar an inquiry into the "'motivation' for, rather than the 'validity' of, a foreign

7   sovereign act." *Kirkpatrick*, 493 U.S. at 408.  The Court also expressly precluded a

8   "balancing approach" weighing the "policies underlying" the doctrine to extend

9   the doctrine beyond its proper scope. *Id.* at 409.  Such balancing might be a proper

10   reason to *decline* to apply the doctrine despite its "technical availability," *id.*, but it

11   cannot enable a court to bar a claim when the doctrine's "factual predicate . . . does

12   not exist," *id.* at 405.

13       Similarly, our own post-*Kirkpatrick* cases have confirmed the well-defined

14   bounds of the doctrine.  In *Federal Treasury Enterprises Sojuzplodoimport v. Spirits*

15   *International B.V.* (*FTE*), 809 F.3d 737 (2d Cir. 2016), we held that a Russian

16   Federation "Decree" and "Assignment" reassigning all title and interest in a

17   trademark from the Russian government to FTE were protected by the act of state

18   doctrine. *Id.* at 744.  We had "little trouble concluding" that the doctrine rendered

1    the Court powerless to "determine the efficacy of the Decree and Assignment." *Id.*

2    at 745.    We were careful to emphasize that the "Decree and subsequent

3    Assignment [did] not purport to decide the merits issue of whether [the

4    defendants] have violated the Lanham Act by misappropriating the

5    [trademarks]." *Id.* at 744.    Giving effect to the decrees meant conclusively

6    assuming the "validity of the Assignment," which in turn gave FTE standing

7    under the Lanham Act to bring its trademark claims. *Id.* Thus, although we could

8    not examine the Assignment's validity—a "question of Russian law decided

9    within Russia's borders"—we could, of course, determine whether the plaintiffs

10   had a claim for relief, which in that case was "a matter of U.S. law with a situs in

11   the United States." *Id.*

12        In *Kashef v. BNP Paribas S.A.*, 925 F.3d 53 (2d Cir. 2019), we rejected a

13   proposed application of the act of state doctrine to bar plaintiffs from suing BNP

14   Paribas for alleged aiding and abetting of atrocities by the government of Sudan.

15   We held that nothing in the claim required a court to "declare invalid" a foreign

16   official act. *Id.* at 59 (quoting *Kirkpatrick*, 493 U.S. at 405).    Validity was simply not

17   an issue: To evaluate the merits of the aiding and abetting claim, the Court had to

1    determine "not whether the alleged acts are valid, but whether they occurred." *Id.*

2    (quoting *Kirkpatrick*, 493 U.S. at 406).

3         Most recently, in *In re Vitamin C Antitrust Litigation*, 8 F.4th 136 (2d Cir. 2021),

4    we distinguished the act of state doctrine from other doctrines like comity and

5    foreign sovereign compulsion.  In that case, plaintiffs brought an antitrust claim

6    against Chinese defendants who asserted that their conduct was required by

7    Chinese law.  *See id.* at 140.  We explained that we were "not called upon to express

8    any view about the legality—under Chinese or international law—of the . . . export

9    regime that the Chinese government implemented."  *Id.* at 162 n.44.  By legality

10   under Chinese and international law,[3] we meant that nothing required us to deny

11   the regime its purported legal effect or to "declare invalid, and thus ineffective as

12   a rule of decision for the courts of this country the official act of a foreign

13   sovereign."  *Id.* (quoting *Kirkpatrick*, 493 U.S. at 405).

---

[3] Defendants point to the *Restatement*, which also includes a bar on "questioning the validity of the foreign act on the ground that it did not comply with . . . U.S. law or policy." Restatement (Fourth) of Foreign Relations Law § 441 cmt. a; *cf. Sabbatino*, 376 U.S. at 436–37 (implying this rule).  *Vitamin C* did not exclude the possibility that the act of state doctrine also bars a U.S. court from applying forum law or policy to declare a foreign official act invalid.  But we need not address the issue here because Defendants' only arguments about supposed "validity" under American law—specifically antitrust law—are about whether their actions breached a legal duty, not whether they were invalid.  *See infra* Section III.A.3.a.

