```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
ODILON S. CELESTIN, WIDMIR                     :
ROMELIEN, GOLDIE LAMOTHE-                      :    DECISION & ORDER
ALEXANDRE, VINCENT MARAZITA,                   :
JEANNETTE VALEUS, GUETTY FELIN,                :    18-CV-7340 (LDH) (PK)
GORETTIE ST. VIL, HEVE COHEN, and              :
On Behalf of All Others Similarly Situated,    :
                                               :
                            Plaintiffs,        :
                                               :
             -against-                         :
                                               :
MICHEL JOSEPH MARTELLY, JOCELERME              :
PRIVERT, JOVENEL MOISE, THE                    :
WESTERN UNION COMPANY, d/b/a                   :
WESTERN UNION HOLDINGS, INC,                   :
WESTERN UNION FINANCIAL SERVICES,              :
INC., AND THROUGH OTHER                        :
SUBSIDIARIES AND AFFILIATES,                   :
MONEYGRAM INTERNATIONAL, INC.                  :
AND MONEYGRAM PAYMENT SYSTEM,                  :
INC. (COLLECTIVELY MGI), CARIBBEAN             :
AIR MAIL, INC., d/b/a CAM, UNIBANK, S.A,       :
UNITRANSFER USA, INC., UNIGESTION              :
HOLDING, S.A., d/b/a DIGICEL HAITI,            :
NATCOM S.A., and THE GOVERNMENT OF             :
HAITI,                                         :
                                               :
                            Defendants.        :
---------------------------------------------------------------- x
```

**Peggy Kuo, United States Magistrate Judge:**

       Plaintiffs Odilon S. Celestin, Widmir Romelien, Marie Lucie St Vil, and Gorettie St Vil (collectively for purposes of this Decision & Order, "Plaintiffs"), along with plaintiffs Jeannette Valeus, Guetty Felin, and Herve Cohen, individually and on behalf of all others similarly situated, brought this action against Defendants Michel Joseph Martelly, Jocelerme Privert, Jovenel Moise, the Government of the Republic of Haiti, Western Union, Money Gram International, Inc., Carribbean Air Mail, Inc., Natcom S.A., Unigestion Holding (d/b/a Digicel Haiti), Unitransfer USA, Inc. ("Unitransfer"), and Unibank S.A. ("Unibank") (collectively with Unitransfer, the "Uni Defendants")

1

for violations of various federal and state laws, including antitrust, fraud, and conversion; they also brought a claim against Unibank for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). (Third Amended Complaint ("TAC"), Dkt. 118.)

After the Court granted the Defendants' Motion to Dismiss as to several claims, including all those against the Uni Defendants, the Uni Defendants filed motions for sanctions pursuant to Fed. R. Civ. P. 11 ("Unibank Rule 11 Motion," Dkt. 162; "Unitransfer Rule 11 Motion," Dkt. 167 (collectively, the "First Motions for Sanctions"). In response to a disclosure made in Plaintiffs' Opposition, the Uni Defendants filed a joint Motion to Strike Plaintiff's Opposition and Motion for Sanctions. ("Second Motion for Sanctions," Dkt. 175; *see* March 1, 2024 Order.) On the basis of alleged misrepresentations made in Plaintiff's Response to the Second Motion for Sanctions, the Uni Defendants filed another Motion for Sanctions. ("Third Motion for Sanctions," Dkt. 187.) The Hon. LaShann DeArcy Hall referred all three motions for sanctions to me for a decision and order. For the reasons stated herein, the Court denies the Second Motion for Sanctions, grants the First Motions for Sanctions and Third Motion for Sanctions, and defers determination of appropriate sanctions until the parties have an opportunity to submit supplemental information.

## **BACKGROUND**

Plaintiffs filed a Complaint on December 24, 2018 and amended it three times. (*See* Complaint, Dkt. 1; First Amended Complaint, Dkt. 15; Second Amended Complaint, Dkt. 62; TAC.)

