UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ODILON S. CELESTIN, WIDMIR ROMELIEN,
GOLDIE      LAMOTHE-ALEXANDRE,
VINCENT      MARAZITA,      JEANNETTE
VALEUS, GUETTY FELIN, GORETTIE ST.
VIL, HERVE COHEN, and on behalf of all others
similarly situated, MARIE LUCIE ST. VIL,

                       Plaintiffs,

             - against -

MICHEL JOSEPH MARTELLY, JOCELERME
PRIVERT, JOVENEL MOISE, CARIBBEAN
AIR MAIL, INC. d/b/a CAM, THE WESTERN
UNION COMPANY, d/b/a Western Union
Holdings, Inc., Western Union Financial Services,
Inc., and through other subsidiaries and affiliates,
UNITRANSFER USA, INC., UNIBANK, S.A.,
UNIGESTION HOLDING, S.A. d/b/a DIGICEL
HAITI,     NATCOM      S.A.,     and     THE
GOVERNMENT OF HAITI,

                      Defendants.
----------------------------------------------------------X

18-CV-7340 (LDH) (PK)

**ORAL ARGUMENT REQUESTED**

**UNITRANSFER USA, INC. AND UNIBANK, S.A.'S SUPPLEMENTAL BRIEF ON
APPROPRIATE SANCTIONS TO IMPOSE AGAINST PLAINTIFFS
AND THEIR COUNSEL**

Dated:    October 21, 2024
            New York, New York

**STINSON LLP**

Kieran M. Corcoran (KC4935)
100 Wall Street, Suite 201
New York, New York 10005
Tel: (646) 883-7471
kieran.corcoran@stinson.com

**PERLMAN, BAJANDAS, YEVOLI &
ALBRIGHT, P.L**.

Paul D. Turner (admitted *pro hac vice*)
Benjamin L. Reiss (admitted *pro hac vice*)
Oliver Birman (admitted *pro hac vice*)
200 South Andrews Avenue, Suite 600
Fort Lauderdale, FL 33301
Tel: (954) 566-7117
pturner@pbyalaw.com
breiss@pbyalaw.com
obirman@pbyalaw.com
*Attorneys for Defendants Unibank, S.A. and
Unitransfer USA, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................ 2

LEGAL STANDARD ............................................................................................... 8

ARGUMENT ............................................................................................................. 8

    A.   Punitive Sanctions Against Plaintiffs and Plaintiffs' Counsel are Warranted. .................. 8

    B.   Plaintiffs' Counsel are Responsible for All Attorneys' Fees and Costs Incurred by the Uni Defendants ............................................................................. 10

      1.   Fees and Costs Should be Assessed Against Plaintiffs' Counsel as a Deterrent: ......... 10

      2.   The Amount of Fees Incurred by the Uni Defendants is Reasonable: .......................... 14

        a.   *Johnson* Factor 1 and 9: The Time and Labor Expended by Experienced Counsel Advanced Dismissal and the Imposition of Sanctions. ................................. 15

        b.   *Johnson* Factors 2 and 3: Defending This Case Required Expertise in Complex Areas of Law. .................................................................. 16

        c.   *Johnson* Factor 8: The Amount Involved and Results Obtained Tend to Show Reasonableness. ........................................................... 16

        d.   *Johnson* Factor 12: Awards in Similar Cases are Proportionate to the Amount Requested Here. ............................................................ 16

      3.   The Amount of Taxable Costs ............................................................. 17

    C.   Non-Monetary Sanctions to Deter Future Conduct. ........................................ 18

CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Disaster at Lockerbie, Scotland*,
   144 F.R.D. 613 (E.D.N.Y. 1992) ...................................................................................11

*Ammann v. Sharestates, Inc.*,
   No. 21-CV-2766 (JS)(ST), 2024 WL 1956237 (E.D.N.Y. Mar. 21, 2024) ...........................12

*Celestin v. Martelly*,
   698 F. Supp. 3d 443 (E.D.N.Y. 2023) ...............................................................................1

*Chambers v. Nasco*,
   501 U.S. 32 (1991) ...........................................................................................13, 17

*Craig v. City of New York*,
   1:20-cv-02152 (PK), 2022 WL 2238451 (E.D.N.Y. June 22, 2022) ...............................10, 11

*Galin v. Hamada*,
   753 F. App'x 3 (2d Cir. 2018) ......................................................................................13

*Gurary v. Winehouse*,
   270 F. Supp. 2d 425 (S.D.N.Y. 2003) ............................................................................14

*Hale v. Iancu*,
   No. 3:19-cv-1963 (VLB), 2021 WL 9405460 (D. Conn. Feb. 23, 2021) ..............................10

*Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*,
   2020 WL 1467118 (S.D.N.Y. 2020) ...............................................................................18

*Ivy v. Kimbrough*,
   115 F.3d 550 (8th Cir. 1997) .......................................................................................14

*Johnson v. Ga. Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ...................................................................................15, 16

*Kirschner v. Zoning Bd. of Appeals*,
   159 F.R.D. 391 (E.D.N.Y. 1995) ...............................................................................14, 15

*Kramer v. Tribe*,
   156 F.R.D. 96 (D.N.J. 1994) ........................................................................................14

*In re Locust Bldg. Co.*,
   299 F. 756 (2d. Cir. 1924) .............................................................................................8

*McMahon v. Shearson/American Express, Inc.*,
   896 F.2d 17 (2d Cir. 1990) ............................................................................................2

*In re Nasdaq Market–Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................................16

*Offor v. Mercy Med. Ctr.*,
    327 F.R.D. 32 (E.D.N.Y. 2018) .....................................................................12, 14