1    In sum, when applicable, the act of state doctrine serves as a rule of decision

2    on the merits.  First, the court should assume that a foreign state's official acts

3    executed within that state's territory are valid in that they have the legal effects—

4    like transfers of title, assumptions or repudiations of contractual obligations, and

5    grants of public authority—that they purport to have.  Second, under that premise,

6    the court should evaluate the merits of the legal claim or defense before it

7    according to the posture of the case.[4]  For a motion to dismiss under Rule 12(b)(6),

8    that means determining whether—given the assumption of validity—the

9    complaint still plausibly states a claim entitling the plaintiff to relief.[5]  *See Ashcroft*

10   *v. Iqbal*, 556 U.S. 662, 679 (2009).  Even if the elements of a claim would necessarily

11   also "support a finding that the [official act] is invalid," that fact is irrelevant unless

---

[4] By "the legal claim or defense before it," we mean the claim or defense under the law of the relevant jurisdiction.  For example, a U.S. federal or state cause of action may not turn on a foreign act's validity, even if an analogous cause of action under foreign law would be precluded by the act.

[5] In this context, the act of state doctrine acts as a "substantive defense on the merits" whereby a defendant argues that a plaintiff's claim would require a declaration of invalidity. *Altmann*, 541 U.S. at 700.  But the doctrine can also bar arguments raised by defendants.  In *Sabbatino*, 376 U.S. 398, the doctrine allowed Banco Nacional de Cuba to block an asserted defense that it had ineffective title under a Cuban nationalization decree.  And in *FTE*, 809 F.3d 737, the doctrine barred defendants from questioning the validity of the assignment of trademark rights to the plaintiff.  In either case, whether for "the relief sought or the defense interposed," the act of state doctrine is a "rule of decision" about the legal effect of foreign official acts.  *Kirkpatrick*, 493 U.S. at 405 (citation omitted).

1    a court "*must decide*—that is, when the outcome of the case turns upon—the effect

2    of official action by a foreign sovereign."  *Kirkpatrick*, 493 U.S. at 406.

3        2.    *Defendants' Erroneous View*

4        Defendants' arguments are inconsistent with this understanding of the act

5    of state doctrine.  Defendants propose that the doctrine bars courts from deciding

6    cases that involve passing judgment on the policies, laws, and motivations of a

7    foreign sovereign.  Tellingly, in their supplemental briefing ordered by the Court,[6]

8    Defendants did not even mention *Kirkpatrick*, the most relevant Supreme Court

9    case about the doctrine.  Defendants instead urge us to adopt a framework relying

10   on our pre-*Kirkpatrick* cases and similar cases from sister circuits.  We reject this

11   erroneous view for two reasons.

12       First, Defendants' argument rests on portions of our cases that have been

13   abrogated by *Kirkpatrick*.  In *O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana,*

14   *S.A.*, 830 F.2d 449 (2d Cir. 1987), O.N.E. brought an antitrust suit alleging that a

15   Colombian shipping line entered into anticompetitive agreements under a

16   Colombian cargo reservation law that gave preferences to Colombian flag vessels.

17   The Court characterized the act of state doctrine as "a principle of law designed

---

[6] On October 8, 2021, this Court ordered supplemental briefing on the act of state question. Briefing was received on October 18, 2021.

1   primarily to avoid judicial inquiry into," among other things, "the underlying

2   reasons and motivations for the actions of the foreign government."  *Id.* at 452.

3   O.N.E. claimed that Colombia's policy led the defendants to engage in

4   anticompetitive conduct, and so the suit was actually about "dissatisfaction with

5   Colombia's cargo reservation laws, not with [the defendants'] . . . agreements."  *Id.*

6   at 453.[7]  *O.N.E.* also relied on our earlier holding in *Hunt v. Mobil Oil Corp.*, 550

7   F.2d 68 (2d Cir. 1977), in which we applied the act of state doctrine because when

8   "the judicial branch examines the motivation of [a foreign] action . . . that

9   inevitably involves its validity."  *Id.* at 77.

10      We conclude that these characterizations of the act of state doctrine were all

11  but expressly abrogated by *Kirkpatrick*.  The question presented in *Kirkpatrick* was

12  whether "the act of state doctrine bars a court in the United States from

13  entertaining a cause of action that does not rest upon the asserted invalidity of an

14  official act of a foreign sovereign, but that does require imputing to foreign officials

15  *an unlawful motivation*."  493 U.S. at 401 (emphasis added).  The Court answered

16  that question "no."  *See id.* at 408 (rejecting the government's argument that the

---

[7] The panel in *O.N.E.* blended the analysis of two different defenses, the act of state doctrine and comity.  *See Vitamin C*, 8 F.4th at 144, 163 n.45 (relying on *O.N.E.* for its comity analysis).  Comity has not been raised as an issue in this appeal, and we do not address it.