On January 4, 2023, all Defendants filed an omnibus motion to dismiss the TAC in its entirety. ("Defendants' Motion to Dismiss," Dkt. 148.) On September 29, 2023, the Court granted Defendants' Motion to Dismiss in part and denied it in part, dismissing all claims against the Uni Defendants, including claims for violations of the New York General Business Law ("GBL"); claims for violations of the FDUTPA; fraud and conversion claims; and violations of the New York Banking

Law.[1] *Celestin v. Martelly*, 698 F. Supp. 3d 443 (E.D.N.Y. 2023). Plaintiffs' only remaining claims are for violations of the Communications Act, which do not implicate the Uni Defendants. (*Id.* at 34-35.)

While the Motion to Dismiss was pending, the Uni Defendants served copies of their proposed motions for sanctions on counsel for Plaintiffs pursuant to Rule 11 on June 8, 2023. (*See* Uni Defendants' Letter dated Feb. 4, 2023, Dkt. 161.) When they did not hear back from Plaintiffs, the Uni Defendants filed letters on June 30, 2023, requesting that the Court set a briefing schedule for anticipated Rule 11 motions for sanctions. (Dkts. 156, 157.)

Realizing that the Courts' individual practice rules did not require a briefing schedule to be set before filing a motion for sanctions (*see* Dkt. 161 at 1-2), the Uni Defendants served counsel for Plaintiffs with copies of the First Motions for Sanctions on September 26, 2023, as a first step in complying with Judge DeArcy Hall's motion bundling rules, which "request[] that parties refrain from filing motion papers until a motion is fully briefed." ("Aff. of Service," Dkt. 165.) *See* Judge DeArcy Hall, Individual Practice Rules III(B)(2). Counsel for the Uni Defendants also emailed counsel for Plaintiffs, asking whether they intended to respond to the motions. Counsel for Plaintiffs did not respond. (Dkt. 161 at 2.) Counsel for the Uni Defendants emailed again, and Plaintiffs' counsel stated that they would respond to the motions by February 10, 2024; however, on February 10, Plaintiffs informed the Uni Defendants that they would "not be responding to [the] pending motion[s] for sanctions unless and until [they are] properly filed with the Court." (*Id.* at 1-2.)

On February 16, 2024, Unibank and Unitransfer each filed motions for Rule 11 sanctions against Plaintiffs, explaining their efforts to comply with the Court's bundling rule and asking that the Court consider the motions to be fully briefed, as Plaintiffs had declined to respond to them. (*See id.*)

---

[1] The claims for civil theft violations under Florida law and unjust enrichment were withdrawn. *See Celestin v. Martelly*, 698 F. Supp. 3d at 455 n. 3.

Plaintiffs then filed a single letter brief opposing both motions. ("Opposition," Dkt. 171.) In their Opposition, Plaintiffs apologized to the Court for not responding to the Uni Defendants' service of the First Motions for Sanctions, stating by way of explanation, "Plaintiffs never took defendants' sanctions motion seriously." (*Id.* at 1.) Further, Plaintiffs' counsel stated that the Uni Defendants' counsel had "offer[ed] to forgo their legal fees and sanctions in exchange for Plaintiffs … publish[ing] a letter declaring that 'Unibank and Unitransfer did nothing wrong.'" (*Id.*)

Unibank and Unitransfer each replied to the Opposition, reiterating their arguments in support of the First Motions for Sanctions and, further, requesting that the Court "strike all references to compromise negotiations in Plaintiffs' letter." ("Unibank Reply" at 3, Dkt. 172; "Unitransfer Reply" at 3; Dkt. 173.)

The Uni Defendants then jointly filed a motion to strike Plaintiffs' Opposition and requested additional sanctions against Plaintiffs' counsel for disclosing confidential settlement discussions within the Opposition. ("Second Motion for Sanctions," Dkt. 175.) Plaintiffs responded to the Uni Defendants' Second Motion for Sanctions. ("Response to Second Motion for Sanctions," Dkt. 182.) The Uni Defendants filed a reply. ("Second Motion for Sanctions Reply," Dkt. 183.)

In a motion filed on August 8, 2024, the Uni Defendants jointly moved for further sanctions against Plaintiffs related to Plaintiffs' alleged misrepresentations in Plaintiffs' Response to Second Motion for Sanctions. ("Third Motion for Sanctions," Dkt. 186.) Plaintiffs did not respond. On September 26, 2024, the Uni Defendants requested that the Court grant the Third Motion for Sanctions as unopposed, award attorneys' fees and impose monetary sanctions. ("Reply to Third Motion for Sanctions" at 4, Dkt. 190.)