*Robinson v. De Niro*,
    614 F. Supp. 3d 73, 75 (S.D.N.Y. 2022), *R&R adopted*, No. 19-CV-09156
    (LJL), 2022 WL 7091518 (S.D.N.Y. Oct. 12, 2022) .......................................12

*Rogers v. Palmer*,
    102 U.S. 263 (1880) ..........................................................................................8

*Rubinow v. Boehringer Ingelheim Pharms., Inc.*,
    Civil Action No. 3:08–cv–1697 (VLB), 2010 WL 1882320 (D. Conn. May 10,
    2010) ................................................................................................................13

*In re September 11th Liab. Ins. Coverage Cases*,
    243 F.R.D. 114 (S.D.N.Y. 2007) ..........................................................13, 16, 17

*Sussman by & Through Guilden v. Bank of Isr.*,
    56 F.3d 450 (2d Cir. 1995).................................................................................14

*U.S. v. Real Prop. & Premises*,
    22-cv-7410 (DLI)(PK), 2024 WL 1259430 (E.D.N.Y. Mar. 25, 2024) ..................8

*United States Football League v. National Football League*,
    887 F.2d 408 (2d. Cir. 1989)..............................................................................15

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    784 F.3d 99 (2d Cir. 2015).................................................................................18

*In re Zyprexa Prod. Liab. Litig.*,
    467 F. Supp. 2d 256 (E.D.N.Y. 2006) ................................................................12

**Statutes**

28 U.S.C § 1920 (1) ...................................................................................................18

28 U.S.C § 1920 (2) ...................................................................................................18

28 U.S.C § 1920 (3) ...................................................................................................18

28 U.S.C § 1920 ........................................................................................................17

Fed. R. Civ. P. 11 ...................................................1, 2, 3, 5, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18

Fed. R. Civ. P. 11(b) ..................................................................................................11

Fed. R. Civ. P. 11(c)(4)...........................................................................................10, 18

E.D.N.Y. Local Civil Rule Rule 6.1(b)..........................................................................................7

E.D.N.Y Local Civil Rule 54.1...................................................................................................17

Pursuant to this Court's Decision and Order, dated September 30, 2024 [D.E. 193] and upon the supporting Declaration of Oliver Birman, Esq., Defendants Unitransfer USA, Inc. ("Unitransfer") and Unibank, S.A. ("Unibank") (together, the "Uni Defendants") [1] respectfully submit this Supplemental Brief for Appropriate Sanctions to Impose Against Plaintiffs and their Counsel.

## PRELIMINARY STATEMENT

After years of frivolous litigation by Plaintiffs and their counsel, the Court dismissed this lawsuit and found that Rule 11 sanctions were warranted based, in pertinent part, on:

- The complete lack of any evidence of an agreement to price fix. *Celestin v. Martelly*, 698 F. Supp. 3d 443, 446 (E.D.N.Y. 2023); D.E. 193, pp. 9-10;

- The complete lack of evidence of any material misrepresentations. *Celestin* 698 F. Supp. 3d at 467-468; D.E. 193, p. 10; and

- The complete legal baselessness of certain claims. *Celestin* 698 F. Supp. 3d at 469-473; D.E. 193, pp. 10-14.

Since the outset of this case, Plaintiffs and their counsel, Marcel Denis ("Denis") and Rodney Austin ("Austin") (together Austin and Denis are "Plaintiffs' Counsel") have been aware that their claims lacked any evidentiary basis. These very issues were raised to Plaintiffs by the Uni Defendants before the Complaint was filed (in a letter dated October 31, 2018), following the First Amended Complaint (in a Motion for Sanctions dated March 6, 2019), and again prior to the dismissal of the Third Amended Complaint ("TAC") (most recently, in the granted Motion for Sanctions served on June 8, 2023). Nevertheless, Plaintiffs and Plaintiffs' Counsel chose to turn a blind eye and proceed without diligently investigating the facts or curing their failure to do so.

While the Motion to Dismiss the TAC was pending, Plaintiffs and Plaintiffs' Counsel refused to acknowledge or respond to the obvious lack of evidence for the claims made in the

---

[1] Unibank was not included in the initial Complaint [D.E. 1] or First Amended Complaint [D.E. 15].

TAC. Plaintiffs' Counsel subsequently revealed their callousness when they finally acknowledged these Motions for Sanctions (which have since been granted) and admitted to ignoring Court procedures because they "never took the [Uni Defendants] sanction motion[s] seriously." [D.E. 171].

Following the Motion for Sanctions regarding the TAC [D.E. 162 and 164], Plaintiffs' Counsel doubled down on their bad faith and baseless portrayals to the Court when they made 12 misrepresentations impugning counsel, the Uni Defendants, and Unibank's former Chairman and CEO. When the Uni Defendants sought proof for these misrepresentations, they were met with silence. This is a damning non-answer.

Plaintiffs and Plaintiffs Counsels' appalling behavior is illustrative of Rule 11's intentions; that is, "punishment for violation of the Rule, compensation for victim of the violation, and deterrence of others" with a focus on "discouraging dilatory and abusive litigation tactics and eliminating frivolous claims and defenses, thereby speeding up and reducing the costs of the litigation process." *McMahon v. Shearson/American Express, Inc.,* 896 F.2d 17, 21 (2d Cir. 1990) (abrogated on other grounds).