1    doctrine can turn on the "'motivation' for, rather than the 'validity' of, a foreign

2    sovereign act"); *id.* at 409 ("The act of state doctrine does not establish an exception

3    for cases and controversies that may embarrass foreign governments, but merely

4    requires that, in the process of deciding, the acts of foreign sovereigns taken within

5    their own jurisdictions shall be deemed valid.").  In short, *Kirkpatrick* held that the

6    act of state doctrine is not the functionalist test of *Hunt* and *O.N.E.*, which would

7    require abstention in any case involving the policy decisions of foreign states.[8]

8    Rather, it is a rule of decision about the legal effect in federal and state courts of

9    foreign official acts.

10       Our more recent decisions in *FTE*, *Kashef*, and *Vitamin C* all characterize the

11   doctrine consistently with this understanding.  In particular, in *Vitamin C*, a

---

[8] Defendants also cite a similar case from the Fifth Circuit, *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938 (5th Cir. 2011), which postdates *Kirkpatrick*.  To the extent that this case relies on the logic of *Hunt* and *O.N.E.*, it appears to conflict with *Kirkpatrick*.  *See id.* at 955 (relying on *Int'l Ass'n of Machinists & Aerospace Workers v. OPEC* (*IAM*), 649 F.2d 1354, 1360 (9th Cir. 1981), which itself adopted *Hunt*'s abrogated reasoning); *see also World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1165–66 (D.C. Cir. 2002) (relying on *Hunt*); *Sea Breeze Salt, Inc. v. Mitsubishi Corp.*, 899 F.3d 1064, 1071–72 (9th Cir. 2018) (relying on *Spectrum Stores*, *World Wide Minerals*, and *IAM*); *Mountain Crest SRL, LLC v. Anheuser-Busch InBev SA/NV*, 937 F.3d 1067, 1085 (7th Cir. 2019) (applying the act of state doctrine because the "effect" of granting relief would be "invalidating" a foreign government's "choice to extend monopoly benefits" to the defendants).  Commentators have noted the muddled post-*Kirkpatrick* case law in some circuits and have questioned recent decisions like these, which are in the mold of *Hunt* and *O.N.E.*, for failing to comply with the rule articulated in *Kirkpatrick*.  *See generally* John Harrison, *The American Act of State Doctrine*, 47 Geo. J. Int'l L. 507 (2016); *accord* Restatement (Fourth) of Foreign Relations Law § 441 Reporters' Note 6.

1    judgment against Chinese defendants acting in accordance with the mandates of

2    Chinese law surely would have cast judgment on the anticompetitive motives—

3    and directly interfered with the policy objectives—of China's regulatory regime.

4    But that fact was irrelevant because the "factual predicate" for the act of state

5    doctrine—a question of validity—"[did] not exist."  8 F.4th at 162 n.44 (quoting

6    *Kirkpatrick*, 493 U.S. at 405).[9]

7         Second, Defendants' effort to equate an act's "validity" with whether it

8    breaches some legal duty is inconsistent with *Kirkpatrick*.[10]  The Court in *Kirkpatrick*

9    repeatedly described "invalid" as meaning "null and void," "ineffective," or

10   without "legal effect," rather than "complained of" or "impugned."  493 U.S. at

11   405–07.  In the same vein, we have explained that the doctrine requires that "the

12   acts of the foreign sovereign within its dominions [be] deemed 'valid when

---

[9] The district court in *Vitamin C* similarly recognized that *Hunt* and *O.N.E.* had been abrogated by *Kirkpatrick* to the extent that they rely on the act of state doctrine rather than other defenses.  *In re Vitamin C Antitrust Litig.*, 810 F. Supp. 2d 522, 547–48 (E.D.N.Y. 2011) (citing secondary authority with the same view); *accord Lamb v. Phillip Morris, Inc.*, 915 F.2d 1024, 1026–27 (6th Cir. 1990) (rejecting defendants' reliance on the holding of *Hunt* as unjustified given the Supreme Court's then-recent decision in *Kirkpatrick*).