**DISCUSSION**

Because whether the Court strikes Plaintiffs' Opposition to the First Motions for Sanctions affects its analysis of the First Motion for Sanctions (*see* Unibank Reply at 1; Unitransfer Reply at 1), I discuss the Second Motion for Sanctions first.

**I.    Uni Defendants' Motion to Strike Plaintiffs' Opposition (Second Motion for Sanctions)**

The Uni Defendants contend that Plaintiffs violated Federal Rule of Evidence 408 and Local Civil Rule 5.2 by disclosing the contents of "confidential settlement discussions" when they disclosed the Uni Defendants' offer not to seek sanctions and attorneys' fees in exchange for an exonerating letter from Plaintiffs. They also argue that the Court should exercise its inherent authority to strike the Opposition "to the extent it improperly discloses confidential settlement discussions." (Mem. in Support of Second Motion for Sanctions at 3, Dkt 176.) Based on the improper disclosure, the Uni Defendants request that the Court strike Plaintiffs' Opposition and impose a sanction of $5,000. (*Id.* at 4.)

Rule 408 states, in relevant part, that evidence of "a statement made during compromise negotiations about [a] claim" is "not admissible … either to prove or disprove the validity or amount of [the] disputed claim. . . ." Fed. R. Evid. 408(a)(2). "The purpose of [Rule 408] is to encourage full and frank disclosure between the parties in order to promote settlements rather than protracted litigation." *Olin Corp. v. Ins. Co. of N. Am.*, 603 F. Supp. 445, 449 (S.D.N.Y.), *on reargument*, 607 F. Supp. 1377 (S.D.N.Y. 1985). "[T]he rule forbidding [courts from] use of settlement negotiations [in reaching a finding adverse to that party] is a matter of fundamental policy." *Rein v. Socialist People's Libyan Arab Jamahiriya*, 568 F.3d 345, 352 (2d Cir. 2009). However, "[t]he court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b).

Local Civil Rule 5.2 governs Electronic Service and Filing of Documents and contains a 2013 Committee Note which advises that "before filing a letter via ECF [Electronic Case Files], parties should consider whether the letter contains information about settlement discussions . . . that should not be in the public file, in which case the letter should be sent directly to chambers . . . [or] filed under seal via ECF." 2013 Committee Note to Local Civil Rule 5.2.

The Uni Defendants' statement was not made during compromise negotiations about a claim, but rather negotiations about an anticipated motion for sanctions. Moreover, Plaintiffs disclosed the Uni Defendants' statement to the Court in the context of explaining why Plaintiffs did not take the First Motions for Sanctions seriously and did not respond to them initially. While constituting a feeble excuse for its inaction, the disclosed statement was not used to "prove or disprove the validity or amount of a disputed claim." *See* 1972 Advisory Committee Notes to Fed. R. Evid. 408 ("Since [Rule 408] excludes only when the purpose is proving the validity or invalidity of the claim or its amount, an offer for another purpose is not within the rule.") *See also Serio v. Black, Davis & Shue Agency, Inc.*, No. 05-CV-15 (MHD), 2005 WL 3642217, at *16 (S.D.N.Y. Dec. 30, 2005) (finding exception to Rule 408 when statement offered as evidence pertaining to likelihood of irreparable harm in context of preliminary injunction motion). Moreover, all claims against the Uni Defendants have been dismissed, so there is no longer a need to support or contest liability or damages. *Cf. Rein*, 568 F.3d 345, 352 (2d Cir. 2009) (reversed where District Court took settlement offer into account in determining damages).

Even when Rule 408 is not violated, the Court may use its inherent authority to strike the Opposition if it determines that it was "abusive or otherwise improper under the circumstances." *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, No. 09-CV-2669 (LAP), 2015 WL 4757601, at *3 (S.D.N.Y. Aug. 12, 2015) ("It is well-established that a court has the 'inherent authority' to manage the cases before it," including the "ability 'to strike any filed paper which it determines to be

6

abusive or otherwise improper under the circumstances.'") (citation omitted). "[M]otions to strike, while not favored, may be granted where the allegations challenged have no real bearing on the subject matter or are likely to prejudice the movant." *Shahzad v. Meyers*, No. 95-CV-6196 (DAB), 1997 WL 47817, at *13 (S.D.N.Y. Feb. 6, 1997) (quoting *Red Ball Interior Demolition Corp. v. Palmadessa*, 908 F. Supp. 1226, 1241-42 (S.D.N.Y. 1995).