Accordingly, sanctions are justified and appropriate in the form of: (1) punitive sanctions against Plaintiffs and Plaintiffs' counsel, (2) the Uni Defendants' reasonable attorneys' fees and costs, and (3) non-monetary sanctions to deter future misconduct.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

***Pre-Suit Notice and Response.*** On October 18, 2018, Plaintiffs' Counsel sent a pre-suit demand letter to Unitransfer seeking $1.5B which included the core misrepresented fact in this case: That Unitransfer enforced the money transfer fee at issue as part of a scheme to allegedly defraud Haitians and misrepresent that the fee was used for educational purposes. On October 31, 2018, Unitransfer responded, through counsel, and informed Plaintiffs' Counsel that "you have a

pre-suit due diligence obligation and must present claims to the court that you know or should know are supported by the law and material facts necessary to establish them. Your failure to fully comply with these obligations will result in our clients seeking fees against you, your firm and your client(s)." *See* Declaration of Oliver Birman ("Birman Dec"), attached as **Exhibit 1**, at ¶3. This response further notified, "[i]n addition to your pre-suit due diligence obligations, you lack probable cause to sue many of the proposed defendants in your Demand Letter. This includes our clients. You are now on notice that our clients will treat any frivolous, overreaching claims filed against them as evidence of malice on your part and will sue you, your firm and your client(s)[.]" *Id* at ¶4. Instead of heeding these warnings and conducting their due diligence, Plaintiffs and Plaintiffs' Counsel filed the Complaint on December 24, 2018. [D.E. 1], which was amended on January 23, 2019. [D.E. 15]. These initial filings contained the same baseless allegations of a price fixing agreement, misrepresentations, and legally flawed claims as were alleged in the letter.

*The Complaint and Amended Complaint and the 2019 Motion for Sanctions.* Even before amending the Complaint that contained unsupported allegations as described in the pre-suit letter, Plaintiffs' Counsel exhibited their bad motives through an interview with the Haitian Times, published on January 2, 2019.[2] The Complaint and Amended Complaint were riddled with inaccuracies, guesses, and false representations about Unitransfer.

As a result, on March 6, 2019, Unitransfer served Plaintiffs and Plaintiffs' Counsel with a Motion for Sanctions Pursuant to Rule 11.[3] In this Motion, Unitransfer argued that the claims were frivolous because, among other things: (1) Plaintiffs have no evidence to support their conclusory allegations that Unitransfer entered into an unlawful agreement; and (2) Plaintiffs have no evidence to support their claims that Unitransfer made a material misrepresentation to induce the payments

---

[2] The January 2, 2019 Haitian Times article can be found at https://haitiantimes.com/2019/01/02/former-haitian-officials-accused-of-wire-transfer-fraud/ and is attached as **Exhibit 2.**
[3] The Motion for Sanctions Pursuant to Rule 11 served on March 6, 2019, is attached as **Exhibit 3**.

of the fees (all counts). **Ex. 3**. Instead of remediating their blatant errors, Plaintiffs' Counsel accepted another media interview.[4] In the letter requesting a briefing schedule, Unitransfer identified the primary issue as Plaintiffs' complete lack of an evidentiary basis for their claims and Plaintiffs' Counsels' failure to conduct a reasonable inquiry. [D.E. 54]. Plaintiffs and Plaintiffs' Counsel responded with the same "proof" as is referenced in the Order of Dismissal and Order Granting Sanctions, namely the "smoking gun" videos that have nothing to do with the Uni Defendants, the Circulars, and the generic disclaimers on Unitransfer receipts. [D.E. 55].

At the April 10, 2019, hearing to determine a briefing schedule on the anticipated Motions to Dismiss the Amended Complaint, Plaintiffs' Counsel expressed their intentions to again amend the Complaint. On April 24, 2019, Plaintiffs filed the Second Amended Complaint. [D.E. 62]. "[I]n light of the April 24 filing of the second amended complaint", the Court denied the 2019 Motion for Sanctions without prejudice.[5]

***The Second Amended Complaint, Motion to Dismiss, and Appeal.*** Pursuant to the Court's directives at the April 10, 2019, hearing, the parties fully briefed and filed Motions to Dismiss based upon the Act of State Doctrine and *forum non conveniens*. [D.E. 64, 65, and 66]. While the Defendants had all identified the complete lack of evidence and related issues, the Court determined that these two legal doctrines would be dispositive of the case and instructed the parties to brief only those two issues. The Court granted these Motions to Dismiss based on the Act of State Doctrine and *forum non conveniens*. [D.E. 73]. The Second Circuit reversed on appeal and remanded the case for further proceedings. [D.E. 104]. The next day, Plaintiffs' Counsel engaged

---

[4] The April 17, 2019 Haitian Times article can be found at https://haitiantimes.com/2019/04/17/struggling-economy-weakens-impact-of-diaspora-remittances/ and is attached as **Exhibit 4**.
[5] The June 12, 2019, Order is attached hereto as **Exhibit 5**.

in another media interview.[6] Following remand, the Court held a status conference on May 17, 2022, followed by the TAC. [D.E. 118]. The Court created a briefing schedule for the Omnibus Motion to Dismiss. The parties were directed to brief all issues including the complete lack of evidentiary, factual, or legal support for any of the claims.

***The TAC, the Motions to Dismiss, and the First Post-Briefing Motion for Sanctions***. The TAC demonstrated Plaintiffs and Plaintiffs' Counsels' continued pattern of ignoring due diligence obligations to present support for their claims. Despite being on notice since October 2018 that these claims had no merit, the TAC included the same allegations of the Uni Defendants' involvement in unlawful price fixing, misrepresentations, and additional legal and factual baseless allegations. [D.E. 118]. The Omnibus Motion to Dismiss, which raised each of these arguments, was filed on January 4, 2023, along with the opposition, and reply pursuant to the Court's bundling procedure. [D.E. 148, 149, and 150]. The Omnibus Motion to Dismiss makes it patently clear that the TAC lacks any support. Specifically, again, the lack of any price fixing agreement, misrepresentations, or legal basis for the pending FDUTPA claim against Unibank.