[10] Defendants assert that this equivalence can be found in case law from the D.C. Circuit.  *See Hourani v. Mirtchev*, 796 F.3d 1, 15 (D.C. Cir. 2015).  We are not convinced that Defendants' broad reading of *Hourani* is correct, given that its analysis involved factors specific to defamation law.  *See id.*  If Defendants' characterization were correct, *Hourani* would appear to be in tension with *Kirkpatrick*.  Of course, the Supreme Court's opinion in *Kirkpatrick* is binding on this Court, while the D.C. Circuit's opinion in *Hourani* is not.

1   entered into'" —rather than "void, ab initio" —"irrespective of their status under

2   foreign law." *Banco de Espana v. Fed. Res. Bank of N.Y.*, 114 F.2d 438, 444 (2d Cir.

3   1940) (citation omitted); *see also Republic of Philippines v. Westinghouse Elec. Corp.*, 43

4   F.3d 65, 79 & n.16 (3d Cir. 1994) (explaining that the propriety of issuing an

5   injunction against a foreign state for violations of U.S. law had nothing to do with

6   the act of state doctrine, which "is confined to cases in which a litigant seeks to

7   challenge the *validity* of a public act of a foreign sovereign").[11]

8      *Kirkpatrick* distinguished between violations of a legal duty and the validity

9   of government acts in its discussion of *Underhill v. Hernandez*, 168 U.S. 250 (1897).

10   The Court applied the act of state doctrine in that case because it could find a

11   Venezuelan revolutionary general's seizure "tortious" *only if* he lacked official

---

[11] *Cf.* H. L. A. Hart, *The Concept of Law* 28 (3d ed. 2012) (distinguishing acts that are deemed not "valid" in that they are a "'nullity' without legal 'force' or 'effect'" from those that constitute a "'breach' or a 'violation' of [an] obligation or duty"); Wesley Newcomb Hohfeld, *Some Fundamental Legal Conceptions as Applied in Judicial Reasoning*, 23 Yale L.J. 16, 30 (1913) (distinguishing a "disability," a lack of power to change a legal relationship, from a "duty," an obligation under law); *see also* Harrison, *supra*, at 569 (arguing that it would make no sense for a rule of decision about a claim for breach of a legal duty to assume compliance with that duty because "[t]o do so would make the law a machine that turns itself off").

1   authority[12]—*i.e.*, if his orders were without legal effect.[13]  *Kirkpatrick*, 493 U.S. at

2   405.  In other words, the act of state doctrine requires an inquiry specific to each

3   cause of action: Can the defendants' actions still be *wrongful* under that cause of

4   action even assuming that a foreign official act is *valid*?  *See id.* at 405–06 (explaining

5   why assuming validity required the substantive result of each of the Supreme

6   Court's prior act of state cases); *see also Konowaloff v. Metro. Museum of Art*, 702 F.3d

7   140, 147 (2d Cir. 2012) (holding that the heir of the former owner of a painting that

8   was previously seized by the Soviet government had no cause of action against the

---

[12] *Cf. Nieves v. Bartlett*, 139 S. Ct. 1715, 1731 (2019) (Gorsuch, *J.*, concurring in part and dissenting in part) ("[T]he point of the common law tort of false arrest or false imprisonment was to remedy arrests and imprisonments effected *without lawful authority*." (citing *Dir. Gen. of R.Rs. v. Kastenbaum*, 263 U.S. 25, 27 (1923))).

[13] Defendants' reliance on a statement from *Underhill*—that a court should not "sit in judgment on the acts of the government of another, done within its own territory," 168 U.S. at 252—is misplaced.  As the Court clarified in *Kirkpatrick*, that passage cannot be read too broadly:

> Justice Holmes observed, citing *Underhill*, that "a seizure by a state is not a thing that can be complained of elsewhere in the courts." [*Am. Banana Co. v. United Fruit Co.*, 213 U.S. 347, 357–58 (1909).]  The statement is concededly puzzling.  *Underhill* does indeed stand for the proposition that a seizure by a state cannot be complained of elsewhere—in the sense of being sought to be declared *ineffective* elsewhere.  The plaintiff in *American Banana*, however, like the plaintiff here, was not trying to undo or disregard the governmental action . . . .  Simply put, *American Banana* was not an act of state case; and whatever it said by way of dictum that might be relevant to the present case has not survived . . . .

493 U.S. at 407–08.  *Underhill*'s relevant holding, for act of state purposes, is that the plaintiff had no cognizable claim because "holding the defendant's detention of the plaintiff to be tortious" under plaintiff's causes of action "would have required denying legal effect to" the acts of a military commander.  *Id.* at 405.