Plaintiffs' statement regarding the Uni Defendants' offer was irrelevant to the substance of the First Motions for Sanctions. The Court does not find, however, that the statement is likely to prejudice the Uni Defendants or was abusive or improper. To the extent that Plaintiffs argue the offer was an attempt by the Uni Defendants to "clean up its image," perhaps implying that the Uni Defendants would not be concerned with appearances if there were no substance to Plaintiffs' allegations (Response to Second Motion for Sanctions at 4 (stating that they were offering the Uni Defendants' statement "to defend against Defendants' claim that no *pre-suit investigation* was conducted" (emphasis in original))), the Court gives that argument no weight.

Accordingly, the Court finds no basis for striking Plaintiffs' Opposition to the First Motions for Sanctions or for imposing sanctions on the basis of Plaintiffs' disclosure of the Uni Defendants' statement.

**II.   First Motions for Rule 11 Sanctions**

The Uni Defendants argue in the First Motions for Sanctions that sanctions should be imposed against Plaintiffs because there is no evidentiary support for the TAC's allegations against the Uni Defendants, making Plaintiffs' claims frivolous, and because Plaintiffs failed to conduct a reasonable inquiry before filing the TAC.

### A. *Legal Standard*

Rule 11 states that "[b]y presenting to the court a pleading . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an

7

inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Rule 11(b). "[I]n assessing a claim for Rule 11 sanctions, courts apply a standard of 'objective unreasonableness.'" *Pentagen Techs. Int'l Ltd. v. United States*, 172 F. Supp. 2d 464, 470 (S.D.N.Y. 2001), *aff'd*, 63 F. App'x 548 (2d Cir. 2003) (quoting *United States v. Intern. Bhd. of Teamsters*, 948 F.2d 1338, 1345-46 (2d Cir. 1991). "The district court has broad discretion in determining whether to grant Rule 11 sanctions." *Pentagen Techs.*, 172 F. Supp. 2d at 470.

Mere dismissal of a claim does not automatically warrant imposing Rule 11 sanctions. It is not enough that a plaintiff's arguments are inadequate or unconvincing; they must be frivolous. *Richter v. Achs*, 174 F.R.D. 316, 319 (S.D.N.Y. 1997) (granting summary judgment but denying Rule 11 sanctions, stating that "[t]hough plaintiff's arguments were unconvincing, they were not entirely frivolous.") "A filing is frivolous if it is 'clear under existing precedent that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.'" *Pentagen Techs.*, 172 F. Supp. 2d at 470 (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990)).

### B. *Whether Plaintiffs' Claims Lacked Evidentiary Support*

In dismissing Plaintiffs' claims against the Uni Defendants, the Court repeatedly found that there was no evidentiary basis for the allegations.

With regard to Plaintiffs' antitrust claims, this Court found that the "smoking gun" exhibits on which Plaintiffs rested their entire case did not support any involvement by the Uni Defendants in the alleged acts at all. *Celestin*, 698 F. Supp. 3d at 465-66. Plaintiffs had disclaimed all reliance on circumstantial evidence or other evidence to support their claims of a price-fixing conspiracy. ("Mem. in Opp. re Mot. to Dismiss" at 24, Dkt 149.) Instead, they relied solely on alleged "direct evidence," consisting of two video exhibits and two circulars (the "Circulars") issued by the Central Bank of Haiti. (*See id.* at 22-24); *Celestin*, 698 F. Supp. 3d at 465-66. One video exhibit is of a news conference

8

that occurred on an unspecified date at an unspecified location with Denis O'Brien, once the CEO of defendants Digicel, and Michel Joseph Martelly, the former President of Haiti (the "O'Brien Video"); the other is a transcript of a video of a news conference that occurred on an unspecified date at an unspecified location in which Martelly describes his tax plan (the "Martelly Video"). *Celestin*, 698 F. Supp. 3d at 466. The Circulars collectively impose a $1.50 fee on money transfers and food remittances: the first circular imposes "testing, certification, user and inspection fees" of $1.50 on money transfers in and out of Haiti, while the second circular addresses a term inadvertently omitted from the first circular and states that "fees will be collected at the source from all money transfer[s] sent and received . . . from overseas." *Id.* at 453.