On June 8, 2023, after giving Plaintiffs and Plaintiffs' Counsel significant time to digest the arguments in the Omnibus Motion to Dismiss, the Uni Defendants each served their Motion for Sanctions pursuant to Rule 11. When Plaintiffs were unresponsive, the Uni Defendants filed letters on June 30, 2023, requesting that the Court set a briefing schedule for anticipated Rule 11 motions for sanctions. [D.E. 156, 157]. The Uni Defendants then began the bundling process on September 26, 2023. [D.E. 165]. On September 29, 2023, the Court entered its Order Granting the Omnibus Motion to Dismiss ("Dismissal Order"). [D.E. 159]. In the Dismissal Order, the Court identified the exact issues that have permeated the Complaint since its inception; the exact issues

---

[6] The April 1, 2022 Haitian Times article can be found at https://haitiantimes.com/2022/04/01/price-fixing-lawsuit-against-haitis-ex-presidents-money-transfer-and-phone-companies-revived/ and is attached as **Exhibit 6**.

Unitransfer and Unibank have identified and brought to Plaintiffs and Plaintiffs' Counsels' attention since October 2018.

There were near identical findings made in the Court's Dismissal Order that was entered *before* the Court had seen the June 2023 Motion for Sanctions. However, Plaintiffs' Counsel chose to ignore the June 2023 Motion for Sanctions and instead asked for months to respond (requesting February 10, 2024, as their response date) before ultimately refusing to respond until the motions were filed with the Court. [D.E. 165, at 1-2]. Left with no other choice, the Uni Defendants filed their Motions for Sanctions and letter motions informing the Court of the Motion history. On February 23, 2024, Plaintiffs and Plaintiffs' Counsel acknowledged the Motions for Sanctions and attempted to justify their complete failure to timely respond or adhere to Court procedures, reasoning that they "never took the [Uni Defendants] sanction motion[s] seriously." [D.E. 171]. Within this filing, Plaintiffs and Plaintiffs' Counsel revealed settlement discussions that occurred between counsel on June 29, 2023, three weeks after the Motion for Sanctions was initially served on Plaintiffs and Plaintiffs' Counsel.

***The Motion to Strike and Third Motion for Sanctions.*** Following Plaintiffs Counsels' letter-motion revealing confidential settlement discussions, the Uni Defendants filed a motion to strike. [D.E. 176]. In their response [D.E. 182] filed on March 14, 2024, Plaintiffs and Plaintiffs' Counsel continued their practice of making unsupported and frivolous statements without conducting any diligent investigation into the truth of their allegations. This time, Plaintiffs and Plaintiffs' Counsel misrepresented their pre-suit inquiry, misrepresented the findings of the United Nations and Canadian Government in sanctioning certain individuals, and misrepresented the timing and substance of the improperly disclosed settlement discussions. This misrepresentation is critical to the Plaintiffs' Counsels' pattern in this litigation as they stated the discussions, which occurred on June 29, 2023, pre-dated the Motion for Sanctions that was served on June 8, 2023.

To avoid filing another Motion for Sanctions, on June 6, 2024, Uni Defendants' counsel contacted Plaintiffs' Counsel to identify the misrepresentation and proof of their falsity and asked that they either "provide proof of the following or [] file a retraction and apology on or before June 13, 2024." [7] This request was ignored.

On July 17, 2024, the Uni Defendants served another Motion for Sanctions Pursuant to Rule 11 on Plaintiffs, identifying 12 misrepresentations within the Response to the Motion to Strike and demanding that Plaintiffs and Plaintiffs' Counsel take corrective action. Again, the Uni Defendants were met with silence and on August 8, 2024, were forced to file the Third Motion for Sanctions. Pursuant to E.D.N.Y. Local Rule 6.1(b), Plaintiffs and Plaintiffs' Counsels' response was due on or before August 22, 2024. No response was filed. Still, to give Plaintiffs and Plaintiffs' Counsel every opportunity to respond, the Uni Defendants waited another 30 days before informing the Court the Motion for Sanctions was unopposed on September 26, 2024. [D.E. 190].

***The Order Granting the "First" and Third Motions for Sanctions.*** Each of the three pending Motions for Sanctions [D.E. 162/164, D.E. 175, and D.E. 187] were referred to Judge Kuo for determination. Judge Kuo granted the First and Third Motions for Sanctions. The Decision and Order repeatedly cites to the Dismissal Order's findings of a complete lack of evidence for, among other things, any price fixing agreement involving the Uni Defendants, any misrepresentations by the Uni Defendants, and a complete lack of a legal basis for the several claims. The Court stated, "Because the Court concluded that Plaintiff failed *entirely* to implicate the Uni Defendants though any factual allegations or proffered evidence, no competent attorney could believe that the allegations against the Uni Defendants had evidentiary support." D.E. 193, p. 11. In conducting a reasonableness analysis, the Court concluded that sanctions are appropriate since there was neither pre-suit due diligence nor did Plaintiffs provide any basis to argue their contentions would have

---

[7] The June 6, 2024 e-mail is attached as **Exhibit 7.**

evidentiary support after a reasonable opportunity for further investigation or discovery. D.E. 193, p. 13. As an additional basis for sanctions, the Court found that the inclusion of Unibank in the FDUTPA claim was legally baseless and frivolous. D.E. 193, p. 14.

In granting the Third Motion for Sanctions as unopposed, the Court relied upon the Uni Defendants' argument that "Plaintiffs' representations in the Response to the Second Motion for Sanctions are 'a continuation of Plaintiffs' counsel's pattern of filing information with the Court without conducting any investigation as to the veracity of those allegations and with disregard for their obligations as attorneys.'" D.E. 193, p. 14, citing D.E. 187, p. 1. The Court directed the parties to submit supplemental briefing on the appropriate sanctions to be imposed. *Id.* at 17.