1   museum that later acquired it, assuming that the seizure validly transferred title);

2   *Glen v. Club Méditerranée, S.A.*, 450 F.3d 1251, 1254 (11th Cir. 2006) (same analysis

3   for trespass and unjust enrichment).  In *Kirkpatrick* itself, even though plaintiffs

4   asked a court to adjudge a quid pro quo bribe-for-contract *wrongful* under RICO,

5   that inquiry did not require a declaration that the contract had no legal effect under

6   Nigerian law.  493 U.S. at 406.

7        Our own cases are equally clear.  In *Vitamin C*, we concluded that the

8   defendants could not prevail under the act of state doctrine even though we

9   agreed with their contention that the conduct alleged to violate the Sherman Act

10  was mandated by the Chinese government.  *See* 8 F.4th at 162 n.44.  And in *FTE*,

11  we distinguished the "validity of the Assignment" of trademarks from the "merits

12  issue" of the unlawfulness of alleged trademark infringement.  809 F.3d at 744.

13  Similarly, the *Restatement* clarifies that "[a] court may impose legal consequences

14  on a transaction or event without having to pass on the validity of the act."

15  Restatement (Fourth) of Foreign Relations Law § 441 cmt. d.

16       3.   *Application*

17       The district court reasoned that "the act of state doctrine applie[d]" to bar

18  Plaintiffs' claims because the court could not "adjudicate Plaintiffs' claims without

22

1   necessarily judging the propriety of official actions of Haiti's government and its

2   leaders." *Celestin I*, 524 F. Supp. 3d at 48.   But it did not explain whether

3   "propriety" meant "validity," and if so, why Plaintiffs' claims would require

4   declaring Haitian acts invalid.   Thus, as in *Kirkpatrick*, we must first assess whether

5   "the factual predicate for application of the act of state doctrine . . . exist[s]."

6   *Kirkpatrick*, 493 U.S. at 405.   We conclude that as to the antitrust claim, it does not.

7                    a.      Antitrust Claim

8              Plaintiffs allege that shortly before assuming the office of President of Haiti,

9   Martelly "communicated directly with [the Corporate] Defendants . . . to raise

10  prices on telecommunication and money transfer services."   Compl. ¶ 222.   The

11  conspiracy included "a continuing agreement, understanding, and concert of

12  action among the Defendants" to "raise" the price of "money and food remittances

13  by US$1.50" and "fees on all international calls to Haiti by US$0.05 per minute."

14  *Id.* ¶ 226.   Defendants implemented their agreement via the Presidential Order and

15  two   Circulars,   which   allegedly   were   the   "instrumentalit[ies]"   and

16  "memorializ[ations]" of the agreements.   *Id.* ¶¶ 63, 65.   The motivation for this

17  price-fixing was not the public interest, Plaintiffs say, but rather Defendants' self-

18  enrichment.   *See id.* ¶¶ 85, 116, 131, 146, 163, 170, 274.

1    Defendants argue that the act of state doctrine bars the antitrust claim

2   because it would require determining that, by agreeing to implement the

3   Presidential Order and Circulars, Defendants violated the Sherman Act.  *See United*

4   *States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 218 (1940) ("[T]his Court has

5   consistently and without deviation adhered to the principle that price-fixing

6   agreements are unlawful *per se* under the Sherman Act . . . .").  But Defendants

7   have pointed to nothing in the antitrust claim that rests on the proposition that the

8   Presidential Order and Circulars are *invalid*.  That conclusion is separate from the

9   question of whether Defendants unlawfully agreed to fix the prices of remittances

10  and telephone calls.[14]  We may give the Presidential Order and Circulars their full

11  purported legal effect and still conclude that Plaintiffs have plausibly alleged

12  illegal price-fixing under the Sherman Act.  That is so even assuming the facts

13  establishing such collusion would also necessarily imply that the acts are void.[15]

14  *See Kirkpatrick*, 493 U.S. at 406.  Whether the acts are invalid is not something the

---

[14] The district court limited Defendants to briefing their motion to dismiss only on act of state and *forum non conveniens* grounds.  *Celestin I*, 524 F. Supp. 3d at 46 n.2.  The court may choose to reach different grounds on remand.