Although Plaintiffs characterized these two videos and two circulars as "smoking gun" evidence, the Court found "[n]othing" in the O'Brien Video that "suggests that . . . Defendants devised a plan to fix prices." *Id.* at 466. It further found that, "even if it did, the video does not implicate any Defendant other than Digicel." *Id.* The Court concluded that the Martelly Video was "no more helpful," noting that "there is no discussion of price-fixing in the video [and] not one of the Defendants is referenced." *Id.* The Court opined that in order to implicate any Defendant other than Digicel, "the Court would need to infer not only that O'Brien and Martelly are lying in the video, but also that every Defendant named by Plaintiffs was in attendance and that every Defendant agreed to fix prices. There is not a single allegation in the TAC that allows the Court to draw these inferences." *Id.*

The Court found that the Circulars "likewise make no reference to price-fixing or any of the defendants," and while they reference "meetings," there is "no indication that any of the Defendants attended those meetings or [any indication of] what was discussed in those meetings." *Id.* at 465-66. The Court concluded, "[i]n sum, Plaintiffs' 'direct evidence' is far from direct." *Id.* at 466.

> Plaintiffs[] provide no basis, other than their own speculation, to conclude that Defendants conspired to fix prices and that the taxes were a mechanism for doing so.

9

> To be sure, the TAC contains many allegations that various Defendants knew Martelly's true intentions. But, these allegations are based upon information and belief, and Plaintiffs provide *no factual support whatsoever* for their conclusions. Accordingly, in order to conclude based upon Plaintiffs' evidence that Defendants agreed to fix prices, the Court would have to infer an agreement out of whole cloth. This, the Court cannot do.

*Id.* (emphasis in original).

The Court reached a similar conclusion regarding Plaintiffs' fraud, FDUTPA, and conversion claims. While Plaintiffs identified allegedly false statements made by the defendants, including the Uni Defendants, the Court noted that the "generic disclaimers" Plaintiffs identified said "nothing about the lawfulness or the validity of the Fees" at issue. *Id.* at 467. The Court then stated that, even if the statements "could be construed as claims that the Fees were lawful taxes, there still would be no misrepresentation," because the statements merely asserted that the Fees were lawful, which was true. Plaintiffs had argued that Martelly lacked authority to impose the Fees, but the Court concluded that his lack of authority would "not, without concurrence [over his lack of authority] by the Haitian government, change their nature as a tax . . . ." *Id.* at 467-68. The Court, accordingly, found that "Plaintiffs have failed to establish that the representation[s] w[ere] false" and dismissed Plaintiffs' fraud, FDUTPA, and conversion claims. *Id.* at 468. In doing so, the Court noted that Plaintiffs failed to identify which defendants made which statements. *Id.* at 467.

The Court also found that Plaintiffs failed to describe or identify the money at issue in their conversion claim "in the same manner as a chattel," *SHLD, LLC v. Hall*, 2017 WL 1194240, at *4 (S.D.N.Y. Mar. 30, 2017), which was required, noting that Plaintiffs "d[id] not specify this information at all." *Celestin*, 698 F. Supp. 3d at 469.

With regard to representations concerning education, Plaintiffs generally alleged that the defendants "utilized tactics that were and are deceptive and misleading in material respects" and "exposed the public to sales tactics through various mediums that were and are false and misleading," but the Court noted that "nowhere in the TAC are these purported tactics described" and that "even

if the TAC did specify what precisely these Defendants stated, the TAC would be deficient because it lacks any detail whatsoever about which Plaintiff saw which representation, and what each Plaintiff did as a result." *Id.*

Finally, the Court found that Plaintiffs' allegations regarding New York Banking Law claims were "conclusory and insufficiently detailed," "largely premised upon information and belief," "provide[d] insufficient detail to infer that Unitransfer and Unibank were operating in New York illegally," and provided no authority for Plaintiffs' assertion that the New York Banking Law "prevents licensed money transfer operators from transferring money to a foreign bank operating in a foreign country." *Id.* at 473. The Court questioned whether Plaintiffs had standing to bring the claims at all, noting, *inter alia*, that "any injury suffered by Plaintiffs is due to the imposition of Fees, not to the act of unauthorized banking." *Id.*

Because the Court concluded that Plaintiff failed *entirely* to implicate the Uni Defendants though any factual allegations or proffered evidence, no competent attorney could believe that the allegations against the Uni Defendants had evidentiary support.