## LEGAL STANDARD

The Court provided a complete legal standard analysis on the appropriate amount of monetary sanctions pursuant to Rule 11. D.E. 193, Section IV. The Uni Defendants incorporate that section by reference herein.

## ARGUMENT

### A. Punitive Sanctions Against Plaintiffs and Plaintiffs' Counsel are Warranted.

Plaintiffs and Plaintiffs' Counsel all bear responsibility for this frivolous lawsuit. "The attorney is conclusively presumed to have informed his client of all material facts which the attorney acquires knowledge of, and which affect the client's rights, while the attorney is acting in the course of his employment and within the scope of his authority." *In re Locust Bldg. Co.*, 299 F. 756, 32 (2d. Cir. 1924); *see also U.S. v. Real Prop. & Premises*, 22-cv-7410 (DLI)(PK), 2024 WL 1259430, at *4 (E.D.N.Y. Mar. 25, 2024) ("the law presumes that an attorney communicates notice of any matter within the scope of representation to the client.") (*quoting Rogers v. Palmer*, 102 U.S. 263 (1880)). Presuming that Plaintiffs' Counsel has kept their clients informed of the material facts in this case, Plaintiffs are aware that:

- On October 31, 2018, the Uni Defendants claimed the action was meritless and that it would be met with sanctions or other consequences.

- On March 6, 2019, the Uni Defendants served and pursued Rule 11 Sanctions based on the lawsuit being frivolous and without evidence.

- On March 28, 2019, the Uni Defendants filed a letter motion with the Court seeking Rule 11 Sanctions based on the lawsuit being frivolous and without evidence [D.E. 54].

- On April 10, 2019, at a hearing before Judge Hall, counsel for the Uni Defendants again raised their request for Rule 11 Sanctions.

- On March 10, 2021, the Court dismissed the lawsuit for the first time putting the Plaintiffs at risk of sanctions.

- On May 24, 2022, the Court ordered that the parties brief all issues for dismissal, putting the lack of evidence that permeated the case front and center for the Court's determination.

- On September 23, 2022, the Uni Defendants served Plaintiffs with the Omnibus Motion to Dismiss, which showed clearly the lack of evidence and issues that ultimately resulted in dismissal and the order granting sanctions.

- On June 8, 2023, the Uni Defendants served Plaintiffs with the Motion for Sanctions based on Rule 11 due to the lack of evidence and issues that ultimately resulted in dismissal and the order granting sanctions.

- On June 29, 2023, the Uni Defendants offered Plaintiffs the opportunity to avoid sanctions and the continued litigation as part of the settlement negotiations Plaintiffs' Counsel disclosed to the Court.

- On June 30, 2023, the Uni Defendants filed letter motions and were pursuing the sanctions based on the lack of evidence and issues that ultimately resulted in dismissal and the order granting sanctions.

- That between September 23, 2023, and February 10, 2024, the Uni Defendants were seeking to have the Motion for Sanctions briefed.

- On September 29, 2023, the Court entered an Order granting the Uni Defendants dismissal based on the same lack of evidence and legal issues that are outlined in the then pending Motion for Sanctions.

- That Plaintiffs' Counsel refused to respond to any of the sanctions motions consistent with the Court's "bundling rule".

- On February 16, 2024, the Uni Defendants filed their letter motion for sanctions along with the memorandum in support of the Motion for Sanctions.

- On June 6, 2024, the Uni Defendants identified misrepresentations in the Opposition to the Motion to Strike and sought proof or a withdrawal of these allegations.

- On July 17, 2024, the Uni Defendants served another Motion for Sanctions Pursuant to Rule 11 on Plaintiffs, identifying 12 misrepresentations within the Response to the Motion to Strike.

- On August 8, 2024, the Uni Defendants filed the Third Motion for Sanctions.

- That for a month and a half Plaintiffs' Counsel did not provide any response to the served and filed Third Motion for Sanctions.

At any of these inflection points in the litigation, Plaintiffs could have and should have instructed their counsel to stop pursuing the Uni Defendants due to the complete lack of evidence and frivolous nature of the proceedings. "A sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Both Plaintiffs and Plaintiffs' Counsel should have been diligent in acknowledging the lack of factual support and frivolous nature of the claims made in this case. To deter such conduct, the Uni Defendants suggest a sanction of $5,000 against each named Plaintiff and $25,000 against each Austin and Denis, to be paid to the Court, in addition to the entirety of the Uni Defendants' fees and costs paid to the Uni Defendants.

**B. Plaintiffs' Counsel are Responsible for All Attorneys' Fees and Costs Incurred by the Uni Defendants**

1. Fees and Costs Should be Assessed Against Plaintiffs' Counsel as a Deterrent:

Attorneys are given a fundamental responsibility to act as gatekeepers and prevent frivolous and unnecessary litigation, including from their own clients. *See Hale v. Iancu*, No. 3:19-cv-1963 (VLB), 2021 WL 9405460, at *10 (D. Conn. Feb. 23, 2021) ("The logistical proximity of counsel facilitates an attorney's due diligence to determine whether a prospective client has a meritorious case. At the pre-filing stage, an attorney's due diligence serves as a screening function."). When a client brings an issue to an attorney's attention, it is the attorney, not the client, who is responsible for conducting a reasonable inquiry to ensure the claims have merit and both a

factual and legal basis. *See Craig v. City of New York*, 1:20-cv-02152 (LDH)(PK), 2022 WL 2238451, at \*16 (E.D.N.Y. June 22, 2022) ("It was counsel's obligation to conduct a reasonable inquiry before filing the Motion to Disqualify, and [client] has not offered any reason to impose sanctions on Plaintiff [as opposed to his counsel].") This requirement prevents frivolous lawsuits and the unnecessary prolongation of litigation.