[15] *Contra Mountain Crest*, 937 F.3d at 1085 (denying relief under the act of state doctrine because finding a "*per se* unlawful agreement" would also necessarily "justif[y]" the agreement's "facial invalidation" (citation omitted)).  *Kirkpatrick* was clear: It squarely rejected the argument that the act of state doctrine applied simply because "the facts necessary to establish [the plaintiff's] claim [would] also establish that the [government's] contract was unlawful" and in turn necessarily imply "that the contract [was] invalid."  493 U.S. at 406.

1    court "*must decide*" to evaluate the price-fixing allegations; as in *Kirkpatrick*, the

2    legal effect of the Order and Circulars "is simply not a question to be decided" in

3    determining whether Plaintiffs stated an antitrust claim.  *Id.* at 406.

4    Indeed, *Kirkpatrick* itself alluded to the justiciability of antitrust suits of this

5    kind.  Defendants in that case cited *American Banana Co. v. United Fruit Co.*, 213

6    U.S. 347 (1909), which contains the Court's now-overruled holding that the

7    antitrust laws do not extend extraterritorially.  Defendants viewed *American*

8    *Banana* as barring the kind of review of the antitrust claim that the district court

9    would need to perform here.  The Court rejected that reading and explained that

10   a "defendant's actions in obtaining [a foreign country's] enactment of

11   'discriminating legislation' could form part of the basis for suit under the United

12   States antitrust laws."  *Kirkpatrick*, 493 U.S. at 407 (quoting *United States v. Sisal*

13   *Sales Corp.*, 274 U.S. 268, 276 (1927)).

14   In sum, Plaintiffs' antitrust claim depends not on "whether the alleged acts

15   are valid, but whether they occurred" in a way that gives rise to liability.  *Id.* at 406

16   (quoting *Sharon v. Time, Inc.*, 599 F. Supp. 538, 546 (S.D.N.Y. 1984)) (cleaned up).

17   The act of state doctrine thus does not foreclose Plaintiffs' antitrust claim.

25

1          b.      State-Law Claims

2          The parties focused primarily on the antitrust claim and provided minimal

3   briefing on Plaintiffs' fifteen state-law causes of action.  Defendants assert that for

4   Plaintiffs to succeed on these claims, the district court would be required to find

5   that the Presidential Order and Circulars do not comply with relevant

6   requirements of Haitian law and so deny them legal effect.  We remand to the

7   district court to conduct the inquiry required under the act of state doctrine

8   consistent with this opinion.[16]

9   B.      *Forum Non Conveniens*

10         1.      *Legal Standards*

11         There are three steps to the *forum non conveniens* inquiry: (1) "determine[]

12  the degree of deference properly accorded the plaintiff's choice of forum";

13  (2) "consider[] whether the alternative forum proposed by the defendants is

14  adequate to adjudicate the parties' dispute"; and (3) "balance[] the private and

---

[16] On remand, the district court need not first consider the act of state doctrine without also concurrently evaluating any motion to dismiss the state-law claims on the merits.  Rather, the court may simply ask: Under each cause of action, assuming that the official acts of Haiti are valid, have Plaintiffs plausibly stated a claim for relief?  *See supra* at 15.

The district court also relied on the law of the case doctrine to dismiss all claims against the Government Defendants on act of state grounds after dismissing the claims against the Corporate Defendants.  We reject the Government Defendants' reliance on the law of the case for the same reasons we reject the district court's conclusions as to the Corporate Defendants.  We do not reach Plaintiffs' remaining arguments on appeal regarding the act of state doctrine.

1    public interests implicated in the choice of forum." *Norex Petroleum Ltd. v. Access*

2    *Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).

3          We begin and end at step one, the level of deference accorded to Plaintiffs'

4    choice of forum.  As the Supreme Court has explained, "[w]hen the home forum

5    has been chosen, it is reasonable to assume that this choice is convenient." *Piper*

6    *Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981).  That said, "if the balance of

7    conveniences suggests that trial in the chosen forum would be unnecessarily

8    burdensome for the defendant or the court, dismissal is proper." *Id.* at 255 n.23.

9          We have held that a plaintiff's residence is relevant to the extent that it

10    shows that "considerations of convenience," rather than gamesmanship and the

11    pursuit of a favorable forum, motivated the decision to "conduct . . . the lawsuit in

12    the United States." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en

13    banc).  The proper degree of deference is a "sliding scale." *Id.* at 71.