In their Opposition, Plaintiffs fail to point to any evidentiary support for their claims against the Uni Defendants. They assert only that they conducted an adequate pre-suit inquiry. (Opposition at 1-2.)

"[W]hat constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer [of a complaint]; whether he had to rely on a client for information as to the facts underlying the [complaint]; whether the [complaint] was based on a plausible view of the law; or whether he depended on . . . another member of the bar." *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 480 (S.D.N.Y. 2003), *aff'd sub nom., Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) (quoting *Kamen v. AT&T*, 791 F.2d 1006, 1012 (2d Cir. 1986). "Whether the attorney's

11

conduct was reasonable should be determined without the benefit of hindsight, based on what was objectively reasonable to believe at the time the [complaint] was submitted." *Id.* at 479–80.

Plaintiffs do not describe what inquiry they made, let alone support its reasonableness. Plaintiffs state that they conducted an adequate pre-suit investigation because a Haitian judge "recently" issued an arrest warrant for fraud and corruption naming Martelly and Privet. (Opposition at 1.) Plaintiffs also assert that Unibank's former chairman and chief executive officer, Carl Braun, has been sanctioned by the government of Canada for his involvement in fraud, corruption, and criminal enterprises and allege, without elaboration, that he has links to Haitian gangs. (*Id.* at 2.) Finally, Plaintiffs state that investigations made by the United Nations and the Canadian government "conducted years after Plaintiffs initiated their lawsuit" reached "the same conclusion as Plaintiffs did." (*Id.* at 1-2.) Plaintiffs do not explain how these later investigations by other entities show that Plaintiffs' counsel conducted a reasonable investigation before filing suit. Rather, they seem to argue that these later events lend credence to Plaintiffs' claims and somehow confirm their pre-suit investigation.

This argument fails, however. Plaintiffs fail to explain how the arrest warrant implicates the Uni Defendants, or the relevance of the sanctions against Carl Braun to the current proceedings, including whether the sanctions stem from the same activities alleged by Plaintiff in this case. Plaintiffs also do not explain the nature or scope of the United Nations and Canadian investigations.

Perhaps to explain their lack of evidentiary basis and inadequate pre-suit investigation, Plaintiffs allege, without support or specificity, that "Plaintiffs were warned during the pre-suit investigation to be careful as some of the named defendants are dangerous characters with ties to criminal elements known to have committed heinous acts against anyone who challenged them." (Opp. at 2.) In addition to providing no details of such threats, Plaintiffs fail to draw any connection between the Uni Defendants' actions and those of defendants who were "dangerous characters."

12

Moreover, although Plaintiffs state that "several individuals contacted by Plaintiffs during the pre-suit investigation opted not to keep their confirmed appointments" due to fear, they again do not provide any basis for these allegations or connect them in any way to the Uni Defendants. (*Id.*) In any event, Plaintiffs do not allege what those witnesses would say had they not canceled their appointments.

To the extent Plaintiffs contend they were unable to complete an adequate pre-suit investigation due to these individuals feeling threatened, they also do not provide any basis for arguing that their factual contentions would likely have evidentiary support after a reasonable opportunity for further investigation or discovery. (*See* Mem. in Opp. re Mot. to Dismiss at 24.)

"Courts in the Second Circuit have found sanctions appropriate in cases where a plaintiff files a claim that is clearly deficient and where he advances no plausible argument in favor of validity." *de la Fuente v. DCI Telecommunications, Inc.*, 259 F. Supp. 2d 250, 262 (S.D.N.Y. 2003). None of the evidence cited by Plaintiffs in opposing the First Motions for Sanctions implicates the Uni Defendants in the causes of action alleged in the TAC, which the Court found completely lacking in evidentiary support. Thus, no plausible argument in favor of validity has been or could be advanced by Plaintiffs. Accordingly, sanctions are appropriate. *Goldman*, 825 F. App'x at 37.