Courts in the Eastern District of New York have found "attorneys are 'entitled to base their complaints and their requests for discovery on statements of witnesses, reports of their investigators and hearsay reports and statements of others <u>until such time, if ever, as they are satisfied that the statements and other evidence are not competent or are otherwise untrustworthy</u>.'" *Craig v. City of New York*, 1:20-cv-02152 (LDH)(PK), 2022 WL 2238451, at \*14 (quoting *In re Air Disaster at Lockerbie, Scotland*, 144 F.R.D. 613 (E.D.N.Y. 1992)); emphasis added in *Craig* opinion). The Court further admonished:

> A lawyer must not simply do her client's bidding. She must independently research the factual and legal bases for any papers filed with the Court to satisfy her obligation of making "inquiry reasonable under the circumstances."

*Id.* (citing Fed. R. Civ. P. 11(b)). In *Craig*, the attorney was a third-year junior attorney who made unfounded, overly aggressive allegations of criminal conduct in a single motion. *Id.* at \*42-43. Here, there are two attorneys far more experienced than the sanctioned attorney in *Craig*: Marcel Denis, who has been admitted to practice in New York since 2003[8], and Rodney Austin, who has been admitted to practice in New York since 2001.[9] In contrast to *Craig*, the frivolous allegations that formed the basis of the Rule 11 sanctions in this case were not a one-time occurrence in a motion. The frivolous allegations are the heart of the case that has caused the Uni Defendants to

---

[8] *See* the New Your State Unified Court System website located at
https://iapps.courts.state.ny.us/attorneyservices/wicket/page/DetailsPage?2
[9] *See* the New Your State Unified Court System website located at
https://iapps.courts.state.ny.us/attorneyservices/wicket/page/DetailsPage?5

incur significant legal fees and costs for six years. Further, the seasoned litigators who brought this lawsuit were on written notice that the allegations lacked any evidentiary support ***prior*** to filing the lawsuit. Instead of heeding the October 31, 2018, notice that the claims lacked any merit, Plaintiffs' Counsel pushed forward, filed the Complaint, and went on a media campaign disparaging all defendants, including the Uni Defendants.

This should weigh heavily in favor of applying all attorneys' fees and costs incurred by the Uni Defendants as a deterrent. *See In re Zyprexa Prod. Liab. Litig.*, 467 F. Supp. 2d 256, 272–73 (E.D.N.Y. 2006) ("In circumstances where the litigant causes unnecessary delay or needless increase to the cost of litigation, the typical sanction is the payment of the other side's reasonable attorney's fees which were incurred as a result of the improper filing."). Since Plaintiffs' Counsel have been on notice of their frivolous allegations and due diligence obligations before filing this lawsuit, the amount of the sanction should equal all reasonable fees incurred. *See Offor v. Mercy Med. Ctr.*, 327 F.R.D. 32, 34 (E.D.N.Y. 2018) ("When a court determines that attorneys' fees and costs should be used as sanctions under Rule 11, the award should be based both on the total amount of reasonable attorneys' fees and costs attributable to the sanctioned party's misconduct and the amount needed to serve the deterrent purposes of Rule 11.").

Reimbursement of all fees does not only compensate the injured parties (Uni Defendants), but also deters experienced attorneys from future misconduct. Courts consider "whether [the improper conduct] was part of a pattern of behavior in the litigation, whether the misconduct resulted in additional litigation expenses, [and] whether the party reasserted claims after being put on notice that they lacked a proper legal basis . . . ." *Ammann v. Sharestates, Inc.*, No. 21-CV-2766 (JS)(ST), 2024 WL 1956237, at *9 (E.D.N.Y. Mar. 21, 2024); see also *Robinson v. De Niro*, 614 F. Supp. 3d 73, 75 (S.D.N.Y. 2022), *R&R adopted*, No. 19-CV-09156 (LJL), 2022 WL 7091518 (S.D.N.Y. Oct. 12, 2022) ("a court should also consider whether it was objectively unreasonable

for an attorney to 'reaffirm[ ]' claims and 'advocat[e] positions' after they were shown to be inaccurate.") (alterations in original) (quoting *Galin v. Hamada*, 753 F. App'x 3, 8 (2d Cir. 2018))).

The Third Motion for Sanctions reflects Plaintiffs' Counsels' need for deterrence. After years of litigating baseless claims across the multiple complaints, Plaintiffs' Counsel doubled down and continued with unsupported and baseless allegations in the Opposition to the Motion to Strike and for Sanctions. D.E. 182. Again, Plaintiffs' Counsel were put on notice that these allegations lacked any merit. Plaintiffs' Counsel ignored their obligations not only to the Uni Defendants and their attorneys, but also to their duty of candor to the Court.[10]

The monetary amount in dispute is another factor in determining the amount of the fees to be sanctioned. *See In re September 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 130-31 (S.D.N.Y. 2007) ("A sanction must be proportioned to the public interest in the affected proceedings, and bear relation to the amounts involved."). The initial demand letter in this case demanded "US$ 1,500,000,000.00" under threat of lawsuit, based on claimed damages of $500,000,000.00 trebled under a civil theft claim. Plaintiffs expressly sought the same damages in the original complaint, alleging "Defendants . . . have obtained and/or used at least $500,000,000.00 of Plaintiffs" money without Plaintiffs' permission." D.E. 1, ¶194. Plaintiffs doubled the damages amount in the TAC, alleging Plaintiffs "have suffered damages in the minimum amount of US$1,000,000,000.00." to be trebled to $3,000,000,000.00. D.E. 118, ¶290.[11] In situations like this, a large, and in some circumstances million-dollar sanction is appropriate. *Id.* (imposing a sanction of $750,000); *see also Chambers v. Nasco,* 501 U.S. 32 (1991) (sustaining