14         2.    *Application*

15          The district court discussed deference to Plaintiffs' choice of forum in a

16    single sentence: "[S]pecial deference is not given to Plaintiffs' choice of forum

17    because in relation to the 'core operative facts in dispute [the parties and events]

18    at best [] have only marginal links to [P]laintiffs' selected forum.'" *Celestin I*, 524

1    F. Supp. 3d at 51 n.6 (quoting *Corporacion Tim, S.A. v. Schumacher*, 418 F. Supp. 2d

2    529, 534 (S.D.N.Y. 2006) (alterations in original)).

3          We conclude that the district court clearly erred in determining that

4    Plaintiffs had only "marginal links" to an American forum.  To the contrary, the

5    Complaint alleges that named Plaintiffs are all U.S. residents, that many are U.S.

6    citizens, and that several reside in the Eastern District of New York.[17]  The district

7    court thus exceeded its discretion in summarily deciding not to give deference to

8    Plaintiffs' choice of forum.  *See Iragorri*, 274 F.3d at 72.  Rather than "undertake our

9    own *de novo* review, simply substituting our view of the matter for that of the

10   district court," *id.*, we leave it to the district court to decide the question under the

11   correct level of deference.  *Accord id.* at 75–76 (en banc Court vacating and

12   remanding where the district court failed to "accord appropriate deference").

---

[17] Our Circuit has left open the question whether the class action nature of a suit lessens the level of deference.  *See DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002); *Gilstrap v. Radianz Ltd.*, 233 F. App'x 83, 85 (2d Cir. 2007) (recognizing that the Court has not "definitively answered" what effect representative capacity has on deference).  We need not resolve that issue here because the district court erred by declining to give any "special deference" at all.  *Celestin I*, 524 F. Supp. 3d at 51 n.6.  Moreover, Plaintiffs allege that the surplus fees at issue were charged within the United States, so the events giving rise to Plaintiffs' claims, as well as the parties, are clearly connected to the United States.  *See* Compl. ¶¶ 69–71.

1       IV.     CONCLUSION

2       Plaintiffs seek to send money and make phone calls to their relatives,

3   friends, and other contacts in Haiti.  They allege that Defendants have unlawfully

4   colluded to make these activities more expensive, and nothing Plaintiffs seek

5   through that claim requires a court to declare an act of the Haitian government

6   null and void.  Whether Plaintiffs have stated a plausible claim for relief under the

7   Sherman Act does not depend on whether the Presidential Order and Circulars

8   are deemed to have their full purported legal effect.  The holding of *Kirkpatrick*

9   thus compels us to **REVERSE** the judgment of the district court as to the act of

10  state doctrine's application to the antitrust claim.  We **VACATE** the remainder of

11  the judgment and **REMAND** for reanalysis under the correct standards, both on

12  the act of state doctrine and on *forum non conveniens*.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

29

JON O. NEWMAN, *Circuit Judge*, concurring:

I agree that the act of state doctrine does not bar the Plaintiffs-Appellants' antitrust claim, and I also agree that the District Court failed to give proper consideration to the Plaintiffs-Appellants' choice of their home forum, thus rendering improper the Court's dismissal of the complaint on the ground of *forum non conveniens*.

However, on both the act of state issue and the *forum non conveniens* issue, I would go further. Specifically, I would rule that the act of state doctrine does not bar the Plaintiffs' state law claims. I would also rule that the District Court exceeded its discretion by dismissing the case on the ground of *forum non conveniens*. The remand should therefore be for further proceedings on the merits, not for further briefing on the act of state doctrine because that issue has already been briefed twice, and not for further District Court consideration of *forum non conveniens* because, on the undisputed facts, a renewed dismissal on that ground would have to be reversed for exceeding allowable discretion.

1. Act of State

We all agree that if the actions of a foreign state (here, Haiti) are assumed to be valid under the law of that state, the act of state doctrine does not bar a claim.

1

CERTIFIED COPY ISSUED ON 03/31/2022

*See W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp.*, 493 U.S. 400, 405 (1990). For that reason, Judge Park's opinion properly rejects the act of state doctrine as a basis for dismissing the Plaintiffs' antitrust claim. But that same reason equally requires rejection of the act of state doctrine as a basis for dismissing the Plaintiffs' state law claims. Judge Park's opinion provides no legal basis for distinguishing between the antitrust and the state law claims. Instead, his opinion remands for further briefing on whether the act of state doctrine bars the Plaintiffs' state law claims.