### C. *Frivolousness of Plaintiffs' FDUTPA Claim against Unibank*

Unibank makes the additional argument that Plaintiffs' FDUTPA claim against it was frivolous because no basis exists in law to support the claim that Unibank violated the FDUTPA. (Unibank Motion at 7-8.) In their Opposition, Plaintiffs do not address this point at all.

The law with regard to the FDUTPA is clear: FDUTPA claims cannot be asserted against banks. *See, e.g.*, *Nino v. Flagstar Bank, FSB*, 766 F. App'x 199, 202 (6th Cir. 2019) ("Defendant is a federally regulated bank. Thus, we hold that the FDUTPA does not apply to Defendant."); *see also Bankers Tr. Co. v. Basciano*, 960 So. 2d 773, 779 (Fla. Dist. Ct. App. 2007) ("FDUTPA clearly excludes

13

banks from its grasp."). Plaintiffs do not contest that Unibank is a bank, nor do they argue any basis on which Unibank could be found liable under the FDUTPA.

Because it is clear under existing law that FDUTPA claims cannot be asserted against banks such as Unibank, and Plaintiffs make no argument that existing law should be extended or changed, there is no chance of success on this claim; thus, Plaintiffs' claim against Unibank for violating the FDUTPA was frivolous.

I find that Plaintiffs' lack of evidentiary support for their claims against the Uni Defendants, together with Plaintiffs' decision to bring their FDUTPA claim against Unibank, merit sanctions being imposed against Plaintiffs.

**III.     Third Motion for Sanctions**

In their Third Motion for Sanctions, the Uni Defendants request Rule 11 sanctions against Plaintiffs based on twelve alleged misrepresentations and unsubstantiated claims made by Plaintiffs in their Response to the Second Motion for Sanctions. (Third Motion for Sanctions at 12.) The Uni Defendants argue that Plaintiffs chose to "fabricate international findings to impugn the movants with alleged bad actions of Unibank's former chairman and CEO" and use "deception" to "seek to have the Court infer there was some fraud found by either the United Nations or Canadian government against Unibank or Unitransfer," even though "no such findings exist." (*Id.* at 1.) The Uni Defendants contend that Plaintiffs' representations in the Response to the Second Motion for Sanctions are "a continuation of Plaintiffs' counsel's pattern of filing information with the Court without conducting <u>any</u> investigation as to the veracity of those allegations and with disregard for their obligations as attorneys." (*Id.* (emphasis in original).) The Uni Defendants propose sanctions of $2,500.00 against each named plaintiff in this matter and $10,000.00 each against Marcel Denis and Rodney Austin, counsel for Plaintiffs. ("Proposed Order," Dkt. 190-1.)

14

After the Uni Defendants filed the Third Motion for Sanctions on August 8, 2024, Plaintiffs were required to file any opposition by August 22, 2024. (*See* Local Civil Rule 6.1(b).) They did not so do. The Uni Defendants filed a reply, requesting that the Court grant the motion as unopposed, but Plaintiffs still did not respond. Accordingly, the Court grants the Uni Defendants' request for sanctions in the Third Motion for Sanctions as unopposed, but defers determination of the sanctions to be imposed.

### IV. Appropriate Sanctions

"A sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Rule 11(c)(4). *See Goldman* at *38. "The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

Rule 11 "does not attempt to enumerate the factors a court should consider in deciding whether to impose a sanction or what sanctions would be appropriate in the circumstances." *Id.* Nonetheless, considerations in imposing sanctions may include the following:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants.

*Id.*; *see, e.g.*, *Goldman*, 825 F. App'x at 39 n.3 (citing approvingly). Other factors include "whether [the improper conduct] was part of a pattern of behavior in the litigation, whether the misconduct resulted in additional litigation expenses, [and] whether the party reasserted claims after being put on notice that they lacked a proper legal basis . . . ." *Ammann v. Sharestates, Inc.*, No. 21-CV-2766 (JS)(ST), 2024 WL 1956237, at *9 (E.D.N.Y. Mar. 21, 2024); see also *Robinson v. De Niro*, 614 F. Supp. 3d 73, 75

15

(S.D.N.Y. 2022), *R&R adopted*, No. 19-CV-09156 (LJL), 2022 WL 7091518 (S.D.N.Y. Oct. 12, 2022) ("a court should also consider whether it was objectively unreasonable for an attorney to 'reaffirm[ ]' claims and 'advocat[e] positions' after they were shown to be inaccurate.") (alterations in original) (quoting *Galin v. Hamada*, 753 F. App'x 3, 8 (2d Cir. 2018))).