---

[10] "Attorneys are officers of the Court with a professional obligation to conduct due diligence and a duty of candor to the tribunal. The Court correctly relies on the ethical conduct of attorneys admitted to practice before it. Bald accusations intimating a failure to discharge those duties simply demean the profession[.]" *Rubinow v. Boehringer Ingelheim Pharms., Inc.,* Civil Action No. 3:08–cv–1697 (VLB), 2010 WL 1882320, at *8 (D. Conn. May 10, 2010).
[11] While the civil theft claim was dropped, Plaintiffs were unequivocally claiming they would argue for damages of $1 billion overall on the other claims.

$996,644.65 in sanctions). Courts have found the full amount of fees requested is fair compensation where a violation of wrongdoing violated the entire five and a half years of litigation. *Gurary v. Winehouse*, 270 F. Supp. 2d 425, 431-32 (S.D.N.Y. 2003) ("This brings the total awarded to the full amount requested, $215,050.83. That is fair compensation for the conduct of litigation for over five and a half years[.]").

It is difficult to find a comparable case with more egregious conduct than displayed here. This is due to: (1) the experience of the attorneys' involved; (2) amount of time the attorneys have been on notice of the frivolous allegations; (3) complete failure to conduct any reasonable inquiry of the facts; (4) the amount demanded; (5) the seriousness of the allegations involved; (6) the additional baseless filing in the Opposition to the Motion to Strike; (7) the attorneys' decision to go on a media campaign instead of conducting their pre-suit due diligence obligation[12]; and (8) Plaintiffs' Counsels' arrogance and complete lack of self-reflection when they proclaimed they did not take the sanctions motions seriously. The full amount of attorneys' fees and costs is necessary to deter Plaintiffs' Counsel from ever bringing a frivolous lawsuit again.

2.  <u>The Amount of Fees Incurred by the Uni Defendants is Reasonable:</u>

Pursuant to the lodestar calculation, without any multipliers, the Uni Defendants have incurred and are seeking reimbursement of $1,358,180.97 in attorneys' fees. Birman Dec., ¶8. "When a court determines that attorneys' fees and costs should be used as sanctions under Rule 11, the award should be based both on the total amount of reasonable attorneys' fees and costs attributable to the sanctioned party's misconduct and the amount needed to serve the deterrent purposes of Rule 11." *Offor v. Mercy Med. Ctr.*, 327 F.R.D. 32, 34 (E.D.N.Y. 2018). The amount of such fees and associated disbursements is calculated under the "lodestar" method. *See Kirschner*

---

[12] Contacting media can be evidence of improper purpose when the claims lack factual and legal support. *See e.g., Sussman by & Through Guilden v. Bank of Isr.*, 56 F.3d 450, 459 (2d Cir. 1995); *Kramer v. Tribe*, 156 F.R.D. 96 (D.N.J. 1994); *Ivy v. Kimbrough*, 115 F.3d 550, 553-54 (8th Cir. 1997)

*v. Zoning Bd. of Appeals*, 159 F.R.D. 391, 395 (E.D.N.Y. 1995). That method initially estimates the amount of the fee award by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.* at 396. In conducting the lodestar analysis, the Court may consider factors originally set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989). The 12 Johnson Factors are: (1) The time and labor required; (2) The novelty and difficulty of the questions involved; (3)The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or the circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys[13]; (10) The undesirability of the case; (11) The nature and length of the professional relationship with the client; and (12) Awards in similar cases. *United States Football League v. National Football League*, 887 F.2d 408 (2d. Cir. 1989).

On balance, the factors favor granting the entirety of the requested fees.

     **a.**    ***Johnson* Factor 1 and 9: The Time and Labor Expended by Experienced Counsel Advanced Dismissal and the Imposition of Sanctions.**

Over the course of six years of litigation, the dismissal and granting of Rule 11 Sanctions was achieved based on the work of two law firms, Perlman, Bajandas, Yevoli, and Albright, P.L. ("PBYA"), and Stinson, LLP ("Stinson"). This work was carried out by seventeen (17) lawyers and two (2) paralegals. *See* Birman Dec., **Ex. 1,** at ¶13 This work includes responding to the multiple iterations of the Complaint, handling an appeal, drafting numerous Motions for Sanctions, and conducting significant research regarding the case. *Id.* PBYA and Stinson were effective in

---

[13] This factor is detailed at length in the Declaration of Oliver Birman, Esq., dated October 21, 2024 ("Birman Dec"), attached hereto as **Exhibit 1**.

having all claims against the Uni Defendants dismissed and the Court granted entitlement to Rule 11 Sanctions.

### b.    *Johnson* Factors 2 and 3: Defending This Case Required Expertise in Complex Areas of Law.

In general, "class actions 'have a well-deserved reputation as being most complex.'" *In re Nasdaq Market–Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (internal citations omitted). This case is no exception. Additionally, the international aspect of this matter causes additional difficulty, as well as the novelty of understanding the interplay of the various nations' laws. Defending this lawsuit has required an extensive knowledge of antitrust law, the laws of three different states, the laws of Haiti, and appellate law to defend the case. This has required highly skilled lawyers to do significant amounts of research and litigation.