There is no reason to order further briefing on the act of state doctrine. The act of state doctrine does not bar the state law claims for the same reason that it does not bar the antitrust claims: the Haitian taxes and fees alleged to have injured the Plaintiffs in the United States can be assumed to be valid under Haitian law. "[W]hen the validity of a foreign state's action is not the question being litigated, and the inquiry is simply whether the conduct in question occurred, the act of state doctrine is not implicated." *Kashef v. BNP Paribas S.A.*, 925 F.3d 53, 59 (2d Cir. 2019). The Plaintiffs' state law claims are not based on the *imposition* of the taxes and fees, which we assume was lawful under Haitian law, but are based on the state officials' *diversion* of the tax and fee proceeds to their personal use. For example,

2

paragraph 297 of the second amended complaint alleges "Defendants collected the fees and converted them to their own use." The same or similar language appears in all of the counts alleging state law violations. No one contends that such diversion was lawful under Haitian law. For this reason the act of state doctrine does not apply to the state law claims. *See Kashef*, 925 F.3d at 60 ("No one here . . . contends that genocide, mass rape, and ethnic cleansing are 'valid.'"); *Sharon v. Time, Inc.*, 599 F. Supp. 538, 546 (S.D.N.Y. 1984) ("No one is suggesting that these acts—by which Time claims Sharon condoned the massacre of unarmed noncombatant civilians—have validity in the sense that they cannot be attacked."). A remand for the "reanalysis" that Judge Park's opinion orders of a clearly inapplicable doctrine is pointless.

All parties have already had two opportunities to brief the act of state issue in this Court. After they filed their initial briefs, we ordered supplemental briefing explicitly on the doctrine's application to this case, and we received whatever the parties cared to tell us. In their supplemental briefing, the Plaintiffs specifically referred to their state law claims. There is no newly identified issue. Remanding for a third round of briefing burdens a busy District Judge and needlessly delays the progress of this case, both in the District Court and in this Court, in the event

that a renewed dismissal of the state law claims on the act of state ground returns to this Court on a renewed appeal for an inevitable reversal.

2. *Forum Non Conveniens*

We all agree that the District Court, in dismissing on the ground of *forum non conveniens*, failed to give proper consideration to the Plaintiffs' choice of their home forum. But, in addition to that, on the undisputed facts of this case, dismissal of the case on the ground of *forum non conveniens* is so clearly beyond the limits of the District Court's discretion that there is no reason to give that Court another opportunity to make the same mistake.

Six of the Plaintiffs are United States citizens, and all seven reside in the United States. Three Plaintiffs live in New York City. Four of the corporate Defendants are United States corporations with their principal places of business in the United States. There is "a strong presumption in favor of the plaintiff's choice of forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). "[U]nless the balance [of relevant factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). "[O]ur caselaw and that of the Supreme Court has clearly and unambiguously established that courts should offer greater deference to the

4

selection of a U.S. forum by U.S. resident plaintiffs when evaluating a motion to dismiss for *forum non conveniens.*" *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 102 (2d Cir. 2000). The undisputed facts of the U.S. residence of all the Plaintiffs and the local residence of three of them eliminate any concern about forum shopping, which on other facts would merit consideration. *See Norex Petroleum Ltd. v. Access Industries, Inc.,* 416 F.3d 146, 154 (2d Cir. 2005).

The adverse effects of the Defendants' challenged actions, *i.e.,* the increased costs imposed on the Plaintiffs, were felt in the United States, which is also relevant to maintaining a case in a plaintiff's choice of forum. Indeed, even in a case where the alleged wrongful conduct occurred abroad, we reversed a dismissal on the ground of *forum non conveniens* largely because the plaintiffs were U.S. citizens, *see Guidi v. Inter-Continental Hotels Corp.,* 224 F.3d 142 (2d Cir. 2000), and had not even sued in their district of residence, as some of the Plaintiffs here did.

Assuming, as I do, that if any transfer were warranted, Haiti would be an adequate forum, the undisputed facts so overwhelmingly make the Eastern District of New York the appropriate forum that the case cannot be transferred elsewhere. Any dismissal of this case on the ground of *forum non conveniens* "cannot be located within the range of permissible decisions," *Norex,* 416 F.3d at

5

153. That conclusion would not be a substitution of our view of the matter for that of the District Court. It would be a legal conclusion appropriate for a Court of Appeals whenever a District Court has exceeded the limits of its discretion.

A remand for further consideration of the *forum non conveniens* issue also imposes a needless burden on the District Judge and, if dismissal were again ordered, would lead to an inevitable reversal by this Court.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

6