"The court has significant discretion in determining what sanctions, if any, should be imposed for a violation . . . ." Rule 11 advisory committee's note to 1993 amendment; *see, e.g.*, *Perez v. Posse Comitatus*, 373 F.3d 321, 326 (2d Cir. 2004) (citing approvingly). "Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty." Rule 11 advisory committee's note to 1993 amendment; *see also Caisse Nationale de Credit Agricole-CNCA, New York Branch v. Valcorp, Inc.*, 28 F.3d 259, 266 (2d Cir. 1994) ("[T]he principal objective of the imposition of Rule 11 sanctions is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses."). "However, under unusual circumstances . . . deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation." Rule 11 advisory committee's note to 1993 amendment; *see also, e.g.*, *In re Zyprexa Prod. Liab. Litig.*, 467 F. Supp. 2d 256, 272–73 (E.D.N.Y. 2006) ("In circumstances where the litigant causes unnecessary delay or needless increase to the cost of litigation, the typical sanction is the payment of the other side's reasonable attorney's fees which were incurred as a result of the improper filing.")

"The district court has the discretion to fashion a sanction for purposes of deterrence which awards part, but not all, of the opposing party's attorney's fees. That is to say: adequate *deterrence* may permissibly fall short of full *compensation*." *Anschutz Petroleum Mktg. Corp. v. E.W. Saybolt & Co.*, 112 F.R.D. 355, 357 (S.D.N.Y. 1986) (emphasis in original). "When a court determines that attorneys' fees and costs should be used as sanctions under Rule 11, the award should be based both on the total

amount of reasonable attorneys' fees and costs attributable to the sanctioned party's misconduct and the amount needed to serve the deterrent purposes of Rule 11." *Offor v. Mercy Med. Ctr.*, 327 F.R.D. 32, 34 (E.D.N.Y. 2018).

The Uni Defendants do not request any specific sanction in the First Motions for Sanctions, and in the Third Motion for Sanctions propose sanctions of $2,500.00 against each named plaintiff and $10,000.00 against each counsel for Plaintiffs. (Proposed Order at 9.) Because named plaintiffs Jeanette Valeus, Guetty Felin, and Herve Cohen withdrew their claims against the Uni Defendants before the Court issued a ruling regarding the TAC, imposing sanctions against them for claims brought in the TAC is not warranted.

In order to more fully assess the appropriate sanctions to impose pursuant to either the First Motions for Sanctions or the Third Motion for Sanctions, the Court grants leave to the parties to submit supplemental briefs on this issue. If the Uni Defendants are seeking reasonable attorneys' fees and costs, they must submit timesheets and other documentation. *See McKenzie-Morris*, 638 F. Supp. 3d at 341 ("In order to properly assess what fees may be warranted, Defendants are instructed to submit contemporaneous time records that show for each attorney, the date, the hours expended, and the nature of the work done opposing Plaintiffs' judicial-notice motion and litigating this sanctions motion." (quotation omitted)). The Uni Defendants are reminded that in seeking attorneys' fees, they bear the burden of documenting their hours expended and hourly rates; furthermore, the Court retains discretion, in reviewing the Uni Defendants' submission, to impose a sanction limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. *Id.* Plaintiffs may submit appropriate financial information and proof to the Court regarding any financial constraints on paying a monetary sanction as well. *See, e.g.*, *Offor v. Mercy Med. Ctr.*, 327 F.R.D. 32, 38 (E.D.N.Y. 2018) (proceeding similarly). The parties are directed to file this supplemental information by no later than October 21, 2024.

## CONCLUSION

Based on the foregoing, the Court grants Unibank and Unitransfer's First Motions for Sanctions, denies the Second Motion for Sanctions, and grants the Third Motion for Sanctions. The Court will determine the appropriate sanction or sanctions to be imposed after reviewing further briefing by the parties.

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated: September 30, 2024
Brooklyn, New York