### c.    *Johnson* Factor 8: The Amount Involved and Results Obtained Tend to Show Reasonableness.

This case began with a demand letter alleging damages of $500,000,000 with treble damages of $1.5 billon. In the TAC, Plaintiffs have stated "the scheme orchestrated with the complicity of the Government of Haiti has resulted to date in a loss of at least US$1 billion[.]" TAC, ¶228. The multi-billion-dollar potential exposure is extraordinary and weighs heavily in favor of the Uni Defendants' fees being reasonable. It is common sense that any company facing a potential billion-dollar exposure would spend a large amount of money on attorneys' fees. In this case, the result obtained is a complete dismissal of all claims against the Uni Defendants.

### d.    *Johnson* Factor 12: Awards in Similar Cases are Proportionate to the Amount Requested Here.

The most similar case with a Rule 11 sanction being imposed is *In re September 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114 (S.D.N.Y. 2007). This is due to the large banks involved, importance of the issues, and that a smaller award is insufficient to deter future conduct

(particularly in light of the publicity sought by Plaintiffs' Counsel). In the *September 11th* case, the Court found that the lead attorneys' and the insurer client:

> owed the Court and the public better conduct than the conduct described herein; at a minimum, they had a duty to comply with Rule 11 of the Federal Rules of Civil Procedure. And, having multiplied proceedings by asserting denials and defenses that could not be supported by the evidence, the conduct of Zurich and its counsel, in their efforts to do away with evidence, to not produce evidence, and to slow up production of evidence until its utility might be attenuated, compounded the wrongdoing that they perpetrated.

*Id.* at 131.

The Court concluded that $750,000 was an appropriate sanction, in addition to a $500,000 discovery sanction. *Id.* at 132. The Court supported this conclusion by stating:

> The amount is large, but not so large as to be disproportionate to the strong public interest, the waste caused to judicial and attorney resources, and the amounts at stake in the litigation. . . . In this case, involving important and large insurance companies and law firms, a smaller award would be insufficient to deter future misconduct, or similar conduct by those similarly situated. Although the conduct in this case is not as egregious as that described in some of these high-sanction cases, *see e.g., Chambers v. Nasco*, 501 U.S. 32 (1991) (sustaining $ 996,644.65 sanction), the conduct giving rise to sanctions and other relevant considerations support the amount I fix.

*Id.* at 131.

In the *September 11th* case, the baseless litigation only lasted 4 years before imposing Rule 11 Sanctions. This case has been pending for 6 years and justifies the higher amount sought.

3.  The Amount of Taxable Costs

For the same reasons stated above, the Uni Defendants should be entitled to reimbursement of their taxable costs incurred. The total amount of taxable costs, pursuant to 28 U.S.C § 1920 and E.D.N.Y. Local Rule 54.1, is $1,153.60. Birman Dec, ¶9. This includes costs for:

(1) Fees of the clerk for the *pro hac vice* admissions of attorneys Oliver Birman, Benjamin

Reiss, and Paul Turner to the Eastern District of New York[14] and for one application for admission to the 2nd Circuit Court of Appeals. 28 U.S.C § 1920 (1);

(2) Transcripts of the oral hearings held on April 10, 2019, May 24, 2022, and the oral argument in the 2nd Circuit Court of Appeals. 28 U.S.C § 1920 (2); and

(3) printing charges for the Appellee's Brief for submission to the 2nd Circuit Court of Appeals. 28 U.S.C § 1920 (3).

## C. Non-Monetary Sanctions to Deter Future Conduct.

Further, punitive and deterrent sanctions should be assessed against Plaintiffs and Plaintiffs' Counsel in the form of a public admission that these claims lacked merit. Rule 11 Sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and "may include a nonmonetary directive[.]" Fed. R. Civ. P. 11(c)(4); *see also Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99, 103 (2d Cir. 2015). In situations like this, where an attorney is seeking publicity and making public statements about a case that is and always has been frivolous, it is appropriate to require that attorney to correct these public statements.

This sanction is a critical deterrent feature. Many laypeople read the news but not many follow case dockets. A lawyer, such as Plaintiffs' Counsel, could be enticed to take a case with a large damage number and well-known defendants and follow through with it, despite the lack of evidence, in order to gain publicity and potentially new business. That must be deterred so future litigators and litigants do not see a benefit to filing a frivolous lawsuit and pursuing it through the media as Plaintiffs' Counsel have done.

---

[14] *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, 2020 WL 1467118, at *12-13 (S.D.N.Y. 2020) (affirming the taxation of costs for the *pro hac vice* applications of a prevailing party above the opposing party's objection).

## CONCLUSION

For the foregoing reasons, Defendants Unibank, S.A. and Unitransfer USA, Inc. respectfully request that this Court sanction Plaintiffs and Plaintiffs for: (1) the amount of defense attorneys' fees and costs, (2) punitive sanctions in the amount of $5,000 against each named Plaintiff and $25,000 against each Plaintiffs' Counsel, and (3) deterrence sanctions to prevent future misconduct.

Dated: October 21, 2024
   New York, New York     Respectfully submitted,

**STINSON LLP**

By: */s/ Kieran M. Corcoran*
Kieran M. Corcoran (KC4935)
kieran.corcoran@stinson.com
100 Wall Street, Suite 201
New York, New York 10005
Tel: (646) 883-7471

Paul D. Turner (admitted *pro hac vice*)
pturner@pbyalaw.com
Benjamin L. Reiss (admitted *pro hac vice*)
breiss@pbyalaw.com
Oliver Birman (admitted *pro hac vice*)
obirman@pbyalaw.com
PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600
Fort Lauderdale, FL 33301
T: (954) 566-7117

**Attorneys for Defendants Unibank, S.A. and Unitransfer USA, Inc.**